IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Involuntary Chapter 7 |
| | ) | |
| VII HOLDINGS COMPANY | ) | Bankr. Case No. 06-10935 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| JOHN WILSON, | ) | |
| Appellant | ) | |
| v. | ) | Civil Action No. 07-73 (JJF) |
| | ) | |
| CAMBRIDGE PROPERTIES LLC, and | ) | |
| SOUTHBRIDGE SAVINGS BANK | ) | |
| | ) | |
| Appellees | ) | |

**APPENDIX TO MOTION OF CAMBRIDGE PROPERTIES, LLC AND
SOUTHBRIDGE SAVINGS BANK FOR ORDER EXEMPTING APPEAL
FROM MEDIATION PROCESS AND DISMISSING APPEAL**

PEPPER HAMILTON LLP

/s/ David M. Fournier
David M. Fournier (DE No. 2812)
Evelyn J. Meltzer (DE No. 4581)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19801
Telephone: (302) 777-6500

- and -

James T. Hargrove, Esq. (BBO # 550975)
Peter D. Bilowz, Esq. (BBO # 651383)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
Telephone: (617) 482-1776
Facsimile: (617) 574-7621

Dated: February 15, 2007          Attorneys for Cambridge Properties, LLC
          Wilmington, DE          and Southbridge Savings Bank

#8326374 v2

**<u>APPENDIX</u>**

| <u>**Document**</u> | <u>**Tab**</u> |
|---|---|
| Chapter 7 Involuntary Petition (Bankr. Docket No. 1) | 1 |
| Motion to Dismiss Involuntary Chapter 7<br>Petition Nunc Pro Tunc (Bankr. Docket No. 9) | 2 |
| Motion for Relief from the Automatic Stay<br>Nunc Pro Tunc or Alternatively, Dismissing the Case<br>Nunc Pro Tunc (Bankr. Docket No. 10) | 3 |
| Order Annulling Automatic Stay and Dismissing<br>Involuntary Petition and Chapter 7 Case (Bankr. Docket No. 20) | 4 |
| Transcript of Hearing held on January 12, 2007<br>before the Honorable Brendan L. Shannon (Bankr. Docket No. 29) | 5 |
| Docket of Bankruptcy Case No. 06-10935 | 6 |

#8326374 v2

FORM B5
(10/03)

| United States Bankruptcy Court | INVOLUNTARY |
|---|---|
| District of___Delaware | PETITION |

| IN RE (Name of Debtor - If Individual: Last, First, Middle)<br><br>VII Holdings Company | ALL OTHER NAMES used by debtor in the last 8 years (Include married, maiden, and trade names.) |
|---|---|
| LAST FOUR DIGITS OF SOC. SEC. NO./Complete EIN or other TAX I.D. NO. (If more than one, state all.)  20-3459444 | |
| STREET ADDRESS OF DEBTOR (No. and street, city, state, and zip code)<br><br>2711 Centerville Road, Suite 400<br>Wilmington, DE<br><br>New Castle                                            19805<br>COUNTY OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS          ZIP CODE | MAILING ADDRESS OF DEBTOR (If different from street address)<br><br><br><br>ZIP CODE |
| LOCATION OF PRINCIPAL ASSETS OF BUSINESS DEBTOR (If different from previously listed addresses) | |

CHAPTER OF BANKRUPTCY CODE UNDER WHICH PETITION IS FILED

  XX  Chapter 7          ☐  Chapter 11

## INFORMATION REGARDING DEBTOR (Check applicable boxes)

| | TYPE OF DEBTOR |
|---|---|
| Petitioners believe:<br>☐ Debts are primarily consumer debts<br>XX Debts are primarily business debts | ☐ Individual          ☐ Stockbroker<br>☐ Partnership        ☐ Railroad<br>XX Corporation      ☐ Health Care Business<br>☐ Clearing Bank   ☐ Commodity Broker<br>☐ Other: _____ |

BRIEFLY DESCRIBE NATURE OF BUSINESS

| VENUE | FILING FEE (Check one box) |
|---|---|
| XX  Debtor has been domiciled or has had a residence, principal place of business, or principal assets in the District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.<br><br>☐  A bankruptcy case concerning debtor's affiliate, general partner or partnership is pending in this District. | XX  Full Filing Fee attached<br><br>☐  Petitioner is a child support creditor or its representative, and the form specified in § 304(g) of the Bankruptcy Reform Act of 1994 is attached. |

### PENDING BANKRUPTCY CASE FILED BY OR AGAINST ANY PARTNER OR AFFILIATE OF THIS DEBTOR (Report information for any additional cases on attached sheets.)

| Name of Debtor | Case Number | Date |
|---|---|---|
| Relationship | District | Judge |

## ALLEGATIONS
### (Check applicable boxes)

1.   XX Petitioner(s) are eligible to file this petition pursuant to 11 U.S.C. § 303(b).
2.   ☐ The debtor is a person against whom an order for relief may be entered under title 11 of the United States Code.
3.a.  XX The debtor is generally not paying such debtor's debts as they become due, unless such debts are the subject of a bona fide dispute as to liability or amount;
      or
b.   ☐ Within 120 days preceding the filing of this petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

COURT USE ONLY
2006 AUG 30 PM 1:14
US BANKRUPTCY COURT
CLERK
DISTRICT OF DELAWARE
FILED

*If a child support creditor or its representative is a petitioner, and if the petitioner files the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.*

DOCKET NO. _____1_____
DATE _____8|30|06_____

Name of Debtor  VII Holdings Company

OFFICIAL FORM 5 - Page 2
Involuntary Petition
(10/05)

Case No._____

## TRANSFER OF CLAIM

☐ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents evidencing the transfer and any statements that are required under Bankruptcy Rule 1003(a).

## REQUEST FOR RELIEF

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

X _____ _(signature)_
Signature of Petitioner or Representative (State title)
John Wilson                August 24, 2006
Name of Petitioner          Date Signed

Name & Mailing       196 West River Street
Address of Individual  Orange, MA  01364
Signing in Representative
Capacity

X _____
Signature of Attorney            Date
Name of Attorney Firm (If any)
Address
Telephone No.

X _____
Signature of Petitioner or Representative (State title)
Name of Petitioner          Date Signed
Name & Mailing
Address of Individual
Signing in Representative
Capacity

X _____
Signature of Attorney            Date
Name of Attorney Firm (If any)
Address
Telephone No.

X _____
Signature of Petitioner or Representative (State title)
Name of Petitioner          Date Signed
Name & Mailing
Address of Individual
Signing in Representative
Capacity

X _____
Signature of Attorney            Date
Name of Attorney Firm (If any)
Address
Telephone No.

## PETITIONING CREDITORS

| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
|---|---|---|
| John Wilson 196 West River Street, Orange, MA 01364 | Money Due on a Promissory Note | $ 19,500.00 |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |

Note: If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above.

Total Amount of Petitioners' Claims
$ 19,500.00

_____ continuation sheets attached

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| VII HOLDINGS COMPANY, | Case No. 06-10935 (BLS) |
| Debtor. | Hearing Date: January 9, 2007 at 10:30 a.m. (Eastern)<br>Objection Deadline: January 2, 2007 at 4:00 p.m. (Eastern) |

**NOTICE OF MOTION OF CAMBRIDGE PROPERTIES, LLC TO DISMISS
INVOLUNTARY CHAPTER 7 PETITION NUNC PRO TUNC**

To: All parties on the Attached Service List

**PLEASE TAKE NOTICE** that on December 22, 2006, Counsel for Cambridge

Properties, LLC ("Cambridge") in the above-captioned matter filed and served the **Motion of**

**Cambridge Properties, LLC to Dismiss Involuntary Chapter 7 Petition Nunc Pro Tunc**

(the "Motion").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion

must be made in writing, filed with the United States Bankruptcy Court for the District of

Delaware (the "Bankruptcy Court"), 824 Market Street, Wilmington, Delaware 19801, and

served so as to be received no later than **January 2, 2007 at 4:00 p.m. (Eastern)** upon: (i)

Counsel for Cambridge Properties, LLC: David M. Fournier, Esquire, Pepper Hamilton LLP,

Hercules Plaza, Suite 5100, 1313 North Market Street, Wilmington; and (ii) Office of the

United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that if no objections to the Motion are

timely filed and served in accordance with the above procedures, an order may be entered

granting the relief requested in the Motion without further notice or a hearing. If an objection is

properly filed and served in accordance with the above procedures, a hearing with respect to the

Motion will be held on before the Honorable Brendan L. Shannon at 824 Market Street, 6th

#8225799 v.1

DOCKET NO. 9

DATE 12|22|06

floor, Courtroom #1, Wilmington, Delaware 19801. Only those objections made in writing,

timely filed with the Bankruptcy Court and received by undersigned counsel and the parties set

forth herein will be considered by the Bankruptcy Court at such hearing.

**IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE,**

**THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED BY THE**

**MOTION WITHOUT FURTHER NOTICE OR HEARING.**

Dated: December 22, 2006
Wilmington, Delaware

David M. Fournier (DE No. 2812)
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 777-6500
Fax: (302) 421-8390

and

James T. Hargrove, Esq.
Peter D. Bilowz, Esq.
Goulston & Storrs, P.C.
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
Tel: (617) 482-1776
Fax: (617) 574-7621

*Counsel for Cambridge Properties, LLC.*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| VII HOLDINGS COMPANY | )    Chapter 7 |
| | )    Case No. 06-10935 (BLS) |
| Debtor. | ) |
| | )    **Hearing Date: January 9, 2007 10:30 a.m.** |
| | )    **Objection Deadline: 1/2/07 4:00 p.m.** |

### MOTION OF CAMBRIDGE PROPERTIES, LLC TO DISMISS INVOLUNTARY CHAPTER 7 PETITION NUNC PRO TUNC

Cambridge Properties, LLC ("Cambridge") hereby moves to dismiss for cause the above-captioned involuntary Chapter 7 case <u>nunc pro tunc</u> pursuant to sections 303 and 707(a) of the Bankruptcy Code. Cambridge is the purchaser of certain real property located at 27 Reynolds Road, Charlton, Massachusetts (the "Subject Property") sold by Southbridge Savings Bank ("Southbridge") pursuant to a valid and bankruptcy court authorized foreclosure sale completed on August 31, 2006, the day after this involuntary Chapter 7 case was filed. Following the sale, Cambridge commenced a summary process action in the Massachusetts Housing Court, Dudley Division, to evict the former co-owner of the Subject Property, Jonathan C. Piehl. Piehl, with the assistance of his sister, Linda S. Walker ("Walker"), and Ara Eresian, Jr. ("Eresian"), an individual with ties to the Subject Property and to the petitioning creditor, John Wilson, is now attempting to bring that summary process action to a halt. Piehl claims as his *sole* defense to that action that the filing of this Chapter 7 case rendered the foreclosure sale (and transfer of title) to Cambridge a nullity by virtue the Debtor's putative 50% junior mortgage interest on Eresian's putative 50% interest in the Subject Property obtained from an entity controlled by Eresian, apparently for no consideration, only one day before the bankruptcy filing and

two days before the scheduled foreclosure. As set forth in more detail below, the events

preceding this case and the relationship of the parties show the unmistakable marks of an

abusive, bad faith filing. Accordingly, cause exists to dismiss this Chapter 7 case <u>nunc</u>

<u>pro tunc</u> to the date of the filing of the involuntary petition.

### Background

*The History of the Subject Property*

1.      The history of the Subject Property and Southbridge's interest in the

Subject Property is well documented in the Chapter 7 case of Piehl, Case No. 02-40711-

HJB. [1]

2.      In 1999, Piehl and Walker inherited the Subject Property from their

mother, Annie Piehl, as tenants in common subject to Southbridge's mortgage interest.

3.      On June 29, 2001, a default judgment entered against Piehl and Walker in

foreclosure proceedings initiated by Southbridge in Worcester Superior Court (Case No.

01-655B) authorizing Southbridge to proceed with its judicial foreclosure of the Subject

Property.

4.      On or about August 31, 2001, Walker, individually, conveyed her one-half

undivided interest in the Subject Property to Eresian, Trustee of ZuZu Realty Trust.

5.      On or about September 18, 2001, Eresian sought unsuccessfully to enjoin

the foreclosure sale of the Subject Property by filing an action for injunctive relief in the

Worcester Superior Court (Case No. 01-1935B).

---

[1]      A more complete recitation of the facts evidencing Southbridge's mortgage interest as well as the
events leading up to Southbridge's motion for relief from the automatic stay in Piehl's bankruptcy case,
including Southbridge's prior attempts to foreclose on the Subject Property, can be found in the *Motion of
Southbridge Savings Bank for Relief from the Automatic Stay* (Case No. 02-40711, Docket No. 175).

6.    Eresian was the winning bidder at the foreclosure sale but subsequently failed to tender the purchase price and consummate the sale.

7.    Before a second foreclosure sale could be completed by Southbridge, Walker and Eresian filed an involuntary Chapter 7 petition against Piehl, purportedly based on their joint ownership of a certain promissory note given by Piehl.

8.    On or about February 24, 2006 (during Piehl's bankruptcy case), Eresian, as trustee of ZuZu Realty Trust, allegedly gave a promissory note and as security therefor, a mortgage of his one-half undivided interest in the Subject Property to Hobbs Abstract Company, a company, on information and belief, owned or controlled by Eresian or his family members.[2]

9.    On or about March 10, 2006, Southbridge filed its motion for relief from stay in Piehl's Chapter 7 case to foreclose on the Subject Property.

10.    On May 16, 2006, over Eresian's objections, the United States Bankruptcy Court for the District of Massachusetts (Boroff, J.) granted Southbridge's motion for relief from stay.  A copy of the bankruptcy court's order is attached hereto as Exhibit A.

11.    On or about August 29, 2006, Hobbs Abstract Company assigned to the Debtor a fifty percent interest in Hobb's putative junior mortgage on Eresian's putative fifty percent interest in the Subject Property.  The Assignment of Mortgage Deed does not identify any consideration paid by the Debtor for the assignment.  A copy of the Assignment is attached hereto as Exhibit B.  On information and belief, Hobbs Abstract Company, or persons who control Hobbs, had actual notice of a scheduled foreclosure sale of the Subject Property by Southbridge.

12.    One day later, on August 30, 2006, Wilson filed this involuntary Chapter 7 petition against the Debtor.

13.    On August 31, 2006, without notice of the Debtor's involuntary Chapter 7 filing, Cambridge purchased the Subject Property at auction.

14.    On information and belief, Robert Cotton, counsel for Southbridge in the Piehl's Chapter 7 case, received a letter on August 30, 2006 or August 31, 2006 from Piehl stating that a bankruptcy petition had been filed in Delaware against "a creditor with the name of VII Holdings Co." Mr. Cotton, having no notice of the relevance of that letter to the Subject Property or the scheduled foreclosure, did not forward the letter to his client prior to the foreclosure.[3] A copy of the letter is attached hereto as <u>Exhibit C</u>. As discussed below, Piehl's letter, together with his sister's affidavit filed earlier in Piehl's Chapter 7 case explaining Eresian's plan to obtain Piehl's interest in the Subject Property (see *Affidavit of Linda S. Walker in Support of the Opposition of Ara Eresian, Jr., Trustee of ZuZu Realty Trust to the Motion of Tali A. Tomsic, Chapter 7 Trustee for Jonathan C. Piehl for Partial Summary Judgment*, a copy of which is attached hereto as <u>Exhibit D</u>), is only further proof that the petitioning creditor and the true beneficiaries of the automatic stay, Piehl and Eresian, were complicit in this bad faith filing.

15.    Following the sale, Cambridge was compelled to commence a summary process action in the Massachusetts Housing Court in Dudley, Massachusetts (Case No. 06-SP-03531) to evict Piehl from the Subject Property. In that action, Piehl contends that

---

[2]    According to public records, Hobbs Abstract Company is a trust organized under Massachusetts law, M.G.L. c. 182, §12. One of the named trustees is a one Melanie Eresian.

[3]    It is not apparent at all that Cotton could have or should have interpreted the letter to provide notice that the foreclosure sale of the Subject Property was stayed by a bankruptcy filing.

the sale to Cambridge was void *ab initio* by virtue of the Debtor's involuntary filing on

the eve of the foreclosure.

*The Relationship Among the Debtor, the Petitioning Creditor*
*and Other Non-Debtor Beneficiaries of this Debtor's Automatic*
*Stay and Other Circumstantial Evidence*

16.    It is no coincidence that Wilson filed this involuntary case on the eve of

Southbridge's foreclosure sale to Cambridge or that Piehl's defense to the Massachusetts

summary process action seeking his eviction from the Subject Property *solely* depended

on the filing of this involuntary case prior to completion of the foreclosure sale.  As a

review of the bankruptcy court records reveals, this is not the first time an involuntary

petition was filed by Wilson to stay a foreclosure of property nor is this the first

involuntary case involving the Debtor.

17.    On or about September 16, 2005, less than a year before this bankruptcy

case, the same John Wilson filed an involuntary Chapter 7 petition against VII Holdings

Company, the above-captioned Debtor, in the United States Bankruptcy Court for the

Middle District of Alabama, based on what is presumably the same promissory note debt

as alleged as the basis for this involuntary filing.  A copy of that involuntary Chapter 7

petition and docket report is attached hereto as <u>Exhibit E</u>.

18.    Not unlike the instant case (the specific facts of which are discussed

above), the Debtor acquired a junior mortgage interest in property subject to a prepetition

foreclosure process from the same Ara Eresian, Jr. or entities he controlled only days

before the filing of that case.[4]  Wilson's involuntary petition immediately stayed that

foreclosure process.  Copies of certain relevant documents evidencing the prepetition

transfers through which the Debtor obtained an interest in the subject property there,

including a copy of the Assignment to the Debtor, are attached hereto as Exhibit F.

       19.    The Alabama case was dismissed on or about December 21, 2005 for want

of prosecution by Wilson.  Notwithstanding the quick dismissal, however, it would

appear that the Alabama case was successful at least in one respect: it delayed foreclosure

of property in which Eresian held an interest.

       20.    Although details are somewhat sketchy, Wilson's ties to Eresian clearly

predate the Alabama bankruptcy case and this case.  In another involuntary Chapter 7

case filed by Wilson[5] against one Lawrence N. Petricca, Sr. in late 2004 in the United

States Bankruptcy Court for the District of New Hampshire,[6] Eresian filed an affidavit in

support of Wilson's opposition to a motion for transfer of venue.  In that affidavit,

Eresian claimed that the ZuZu Realty Trust, in which he is the sole trustee, was the

"majority beneficiary of the petitioning creditor."[7]  A copy of Eresian's Affidavit dated

September 27, 2004 is attached hereto as Exhibit G.  The involuntary petition against

Petricca was ultimately dismissed by the bankruptcy court in May 2005.  Interestingly,

---

[4]     Allison L. Randle, the owner of the subject property, gave a mortgage to Eresian, as Trustee of the ZuZu Realty Trust which was recorded on or about September 9, 2005.  Thereafter, Eresian assigned the mortgage to the Debtor for no stated consideration.  This mortgage assignment was recorded on or about September 13, 2005, two days before Wilson filed the involuntary Chapter 7 petition against the Debtor in Alabama.

[5]     In his capacity as "Trustee of JW Nominee Trust."

[6]     This case was transferred to the United States Bankruptcy Court for the District of Massachusetts, Case No. 04-45458 (Boroff, J.).

[7]     One man's view of Wilson and Eresian and their role in that case is colorfully revealed in the various pleadings filed by Mr. Petricca (Case No. 04-45458).

however, Eresian filed his own involuntary petition against Petricca in the same court in

October 2005.[8]

21.    Other public records tend to negate any inference that the intersection of

Wilson and Eresian in this proceeding is mere coincidence. For instance, Eresian appears

as the notary public for Wilson's Declaration of Homestead filed on or about August 27,

2004 in the Franklin Registry of Deeds, Book 04683, p. 182. A copy of the Declaration

of Homestead is attached hereto as Exhibit H. More still, based on a cursory review of

the civil dockets for cases filed in the Commonwealth of Massachusetts, Worcester

Superior Court from 2001 to present, Wilson and Eresian appear as co-defendants in no

less than two civil actions. Another common thread is Wilson's and Eresian's shared

counsel, Adrian A. Gaucher, Jr., a Massachusetts attorney who was disbarred in late

2005. Mr. Gaucher represented Wilson in the Petricca bankruptcy and is identified on

several documents and/or recorded instruments in which Wilson, Eresian or both are also

identified.

22.    Piehl's curious letter to Attorney Cotton (Exhibit C), purportedly written

and sent on August 30, 2006, the involuntary petition date, also establishes an interesting

nexus between Piehl and Wilson and when considered together with Linda Walker's

Affidavit (Exhibit D) discussing Eresian's desire to obtain Piehl's interest in the Subject

Property, explains the true purpose of the involuntary filing.[9] In that letter, Piehl states

that he was told by "a Mr. John Wilson" that a bankruptcy petition had been filed against

---

[8]     That involuntary petition, too, was dismissed approximately six months later.
[9]     By staying the foreclosure sale, Piehl's interest in the Subject Property would be preserved
(potentially) allowing Eresian to carry out his plan to own the entire Subject Property and unite that parcel
under common ownership with an adjacent property being purchased from Walker for the purpose develop
townhouses.

VII Holding Company and that (referring to Cotton) "maybe you should contact the Delaware bankruptcy court." Based on the tone of the letter, it is clear that Piehl tries to downplay the significance of the event (*i.e.,* the bankruptcy filing) to him and the existence of any connection to Wilson. While this is the only piece of evidence known at this time tying Piehl and Wilson together, any assertion that their communications on or around the filing is mere coincidence is simply not credible.

23.     While identifying a direct relationship between the Debtor and the parties to the Massachusetts summary process action has proven more difficult, Cambridge should be entitled to rely on (i) the statement made by Eresian's counsel prior to a status conference held in the Massachusetts Housing Court on December 18, 2006 that Mr. Eresian "controls" the Debtor and (ii) Mr. Piehl's and Ms. Walker's *Brief in Support of Emergency Suggestion of Bankruptcy and Notice of Automatic Stay of Further Proceedings* filed in the Housing Court on December 18, 2006, which alleges, among other things, that the "Defendants [are] challenging plaintiff's right to proceed with the eviction process and claiming a continuing interest in the Charlton Property, *through a relationship with VII Holdings Company…*" *See* Brief at p. 2 (emphasis supplied). A copy of the Defendants' Brief is attached hereto as <u>Exhibit I</u>.

<b><u>Request for Relief</u></b>

24.     Based on the evidence, this is a classic bad faith filing. It is abundantly clear that John Wilson and the Debtor have employed the bankruptcy process solely to deny Southbridge its legitimate contractual and state law foreclosure remedies and invalidate a proper sale to Cambridge. Accordingly, Cambridge respectfully requests that this Court (i) dismiss the Chapter 7 petition <u>nunc pro tunc</u> pursuant to section 303 and

707(a) of the Bankruptcy Code and (ii) award damages and sanctions pursuant to sections

105(a) and 303(i) of the Bankruptcy Code against Mr. Wilson and any other person found

to be complicit in this bad faith filing. The tactics employed here amount to a clear abuse

of the bankruptcy process and should not be tolerated by any bankruptcy court.

## Legal Authority and Argument

25.    The statutory predicates for Cambridge's Motion to Dismiss are

Bankruptcy Code sections 303, 707(a), and 105(a).

26.    Section 303 provides in relevant part:

(d) the debtor... may file an answer to a petition under this section

***

(i) If the court dismisses a petition under [section 303] other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment-

***

(2) against any petitioner that filed the petition in bad faith, for

(A) any damages proximately caused by such filing; or

(B) punitive damages.

(j) only after notice to all creditors and a hearing may the court dismiss a petition filed under this section....

27.    Section 707(a) provides in relevant part:

The court may dismiss a case under this chapter only after notice and a hearing and only for cause....

28.    Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision

of this title providing for the raising of an issue by a party in interest shall
be construed to preclude the court from, sua sponte, taking any action or
making any determination necessary or appropriate to enforce or
implement court orders or rules, or to prevent an abuse of process.

(emphasis supplied).

29.    There is a split of authority on the issue of whether a creditor or other
party in interest has standing to contest an involuntary petition under section 303 of the
Bankruptcy Code. *Compare In re Michael Angelo Corry Inn, Inc.,* 2002 Bankr. LEXIS
10 (Bankr. W.D. Penn. January 8, 2002) and *In re Marketxt Holding Corp.,* 347 B.R. 156
(Bankr. S.D.N.Y. 2006) (finding creditor did not have standing) *with In re G-2 Realty
Trust,* 6 B.R. 549 (Bankr. D. Mass. 1980) (finding creditor had standing under section
303). The cases holding that a non-debtor does not have standing to contest an
involuntary petition have focused on section 303(d) of the Bankruptcy Code which
provides that the *debtor* may file an *answer* to a petition under section 303. That
provision of section 303, however, makes no mention of motions to dismiss or other
responsive pleadings. Thus, notwithstanding those courts' interpretation of section
303(d), there is nothing in the plain language of the statute prohibiting a party, other than
the debtor, from contesting an involuntary petition.

30.    It is also noteworthy that only the *G-2 Realty* case, finding that a secured
creditor *had* standing to challenge an involuntary petition under section 303, involved
collusion between the alleged debtor and petitioning creditors while the other two cases
referenced above, finding that a non-debtor party did not have standing, involved merely
the (procedural) sufficiency of an involuntary petition based on the nature and extent of
claims held by the petitioning creditors. At least one court has acknowledged that a
general rule prohibiting creditors or shareholders of the debtor from contesting an

involuntary petition may not be inflexible especially where a filing involves "a plan or

scheme to achieve fraud or other proscribed conduct." *In re The Ceiling Fan Distributor,*

*Inc.*, 37 B.R. 701 (Bankr. M.D. La. 1983) (also cited in *Michael Angelo,* 2002 Bankr.

LEXIS 10). There, the court opined that it is within the discretion of the bankruptcy court

to permit a non-debtor to contest an involuntary petition. *Id.*

31.    While there remains some disagreement concerning the standing of a non-

debtor to seek a section 303 dismissal, courts uniformly acknowledge that section 707(a)

permits *any* party in interest to move to dismiss a Chapter 7 case. *See, e.g., In re Jr. Food*

*Mart of Arkansas, Inc.*, 234 B.R. 420, 422 (Bankr. E.D. Ark. 1999); *In re MacFarlane*

*Webster Assoc.*, 121 B.R. 694, 696 (Bankr. S.D.N.Y. 1990).

32.    The "causes" for dismissal identified in section 707(a) of the Bankruptcy

Code (*e.g.,* unreasonable delay, nonpayment of title 281 fees, etc.) are merely illustrative

and not exhaustive. *In re Burns*, 169 B.R. 563, 567 (Bankr. W.D. Pa. 1994). Courts

have long recognized that the lack of good faith in filing a petition constitutes "cause" for

dismissal under section 707(a). *See, e.g., In re Laguna Assoc. Partnership,* 30 F.3d 734,

737-38 (6th Cir. 1994) ("We have long acknowledged that 'bad faith' may serve as a

[cause] for dismissal of a petition."); *In re Tamecki*, 229 F.3d 205 (3d Cir. 2000); *In re*

*Zick*, 931 F.2d 1124, 1127 (5th Cir. 1991).[10]

33.    There is no bright line test or litmus test for determining whether a chapter

7 petition has been brought in good faith or in bad faith. *See Myers*, 334 B.R. at 145; *In*

---

[10]    Because there is no substantive difference between the "for cause" requirement for relief from the
automatic stay under section 362(d)(1) and the "for cause" requirement for dismissal under section 707(a)
(or for that matter, dismissal under section 1112(b) or 1307(a)), cases may be cited for the proposition that
a bad faith filing constitutes "cause" for dismissal without regard to whether such cases arise in the stay
relief or Chapter 11, Chapter 13 or Chapter 7 dismissal context. *See Laguna*, 30 F.3d at 737-38; *Myers*,
334 B.R. at 145.

*re Claren, Inc.*, 1992 U.S. Dist. LEXIS 17464 (D. Pa. 1992). Such a determination

involves an examination of all facts and circumstances surrounding the case. *Myers*, 334

B.R. at 145. Some courts have even relied upon the "smell test" in making such a

determination. *See id.* (citing to *Morgan Fiduciary Ltd v. Citizens & Southern Bank*, 95

B.R. 232, 234 (S.D. Fla. 1988)).

34.    Under the totality of the circumstances approach, factors relevant to the

court's inquiry into good faith generally include: (1) the timing of the petition; (2) how

the filing affects creditors; (3) whether the debtor's property has been posted for

foreclosure; (4) whether distressed property has been transferred into the debtor for no or

little consideration in close proximity to the filing; (5) whether the debtor has no assets

other than the recently transferred property; and (6) whether the debtor has no or minimal

unsecured debt. *See In re Boates,* 2006 U.S. Dist. LEXIS 2256 (E.D. Pa. January 23,

2006); *Laguna,* 30 F.3d at 738; *In re Duvar Apt., Inc.,* 205 B.R. 196, 200 (9th Cir. B.A.P.

1996).

35.    Presence of the last 4 factors listed above identifies a pattern of conduct

exemplifying bad faith cases known as "new debtor syndrome." *See Laguna,* 30 F.3d at

738; *Duvar,* 205 B.R. at 200; *see also G-2 Realty*, 6 B.R. at 553-54 (also finding "new

debtor syndrome" where the debtor is result of a legal transformation, at or near the time

a petition is filed, from an entity form that is ineligible for bankruptcy relief). It has been

said that in such circumstances, the court must satisfy itself that the debtor demonstrates

*exemplary motives and scrupulous good faith* before allowing the debtor to obtain the

benefits of bankruptcy. *See G-2 Realty,* 6 B.R. at 553-54 (dismissing petition where the

transformation of entity form for eligibility purposes close in proximity to bankruptcy filing did not demonstrate good faith).

36.     According to at least one court, a showing of "new debtor syndrome" establishes a *prima facie* case of bad faith filing which can only be overcome if the debtor is able to demonstrate a good faith business reason for the property transfer (or legal transformation) and the bankruptcy filing. *See Duvar*, 205 B.R. at 200. In *Duvar*, the debtor obtained its sole asset, an apartment building which had been subject to the early stages of a foreclosure process, only months prior to the bankruptcy filing and for zero consideration. Accordingly, the court found that the creditor established a *prima facie* case of bad faith filing and that the burden shifted to the debtor to prove good faith.

37.     The fact that a particular filing involves an involuntary petition brought by a creditor, as opposed to a voluntary petition filed by the debtor, is of no consequence and cannot diminish the court's overarching responsibility to conduct an inquiry at the outset of a case to determine its legitimate purpose. *See, e.g., Basin Elec. Power Co-op v. Midwest Processing Company*, 769 F. 2d 483 (8th Cir. 1985); *In re Winn*, 49 B.R. 237, 239 (Bankr. M.D. Fla. 1985); *G-2 Realty*, 6 B.R. at 553. "A decision that the filing of an involuntary petition insulates the debtor [or petitioning party] from an examination into its good faith or lack thereof, would almost certainly encourage collusion between debtors seeking to fraudulently procure the jurisdiction of the bankruptcy court (or in some other manner abuse the purposes of the Code)." *G-2 Realty*, 6 B.R. at 553.

38.     Applying the above legal standards to the facts of this case, the inescapable conclusion is that this Chapter 7 case is in fact a "new debtor syndrome" case, thus warranting dismissal "for cause" pursuant to sections 303 and 707(a) of the

Bankruptcy Code.  The existence of the following facts in this case weigh

*overwhelmingly* in favor of a finding, if those facts do not already prove *conclusively,* that

procurement of this Court's jurisdiction over the Debtor and the Subject Property was

made in bad faith:  (i) the pre-petition transfer to a "new debtor" of an interest in the

Subject Property by Eresian whose participation in Piehl's Chapter 7 case was significant;

(ii) the fact that relief from stay with respect the same Subject Property was granted in

Piehl's Chapter 7 case; (iii) the proximity of that transfer to both the scheduled

foreclosure sale of the Subject Property and the bankruptcy filing; (iv) Wilson's ties to

Eresian and his relationship with the Debtor in a prior involuntary case; and (v) the

Debtor's apparent lack of creditors, other than Wilson.[11]   Given the special

circumstances of this case and the harm to Cambridge if the foreclosure sale is

invalidated by operation of the automatic stay, Cambridge submits that an order

dismissing the case nunc pro tunc in order to validate the sale is especially critical and

warranted in this case. [12]

39.    There is no doubt that *but for* the eleventh-hour assignment of a partial

junior mortgage interest from an Eresian-affiliated entity, Hobbs Abstract Company, to

another arguably Eresian-affiliated entity, the Debtor, for no stated consideration, the

Debtor would have had absolutely no claim to an interest, however tenuous, in the

---

[11]      That this "new debtor" may have also cured eligibility issues with respect to the other Eresian-related entities claiming an interest in the Subject Property, namely ZuZu Realty Trust and Hobbs Abstract Company, would provide yet another basis for invoking the "new debtor syndrome" presumption. It has not been confirmed at this time that those entities would or would not have been eligible to file for bankruptcy protection.
[12]      Piehl's letter to Southbridge's counsel on or about August 30, 2006 should not change the result here. Even if that letter could be deemed to have provided sufficient notice to Southbridge that its scheduled foreclosure sale was stayed, and that proposition is dubious, at most, the letter proves that Piehl and Eresian, not the Debtor, were the true intended beneficiaries of the Debtor's automatic stay and thus establishes that this filing was made in bad faith.

Subject Property at the time of commencement of its Chapter 7 case. Consequently, the filing could have no way of affecting the validity of the foreclosure sale from Southbridge to Cambridge. Stated differently, had the transfer not been effected prepetition, this involuntary Chapter 7 case would not have served *any* (even illegitimate) purpose.

40.     Mr. Wilson will likely argue that Eresian's transfer of an interest in the Subject Property within days of the filing is merely coincidence. If that were true, then Mr. Wilson is no stranger to coincidence as evidenced by (i) his earlier involuntary filing against the Debtor in the United States Bankruptcy Court for the Middle District of Alabama for the purpose of frustrating a foreclosure of real property and (ii) his ties to Eresian, whose sole act of transferring a partial interest in the Subject Property compels Cambridge, an innocent, bona fide purchaser of the Subject Property, to intervene in this bankruptcy case.

41.     Mr. Wilson was wise enough not to refile against the Debtor in Alabama. Similarly, Mr. Eresian was wise enough not to attempt these shenanigans in Massachusetts where his reputation as a serial litigant precedes him.[13] The motive behind filings in either of those jurisdictions would have been quickly made transparent. One can only presume that Eresian and Wilson hoped that the true nature of their conduct would not come to light before this Court until they had achieved their goal of clouding title to the Subject Property.

---

[13]     The number of cases in which Eresian has had involvement is staggering. A search of the party index for the Massachusetts Superior Court alone appears to reveal that Eresian is or was a party to at least 62 civil actions (36 as plaintiff and 26 as defendant). This count does not include the numerous cases filed by or against other Eresian-affiliated entities or family members. A search of the party index for the United States Bankruptcy Court for the District of Massachusetts shows that Mr. Eresian was involved in at least 10 bankruptcy cases or adversary proceedings.

42.    Under the facts here, not only do the involuntary Chapter 7 petition and the surreptitious transfers of "interests" in the Subject Property preceding the filing constitute a scheme to delay, hinder and defraud creditors, but also they constitute a fraud on this Court and an abuse of the bankruptcy process. Because this Court is duty bound to rein in such abuses, the appropriate remedy is dismissal.

## Conclusion

43.    For the foregoing reasons, the Court should dismiss the involuntary Chapter 7 petition.

## Reservation of Rights

44.    Cambridge expressly reserves its right to amend or supplement this pleading or file such other pleadings as it may deem necessary, including, but not limited to, seeking a finding that the automatic stay did not stay the foreclosure sale of the Subject Property or seeking transfer of venue.

WHEREFORE, Cambridge respectfully requests entry of an order (i) dismissing this case nunc pro tunc to the date of the involuntary filing pursuant to sections 303 and 707(a) of the Bankruptcy Code, (ii) declaring that the foreclosure sale conducted by Southbridge on August 31, 2006 was not invalidated by the filing of the involuntary petition against the Debtor, (iii) awarding damages and sanctions pursuant to sections 105(a) and 303(i) against John Wilson and any other persons found complicit in this bad faith filing, and (iv) granting to Cambridge such other and further relief as this Court determines just and proper.

Respectfully submitted,

CAMBRIDGE PROPERTIES, LLC.

By its counsel,

/s/ David M. Fournier
David M. Fournier (DE No. 2812)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19801
Telephone: (302) 777-6500

- and -

James T. Hargrove, Esq. (BBO # 550975)
Peter D. Bilowz, Esq. (BBO # 651383)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
Telephone: (617) 482-1776
Facsimile: (617) 574-7621

Dated:  December 22, 2006

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE:                                          CHAPTER 7
    JONATHAN C. PIEHL,                          CASE NO. 02-*4/0 7 // .3
        Debtor

ORDER GRANTING RELIEF FROM AUTOMATIC STAY
AND AUTHORITY TO FORECLOSE MORTGAGE

After review of Petitioner Southbridge Savings Bank's Affidavit of Non-Compliance filed with this Court, it is hereby ordered that:

Petitioner is granted Relief from Automatic Stay and is, hereby, authorized to proceed with exercising its rights under its agreements with the Debtor and under applicable law (subject to Debtor's discharge, if any), including, without limitation, taking possession of and/or foreclosure of its mortgage as set forth in Worcester District Registry of Deeds, Book 17026, Page 365 on the property located at 27 Reynolds Road, Charlton, Worcester County, Massachusetts and to bring such actions, including eviction proceedings in accordance with state law as may be appropriate or necessary to obtain complete possession thereof;

Dated this _16_ of ___May___, 2006 at the United States Bankruptcy Court.

_____
United States Bankruptcy Court Judge

# EXHIBIT B

After recording please return to:

VII Holdings Company
2711 Centerville Road – Suite 400
Wilmington, DE  19808



Bk: 39683 Pg: 40  Doc: ASM
Page: 1 of 2  08/29/2006 11:24 AM

## ASSIGNMENT OF MORTGAGE DEED

**Hobbs Abstract Company,** holder of a Mortgage Deed given by Ara Ereslan, Sr., Trustee of KNG Realty Trust u/d/t dated July 6, 1990 and recorded with the Worcester District Registry of Deeds in Book 12884, Page 129 and Ara Ereslan, Jr., Trustee of Zu Zu Realty Trust u/d/t dated October 31, 1996 and recorded with the Worcester District Registry of Deeds in Book 18790, Page 4 to Hobbs Abstract Company, dated February 24, 2006 and recorded with the Worcester District Registry of Deeds on March 1, 2006 in Book 38488, Page 51, as confirmed by instrument dated August 1, 2006 and recorded with the Worcester District Registry of Deeds on August 1, 2006 in Book 39500, Page 317, do hereby sell, assign, bargain, transfer, convey and set over unto VII Holdings Company, a corporation duly organized and existing under the laws of the State of Delaware, with a principal address in care of 2711 Centerville Road, Suite 400, Wilmington, State of Delaware, (hereinafter "Assignee"), a fifty (50%) per cent interest in and to Assignor's right, title and interest in said Mortgage Deed and each Borrower's Term Note referenced therein and secured thereby, as such notes may be modified, extended, reissued, replaced and/or amended.

TO HAVE AND TO HOLD the same from this day forward with all of the rights, privileges and appurtenances thereto belonging.

Signed under seal this 9th. day of August, 2006.

Witness —

Melanie C. Eresian, Trustee
Hobbs Abstract Company

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                                        August 9 , 2006

Then personally appeared the above named Melanie C. Eresian, personally
known to me, in her capacity as Trustee of Hobbs Abstract Company, and
acknowledged the execution of the foregoing instrument to be her free act and deed
as Trustee thereof, and not individually, before me,

Notary Public
My Commission Expires: 6 / 11 / 2010 seal

2

ATTEST: WORC. Anthony J. Vigliotti, Register

## MORTGAGE DEED



Bk: 38488 Pg: 51  Doc: MTG
Page: 1 of 8   03/01/2006 03:13 PM

KNOW ALL MEN BY THESE PRESENTS, that We, <u>Ara Eresian, Sr., Trustee</u> <u>of KNG Realty Trust</u>, created pursuant to a written Declaration of Trust dated July 6, 1990 and recorded with the Worcester District Registry of Deed in Book 12884, Page 129, and <u>Ara Eresian, Jr., Trustee of Zu Zu Realty Trust</u>, created pursuant to a written Declaration of Trust dated October 31, 1996 and recorded with the Worcester District Registry of Deeds in Book 18790, Page 4, hereby grant unto <u>Hobbs Abstract</u> <u>Company</u>, 2 Main Street, Room 2, Worcester, County of Worcester, Commonwealth of Massachusetts, with *mortgage covenants* to secure the payment and performance of all obligations including but without limitation each Borrower's Term Note of even date, as such notes may be modified, extended, reissued, replaced and/or amended.

For Description of Premises securing said Mortgage Deed, see Exhibits "A" and "B" attached hereto and incorporated herein in their entirety by reference.

WITNESS our hands and seals this 24th. day of February, 2006.

*Ara Eresian, Sr., Jr.*

Ara Eresian, Sr., Trustee of KNG Realty Trust
u/d/t dated July 6, 1990,
and not individually

*Ara Eresian, Jr.*

Ara Eresian, Jr., Trustee of Zu Zu Realty Trust
u/d/t dated October 31, 1996,
and not individually

*[left margin, rotated]* LOCUS: 2 Rice Road, Millbury, MA (Exhibit "A")
27 Reynolds Road, Charlton, MA (Exhibit "B").

*[handwritten]*
Hobbs:
After recording
Please return to:
Hobbs Abstract Co.
2 Main Street - Rm. 2
Worcester, MA 01608

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                                February 24, 2006

The personally appeared the above named Ara Eresian, Jr., being personally known to me, in his fiduciary capacity as Trustee of Zu Zu Realty Trust, and not individually, and acknowledged the foregoing instrument to be his free act and deed, before me,

PAULA S. SELVITELLA
Notary Public
Commonwealth of Massachusetts
My Commission Expires July 2, 2010

Paula S. Selvitella, Notary Public

My Commission Expires:  7/2/10

After recording, please hold:

Hobbs Abstract Company
2 Main Street – Room 2
Worcester, MA  01608

# EXHIBIT C

Jonathan C. Piehl
27 Reynolds Road
Charlton, Mass..01507

August 30, 2006

Atty. Robert Cotton
Neal Law Offices, LLP
173 Charlton Road, Route #20
P. O. Box 539
Sturbridge, Mass. 01566



Dear Atty. Cotton:

    This is to notify you that I have been told by a Mr. John Wilson that a bankruptcy petition has been filed in Delaware against a creditor with the name of VII Holdings Co. This company has a lien on my house. Maybe you should contact the Delaware bankruptcy court. I don't know how to do that.

    Very truly yours,

    Jonathan C. Piehl

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION


-------------------------------------------------------X

In re:

      JONATHAN C. PIEHL,                 Chapter 7
                                         Case No. 02-40711-HJB

          Debtor

-------------------------------------------------------X

TALI A. TOMSIC,
CHAPTER 7 TRUSTEE OF
JONATHAN C. PIEHL,

         Plaintiffs,


                                         Adversary Case
                                         No.  03-4284


ARA ERESIAN, JR., INDIVIDUALLY
AND AS TRUSTEE OF ZU ZU REALTY
TRUST,

and

LINDA S. WALKER, INDIVIDUALLY
AND AS BENEFICIARY OF
ZU ZU REALTY TRUST,

         Defendants

-------------------------------------------------------X

AFFIDAVIT OF LINDA S. WALKER IN SUPPORT OF THE OPPOSITION
OF ARA ERESIAN, JR., TRUSTEE OF ZU ZU REALTY TRUST TO THE
MOTION OF TALI A. TOMSIC, CHAPTER 7 TRUSTEE FOR JONATHAN
<u>C. PIEHL FOR PARTIAL SUMMARY JUDGMENT</u>

I, Linda S. Walker, frst being duly sworn, do depose and say upon my own personal knowledge, the following:

1. I am the sole owner of the premises located and more commonly known as 23 Reynolds Road, Charlton, Worcester County, Massachusetts.

2. The premises consist of approximately 1.8 acres of land improved with a single family ranch style dwelling house. I presently reside there with my family.

3. Originally, this 1.8 acre lot[1] was a part of the land located at 27 Reynolds Road, Charlton, Worcester, County, Massachusetts which was formerly occupied and owned by my parents, Carl W. and Annie Piehl, as tenants by the entirety with the right of survivorship. (My parents are both deceased). The land area for the 27 Reynolds Road property consists of approximately 2.4 acres improved with a single family ranch style dwelling house. Presently my brother, the debtor, Jonathan C. Piehl, who is my only sibling, resides there with his family.

4. Together, the two parcels consist of approximately 4.2 acres of land.

2

5. When my father passed away in August, 1978, his share in the 27 Reynolds Road property devolved by operation of law to my mother.

6. When my mother passed away in March, 1999 intestate, the 27 Reynolds Road property devolved by operation of law to both my brother and I, as co-tenants in common each holding an undivided one-half interest.

7. At the time of my mother's passing, the 27 Reynolds Road property was encumbered by a small first mortgage in the original principal amount of $ 12,000.00 which had been executed and delivered by my mother in favor of the Southbridge Savings Bank.

8. In August, 2001, I accepted an offer from Ara Eresian, Jr. on behalf of Zu Zu Realty Trust to sell all of my undivided one-half right, title and interest in and to the 27 Reynolds Road property to the Trust. The offer was made subject to (i) the Southbridge Savings Bank mortgage, which Mr. Eresian, as Trustee of the Trust assumed and agreed to pay, and (ii) any and all municipal charges due and owing to the Town of Charlton which attached to the property. Subject to the aforesaid terms and conditions, on or about August 31, 2001 I executed and delivered a quitclaim deed to Mr. Eresian, as Trustee as aforesaid, of all of my right, title and interest in the 27 Reynolds Road property.

---

¹     My then husband and I purchased the detached 1.8 acre lot which then became known as the 23 Reynolds Road property from my parents in February, 1978.

3

9. I am not a beneficiary of the Zu Zu Realty Trust, nor to date have I ever been one.

10. Since that transfer, Mr. Eresian and I have discussed many times the possibility of reuniting the two properties into one parcel of land again so that they may be more advantageously developed. In January, 2004 we finally came to an agreement whereby I accepted an offer from him on behalf of Zu Zu Realty Trust for all of my right, title and interest in the 23 Reynolds Road property. The sale price is $ 350,000.00. The only condition which attaches to the accepted offer is that Mr. Eresian must succeed in acquiring the one-half interest in the 27 Reynolds Road property the Trust doesn't own from my brother's bankruptcy estate so that the two parcels may become one again under common ownership. A true and correct copy of said Offer is attached hereto and incorporated herein in its entirety by reference as Exhibit "A".

11. Mr. Eresian and I have had to extend the time for performance under the accepted offer several times; however as of the date of this affidavit, the agreement between us remains in full force and effect.

Signed and sealed under the pains and penalties of perjury this _3/19/05_ day of March, 2005.

_Linda S. Walker_
Linda S. Walker

4

EXHIBIT "A"

## OFFER TO PURCHASE REAL ESTATE

I, Ara Eresian, Jr., as Trustee of Zu Zu Realty Trust, hereby offer on behalf of said Trust the sum of $ 350,000.00 to Linda S. Walker for all of her right, title and interest in and to the premises located and more commonly known as 23 Reynolds Road, Charlton, Worcester County, Massachusetts.

The only condition of sale is that Ara Eresian, Jr., as Trustee of Zu Zu Realty Trust must succeed in acquiring the one-half interest not presently owned by the Trust in the adjacent premises located and more commonly known as 27 Reynolds Road, Charlton, Worcester County, Massachusetts, which estate consists of approximately 2.4 acres of land with improvements thereon, from the estate of Janathan C. Piehl in the bankruptcy matter styled *In re: Jonathan C. Piehl*, United Statews Bankruptcy Court for the District of Massachusetts – Western Division, Case No. 02-40711-HJB. Such sale being subject to bankruptcy court approval.

A Purchase and Sale Agreement, incorporating all of the terms and conditions of sale, shall be executed by the parties hereto within thirty (30) days of the date of approval of the sale of the inteest of Jonathan C. Piehl by the United States Bankruptcy Court for the District of Massachusetts – Western Division. Such Purchase and Sale Agreement shall then supersede and constitute the final agreement between the parties.

The sale shall take place at a mutually agreeable time as designated in the Purchase and Sale Agreement at the Worcester District Registry of Deeds, or some other mutually designated place, within thirty (30) days of the date of the execution by the parties of the Purchase and Sale Agreement.

In no event shall the date of closing extend beyond six (6) months from the date of the acceptance of this Offer. Notwithstanding the foregoing, the parties may mutually agree to extend the time for performance hereunder beyond the original six (6) month term, and may thereafter, mutually agree to extend the time for performance hereunder as extended from time to time as many times as they may mutually agree upon.

This offer shall be valid up to and inclusive of Janaury 20, 2004 at 5 PM.

ARA ERESIAN, JR., TRUSTEE
OF ZU ZU REALTY TRUST,

by: _____
Ara Eresian, Jr., Trustee
P.O. Box 499
Shrewsbury, MA  01545

Date:  January 17, 2004

## ACCEPTANCE OF OFFER

I, Linda S. Walker, hereby accept said Offer.

_____
Linda S. Walker

Date:  *January 19, 2004*

2

# EXHIBIT E

OCT-27-2006(FRI) 13:21                                                                    P 013/03

# Form 5.  Involuntary Petition

FORM B5
(12/03)

| United States Bankruptcy Court<br>Middle        District of    Alabama | INVOLUNTARY PETITION |
|---|---|

| IN RE (Name of debtor—if individual: Last, First, Middle) | ALL OTHER NAMES used by debtor in the last 6 years (include married, maiden, and trade names.) |
|---|---|
| -  VII Holdings Company. | |

**LAST FOUR DIGITS OF SOC. SEC. NO./Complete EIN or other TAX I.D. NO. (if more than one, state all.)**  20-3459444

| STREET ADDRESS OF DEBTOR<br>(No. and street, city, state, and zip code.)<br>3750 Airport Blvd.<br>Mobile, AL<br>36608 | MAILING ADDRESS OF DEBTOR<br>(if different from street address)<br><br>2711 Centerville Road<br>Suite 400<br>Wilmington, DE  19808 |
|---|---|
| COUNTY OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS:<br>Mobile | |

LOCATION OF PRINCIPAL ASSETS OF BUSINESS DEBTOR (if different from previously listed addresses)

**CHAPTER OF BANKRUPTCY CODE UNDER WHICH PETITION IS FILED**

☒ Chapter 7      ☐ Chapter 11

## INFORMATION REGARDING DEBTOR (Check applicable boxes)

Petitioners believe
☐ Debts are primarily consumer debts
☒ Debts are primarily business debts

**TYPE OF DEBTOR**
☐ Individual
☐ Partnership
☒ Corporation
☐ Other

☐ Stockbroker
☐ Commodity Broker
☐ Railroad

BRIEFLY DESCRIBE NATURE OF BUSINESS

| VENUE | FILING FEE (Check one box) |
|---|---|
| ☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in the District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District. | ☒ Full Filing Fee attached |
| ☐ A bankruptcy case concerning debtor's affiliate, general partner or partnership is pending in this District. | ☐ Petitioner is a child support creditor or its representative, and the form specified in § 304(g) of the Bankruptcy Reform Act of 1994 is attached. |

**PENDING BANKRUPTCY CASE FILED BY OR AGAINST ANY PARTNER OR AFFILIATE OF THIS DEBTOR (Report information for any additional cases on attached sheets.)**

| Name of Debtor | Case Number | Date |
|---|---|---|
| Relationship | District | Judge |

| ALLEGATIONS<br>(Check applicable boxes) | COURT USE ONLY |
|---|---|
| 1.  ☒ Petitioner(s) are eligible to file this petition pursuant to 11 U.S.C. § 303(b).<br>2.  ☐ The debtor is a person against whom an order for relief may be entered under title 11 of the United States Code.<br><br>3. a. ☒ The debtor is generally not paying such debtor's debts as they become due, unless such debts are the subject of a bona fide dispute;<br><br>or<br><br>b. ☐ Within 120 days preceding the filing of this petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession. | |

If a child support creditor or its representative is a petitioner, and if the petitioner files the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

OCT-27-2006(FRI) 13:22                                                    P 014 02

# Form 5                    —                OFFICIAL FORMS —

Form 5 Involuntary Petition
(12/03)

**Name of Debtor** VII Holdings Company

Case No. _____
(Court use only)

## TRANSFER OF CLAIM

☐ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents evidencing the transfer and any statements that are required under Bankruptcy Rule 1003(a).

## REQUEST FOR RELIEF

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

| | |
|---|---|
| X _signature_ | X |
| Signature of Petitioner or Representative (State title) | Signature of Attorney          Date |
| John F. Wilson   09/14/05 | |
| Name of Petitioner          Date signed | Name of Attorney Firm (if any) |
| Name & Mailing ► | |
| Address of Individual | Address |
| Signing in Representative | |
| Capacity | |
| | Telephone No. |
| X | X |
| Signature of Petitioner or Representative (State title) | Signature of Attorney          Date |
| Name of Petitioner          Date signed | Name of Attorney Firm (if any) |
| Name & Mailing ► | |
| Address of Individual | Address |
| Signing in Representative | |
| Capacity | |
| | Telephone No. |
| X | X |
| Signature of Petitioner or Representative (State title) | Signature of Attorney          Date |
| Name of Petitioner          Date signed | Name of Attorney Firm (if any) |
| Name & Mailing ► | |
| Address of Individual | Address |
| Signing in Representative | |
| Capacity | |
| | Telephone No. |

## PETITIONING CREDITORS

| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
|---|---|---|
| John F. Wilson 196 West River Street, Orange, MA 01364 | Promissory Note | $ 14,890.00 |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |

## U.S. Bankruptcy Court
## Middle District of Alabama (Montgomery)
## Bankruptcy Petition #: 05-32805

*Assigned to:* William R. Sawyer
Chapter 7
Involuntary
No asset

*Date Filed:* 09/16/2005
*Date Terminated:* 01/04/2006
*Date Dismissed:* 12/21/2005

**Petitioning Creditor**
**John F. Wilson**
196 West River Street
Orange, MA 01364

represented by **John F. Wilson**
PRO SE

**Alleged Debtor**
**VII Holdings Company**
2711 Centerville Road, Ste 400
Wilmington, DE 19808
Tax id: 20-3459444

represented by **VII Holdings Company**
PRO SE

**Bankruptcy Admin.**
**Bankruptcy Administrator**
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

| Filing Date | # | Docket Text |
|---|---|---|
| 09/16/2005 | 1 | Chapter 7 Involuntary Petition. Receipt Number 5-002109, Fee Amount $209. Filed by John F. Wilson, Petitioning Creditor . (YP, ) Modified receipt # on 9/16/2005 (YP, ). (Entered: 09/16/2005) |
| 09/16/2005 | 2 | Receipt of Ch 7 Vol Petition Payment $209.00 by CM. Receipt Number 05002109. (admin) (Entered: 09/16/2005) |
| 09/20/2005 | 3 | Summons Issued to John F. Wilson, Petitioning Creditor to be served on VII Holdings Company, Alleged Debtor Date Issued 9/20/2005, Answer Due 10/20/2005. Execution of Summons to be done by 9/30/2005. (YP, ) Modified (MANUALLY MAILED SUMMONS TO JOHN F.WILSON, 196 WEST RIVER STREET, ORANGE, MA 01364) on 9/20/2005 (YP, ). (Entered: 09/20/2005) |
| 10/03/2005 | 4 | 10 days have passed since the issuance of summons. Notice is hereby given that pursuant to Fed. R. Bankr. Proc. 7004(e), the summons issued is not serviceable. Upon Plaintiffs request, a new summons will be issued by the Clerk. (RE: related document(s)3 Summons Issued, ). (JT, ) Modified (MANUALLY MAILED THIS NOTICE TO JOHN F. WILSON, 196 WEST RIVER STREEET, ORANGE, |

| | | MA 01364) ON 10/3/2005 (JT, ). (Entered: 10/03/2005) |
|---|---|---|
| 10/13/2005 | 5 | Motion for Relief from Stay. Fee Amount $150. Filed by Diane C. Murray on behalf of GMAC Mortgage Corporation. Responses due by 11/7/2005. (Attachments: # 1 mtg# 2 note) (Murray, Diane) (Entered: 10/13/2005) |
| 10/13/2005 | 6 | Receipt of Motion for Relief From Stay(05-32805) [motion,mrlfsty] ( 150.00) filing fee. Receipt number 1588890, amount $ 150.00. (U.S. Treasury) (Entered: 10/13/2005) |
| 10/13/2005 | 7 | Order To Show Cause, In Writing Why Bankruptcy Proceedings Should Not Be Dismissed For Want Of Prosecution (Response Deadline November 1, 2005) Entered On 10/13/2005 (RE: related document(s)3 Summons Issued, ). (JT, ) (Entered: 10/13/2005) |
| 10/16/2005 | 8 | BNC Certificate of Service - See Image Attached - (RE: related document(s)7 Order to Show Cause). No. of Notices: 1. Service Date 10/16/2005. (Admin.) (Entered: 10/19/2005) |
| 10/19/2005 | 9 | Request for Issuance of Summons (Non-Image Entry) Filed by John F. Wilson. (JT, ) Additional attachment(s) added on 10/19/2005 (JT, ). (Entered: 10/19/2005) |
| 10/21/2005 | 10 | Involuntary Summons Issued To John F. Wilson, Petitioning Creditor to be served on VII Holdings Company. Execution Of Summons is due by 11/10/2005. (JT, ) (Manually Mailed Summons To John F. Wilson, 196 West River Street, Orange MA 01364on 10/21/2005). (Entered: 10/21/2005) |
| 10/24/2005 | 11 | BNC Certificate of Service - See Image Attached - (RE: related document(s)10 Involuntary Summons Issued, ). No. of Notices: 2. Service Date 10/24/2005. (Admin.) (Entered: 10/25/2005) |
| 11/02/2005 | 12 | Summons Service Executed on VII Holdings Company 10/31/2005 Re: related document(s) 10. (JT, ) (Entered: 11/02/2005) |
| 11/03/2005 | 13 | Objection To Motion For Relief From Stay Filed by John F. Wilson (RE: related document(s)5 Motion for Relief From Stay filed by Creditor GMAC Mortgage Corporation). (JT, ) (Entered: 11/03/2005) |
| 11/03/2005 | 14 | Response Of Petitioning Creditor John F. Wilson To The Order To Show Cause Filed by John F. Wilson (RE: related document(s)7 Order to Show Cause). (JT, ) (Entered: 11/03/2005) |
| 11/07/2005 | 15 | Notice of Telephone Hearing Set (RE: related document(s)5 GMAC Mortgage Corporation Motion for Relief From Stay). Hearing scheduled for 11/29/2005 at 09:00 AM at Telephone Hearing. (JPC, ) (Entered: 11/07/2005) |

| 11/09/2005 | 16 | BNC Certificate of Service - Telephone Hearing - (RE: related document(s)15 Telephone Hearing). No. of Notices: 2. Service Date 11/09/2005. (Admin.) (Entered: 11/10/2005) |
| 12/01/2005 | 17 | Order Conditionally Granting Motion For Relief From Stay (Related Doc # 5) Entered On 12/1/2005. (RK, ) (Entered: 12/01/2005) |
| 12/02/2005 | 18 | Order Setting Status Conference Hearing Entered On 12/2/2005. Status hearing to be held on 12/20/2005 at 10:00 AM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (DW, ) (Entered: 12/02/2005) |
| 12/03/2005 | 19 | BNC Certificate of Service - See Image Attached - (RE: related document(s)17 Order on Motion For Relief From Stay). No. of Notices: 3. Service Date 12/03/2005. (Admin.) (Entered: 12/04/2005) |
| 12/04/2005 | 20 | BNC Certificate of Service - See Image Attached - (RE: related document(s)18 Order on Motion To Set Hearing). No. of Notices: 1. Service Date 12/04/2005. (Admin.) (Entered: 12/05/2005) |
| 12/21/2005 | 21 | Order Of Dismissal (Dismissing Case) Entered On 12/21/2005 (RE: related document(s)1 Involuntary Petition (Chapter 7) filed by Petitioning Creditor John F. Wilson). (JC, ) (Entered: 12/21/2005) |
| 12/21/2005 |  | Case could not be closed because holding 10 days to close. Close Case Follow Up Review due on 1/3/2006. (JC, ) (Entered: 12/21/2005) |
| 12/23/2005 | 22 | BNC Certificate of Service - See Image Attached - (RE: related document(s)21 Order Dismissing Case). No. of Notices: 2. Service Date 12/23/2005. (Admin.) (Entered: 12/24/2005) |
| 01/04/2006 | 23 | Bankruptcy Case Closed (Non-Image Entry). (JT, ) (Entered: 01/04/2006) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/14/2006 13:49:04 | | | |
| **PACER Login:** | gs0012 | **Client Code:** | 01074.0016 |
| **Description:** | Docket Report | **Search Criteria:** | 05-32805 Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: HTML |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                    Case No. 05-32805-WRS
                                         Chapter 7 (Involuntary)
VII HOLDINGS COMPANY,

     Debtor

## ORDER OF DISMISSAL

This involuntary Chapter 7 proceeding came before the Court for a status

conference on December 20, 2005. No appearances were made. For the reasons

set forth on the record, the involuntary petition is DISMISSED.

Done this 21st day of December, 2005.

                        /s/ William R. Sawyer
                        United States Bankruptcy Judge

c: VII Holdings Company
   John F. Wilson, Petitioning Creditor
   Teresa R. Jacobs, Bankruptcy Administrator

# EXHIBIT F

OCT-27-2006(FRI) 13:21

Bk: 37283 Pg: 70

P 006/02.

After recording please return to:

Ara Ereslan, Jr.
P.O. Box 499
Shrewsbury, MA  01545-0499



Bk: 37283 Pg: 70  Doc: MTG
Page: 1 of 3  05/09/2005 03:44 PM

## MORTGAGE DEED

I, **Allison L. Randle**, of Northborough, County of Worcester, Commonwealth of

Massachusetts, (the "Mortgagor"), for consideration paid, grants to **Ara Ereslan, Jr.,**

**Trustee of Zu Zu Realty Trust**, created pursuant to a written Declaration of Trust

dated October 31, 1996 and recorded with the Worcester District Registry of Deeds in

Book 18790, Page 4, of P.O. Box 499, Shrewsbury, County of Worcester,

Commonwealth of Massachusetts, the "Mortgagee"), with *mortgage covenants* to

secure the payment of Thirteen thousand five hundred and no hundredths ($

13,500.00) dollars, payable as provided in a note, (the "Note"), of even date,

A certain estate known as Unit No. 83, ("Unit"), of the Whitney Street
Condominium located at 83-85 Whitney Street, Northborough, Massachusetts, a
condominium, ("Condominium"), established pursuant to Massachusetts General Laws
Chapter 183A, by Master Deed dated October 25, 1985, recorded with the Worcester
District Registry of Deeds in Book 9017, Page 250, ("Master Deed"), which Unit is
shown on the Plan of the "Condominium" dated July 24, 1985, recorded with the
Worcester District Registry of Deeds in Plan Book 543, Plan 33.

The Unit is conveyed together with:

1. An undivided fifty (50%) per cent interest in the common areas and facilities of the
Condominium as set forth in the Master Deed.

2. An exclusive easement to use the yards, lawns, gardens, plants, trees, driveways,
and walkways appurtenant to that unit, as shown on the site plan recorded with the
Master Deed.

LOCUS: 83 Whitney Street, Northborough, MA

③

1

Bk: 37283-g: 71

The Unit is conveyed subject to and with the benefit of:

1. Covenants, conditions, restrictions, easements, reservations of rights insofar as the same are now in force and applicable, right of access to units, and all matters set forth and referred to in the said Master Deed, the Condominium Trust recorded with said Registry of Deeds in Book 9017, Page 285, By-Laws, Rules and Regulations set forth therein, provisions of the Unit Deed herein conveyed and provisions of the Massachusetts General Laws Chapter 183A.

2. The Unit may be used only for residential purposes permitted by the zoning laws of the Town of Northborough, subject to the zoning laws of the Town of Northborough, and subject to the restrictions set forth in Paragraph 12 of said Master Deed.

BEING THE SAME PREMISES CONVEYED to the Mortgagor by Quitclaim Deed of Clifford A. Vera, Jr. dated December 24, 2001 and recorded with the Worcester District Registry of Deeds in Book 25626, Page 53.

The Mortgagor, for herself and her heirs, successors and assigns, covenants and agrees, in addition to the STATUTORY CONDITION, to keep the buildings, structures, improvements and fixtures now or hereafter standing on the mortgaged premises insured against fire with extended coverage and/or such other perils as the Mortgagee shall reasonably request in such amounts as shall be satisfactory to the Mortgagee, all insurance to be for the benefit of and payable in case of loss to the Mortgagee and the Mortgagor as their interests may appear.

The above described mortgaged premises are conveyed together with the buildings, structures and improvements now or hereafter thereon and all the privileges and appurtenances thereto belonging together with all fixtures, including accessories and additions and replacements thereto, now or at any time hereafter attached to, placed on or installed in the mortgaged premises.

In the event the ownership of or title to the mortgaged premises or any part thereof shall become vested in any person or entity not a natural person other than the Mortgagor without the written consent of the Mortgagee, then at any time thereafter, at the option of the Mortgagee, the entire mortgage debt shall become due and payable on demand, or the Mortgagee may, without notice to the Mortgagor, deal with such successor or successors in interest with reference to the mortgage and the debt secured thereby in the same manner as with the Mortgagor without in any way vitiating or discharging the Mortgagor's liability hereunder or upon the debt secured thereby. No sale of the premises hereby mortgaged, no forbearance on the part of the Mortgagee and no extension whether oral or in writing of the time for the payment of

2

Bk: 3728~~g: 72

the whole or any part of the debt secured hereby or any other indulgence given by the Mortgagee to any persons other than the Mortgagor, shall operate to release or in any manner affect the original liability of the Mortgagor, notice of any such extensions or indulgences being waived.

The Mortgagor covenants and agrees to pay or cause to be paid when due any and all taxes, charges, assessments, water rates and insurance premiums with respect to the mortgaged premises to whomsoever laid or assessed.

The Mortgage Deed is upon the statutory condition and upon the further condition that all covenants and agreements of the Mortgagor contained herein, in the Note and in any other document or agreement between the Mortgagor and the Mortgagee executed or made in connection herewith shall be fully kept and performed, for any breach of which the Mortgagee shall have the STATUTORY POWER OF SALE.

Witness my hand and seal this 23rd. day of May, 2005.

Witness – Adrian A. Gaucher, Jr.                    Allison L. Randle

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                                    May 23, 2005

Then personally appeared the above named Allison L. Randle, personally known to me, and acknowledged the execution of the foregoing instrument to be her free act and deed, before me,

From the Law Office of:

Adrian A. Gaucher, Jr., Esquire
GAUCHER & GAUCHER                    Adrian A. Gaucher, Jr.
60 Hamilton Street                    Notary Public
Southbridge, MA  01550-1806           My Commission Expires: 11/12/06

3

ATTEST: WORC. Anthony J. Vigliotti, Register

OCT-27-2006(FRI) 13:21

Bk: 37301 Pg: 21

P. 011/02:

After recording please return to:

VII Holdings Company
2711 Centerville Road – Suite 400
Wilmington, DE 19808



Bk: 37301 Pg: 21   Doc: ASM
Page: 1 of 2  09/13/2005 03:48 PM

## ASSIGNMENT OF MORTGAGE DEED

I, **Ara Eresian, Jr., Trustee of Zu Zu Realty Trust**, under a written Declaration of Trust dated October 31, 1996 and recorded with the Worcester District Registry of Deeds in Book 18790, Page 4, of P.O. Box 499, Shrewsbury, County of Worcester, Commonwealth of Massachusetts, (hereinafter "Assignor"), by the power conferred by said Trust and every other power, hereby sell, assign, bargain, transfer, convey and set over unto **VII Holdings Company**, a corporation duly organized and existing under the laws of the State of Delaware, with an address in care of 2711 Centerville Road, Suite 400, Wilmington, State of Delaware, (hereinafter "Assignee"), all of Assignor's right, title and interest in and to that certain Mortgage Deed given by Allison L. Randle to Assignor dated May 23, 2005 in the original principal amount of $ 13,500.00 and recorded with the Worcester District Registry of Deeds in Book 37283, Page 70, along with the Note secured thereby given by the said Allison L. Randle to Assignor of even principal amount and date.

TO HAVE AND TO HOLD the same from this day forward with all of the rights, privileges and appurtenances thereto belonging.

②

OCT-27-2006(FRI) 13:21

Bk: 37301 Pg: 22

P. 012/020

Signed under seal this 23rd. day of May, 2005.

Witness – Adrian A. Gaucher, Jr.

Ara Eresian, Jr., Trustee of Zu Zu Realty Trust,
u/d//t dated October 31, 1996

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                                              May 23, 2005

Then personally appeared the above named Ara Eresian, Jr., personally known
to me, in his capacity as Trustee of Zu Zu Realty Trust, and acknowledged the
execution of the foregoing instrument to be his free act and deed as Trustee thereof,
and not individually, before me,

From the Law Office of:

Adrian A. Gaucher, Jr., Esquire
GAUCHER & GAUCHER
60 Hamilton Street
Southbridge, MA  01550-1808

Adrian A. Gaucher, Jr.
Notary Public
My Commission Expires:  11/13/06

2

# EXHIBIT G

UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

-----------------------------------------------------------------X

In re:

LAWRENCE N. PETRICCA, SR.,

Debtor

-----------------------------------------------------------------X

AFFIDAVIT OF ARA ERESIAN, JR. IN SUPPORT OF
VARIOUS MOTIONS RELATIVE TO THE ALLOWANCE
DEBTOR'S MOTION FOR CHANGE OF VENUE

I, Ara Eresian, Jr., (hereinafter "Affiant"), first being duly sworn, do depose and
say upon my own personal knowledge, the following:

1. Affiant is the sole named Trustee of Zu Zu Realty Trust, a Massachusetts nominee
   real estate trust created pursuant to a written Declaration of Trust dated October
   31, 1996 and recorded with the Worcester County (District) Registry of Deeds[1] on
   April 30, 1997 in Book 18790, Page 4.

2. Said Trust is the majority beneficary of the named Petitioning Creditor in the within
   [bankruptcy] case, JW Nominee Trust, (hereinafter "Petitioning Creditor").

3. On Wednesday, September 15, 2004 at approximately 1:00 PM Affiant was personally present at the evidentiary hearing held before the Court, Vaughn, C.J. upon the motion of the Debtor, Lawrence N. Petricca, Sr., (hereinafter "Debtor"), for [a] change of venue from the United States Bankruptcy Court for the District of New Hampshire to the United States Bankruptcy Court for the District of Massachusetts – Western Division.

4. At that hearing the Debtor, after first being duly sworn, testified under oath relative to questions put directly to him by both the Court and counsel for the Petitioning Creditor, Israel M. Sanchez, Jr..

5. Based upon the Debtor's responses to certain of those questions which appeared to me to be both false and misleading, Affiant subsequently conducted an informal investigation into the Debtor's affairs.

## THE ISSUE OF THE DRIVER'S LICENSE OF THE DEBTOR

6. The first statement which Affiant believed to be suspect was the Debtor's testimony to the effect that he did not have a Driver's license.

7. In order to ascertain whether the Debtor did have a current, valid driver's icense in effect at the time of the giving of his sworn testimony, Affiant first travelled to the

---

[1] All references herein to the 'Worcester District Registry of Deeds' is to the Southern District of that registry located in Worcester, Worcester County, Commonwealth of Massachusetts.

law offices of Attorney Michael M. Kaplan, who maintains such offices in Milford, Worcester County, Massachusetts. At one time, Attorney Kaplan represented the Petitioning Creditor in the underlying civil action which gave rise to the [money] judgment issued by the Superior Court Department of the Trial Court for the Commonwealth of Massachusetts sitting in Worcester County in favor of the Petitioning Creditor against the Debtor[2]. Upon examination of the files kept by Attorney Kaplan in his law offices relative to this matter Affiant came across a copy of the Debtor's **New Hampshire Driver's License**[3], (hereinafter "License"), which was in effect at the time[4] that Attorney Kaplan was able to secure the same pursuant to certain requests for production of documentation made upon the Debtor by Attorney Kaplan on behalf of the Petitioning Creditor. A true and correct copy of the License is attached hereto and incorporated herein in its entirety by reference as Exhibit "A"[5].

---

[2]  See Worcester Superior Court C.A. No. 97-02504 A.

[3]  This was the same copy which Affiant directly testified existed under oath at the hearing.

[4]  Affiant is unable to testify as to exactly when Attorney Kaplan actually came into possession of a copy of this License, but it was sometime in either 1999 or 2000, but certainly before February 16, 2001 when the Court, Timothy S. Hillman, J., issued a Memorandum and Order allowing the Petititoning Creditor's motion for Entry of Default pursuant to R. 37(b)(2) Mass. R. Civ. P..

[5]  In the various motions submitted by the Petitioning Creditor at para. 1, counsel for the Petitioning creditor states that "[A] copy of the License is appended to the Affidavit of Ara Eresian, Jr., which is attached hereto." This is factually incorrect, in that the copy of the License appended hereto is a copy of the Debtor's [former] License. However, Affiant submits that the copy of this License and the Debtor's [renewed] License is **exactly** the same **except** (i) for the [new] expiration date, which is now '05/21/08', and (ii) [new] address, to wit: '614 Nashua Street, Milford, NH 03055'.

3

8. As set forth on the face of the copy of the License, the License was issued by the State of New Hampshire to the Debtor on '07/01/1999' with an expiration date of '05/21/03', the Anniversary date[6] of the Debtor's birthday, with an Assignation Number of '05PAL45211'. The License also bore the alleged residential address of the Debtor, to wit: '586 Nashua Street, Milford, NH 03055.'

9. Armed with the information contained on the face of the copy of the License, Affiant then contacted the Massachusetts State Police who cross-matched the Assignation Number of the License with the New Hampshire Registry of Motor Vehicles database. Affiant was then informed that the Debtor had renewed the License for another five (5) year period of time[7], up to and inclusive of '05/21/08'. Affiant was further informed that the License was listed as 'Active', and was not presently the subject of suspension and/or revocation proceedings.

## THE ISSUE OF THE RESIDENCE OF THE DEBTOR

10. The second and third statements which Affiant believed to be suspect involved the Debtor's testimony to the effect that since September, 2003 to the present he has been 'renting' a three-room apartment located within the premises located and more commonly known as 94 Pleasant Street, Gardner, Worcester County,

---

[6] The Fifty-eighth Anniversary date (58th.) [date].

[7] Under applicable New Hampshire law, driver's licenses renewed in year 2001 and thereafter have a five (5) year limitation period, instead of fourt (4). *See* RSA (Revised Statutes Annotated) 263:10. Unfortunately, Affiant was unable to secure a copy of the Debtor's [renewed] License with the 'new' information on it.

4

Massachusetts[6], (hereinafter "Property"). The Debtor also testified to the effect that either he or an entity known as 'R A Realty Trust', (hereinafter "R A Realty"), owned the Property, but that he was paying 'rent' to one Waldo J. Gibson, Sr., the alleged manager of R A Realty, and that he didn't know where and to whom the proceeds represented by the rental receipts were going each month.

11.    The Debtor's testimony in effect runs contrary to the state of the title to the Property as of the date of the evidentiary hearing, which relevant chain is as follows:

• On or about March 11, 1985, the Debtor and his brother, one Leonard Petricca, (hereinafter "Leonard"), as Settlors, created a Massachusetts nominee real estate trust styled 'L & L Realty Trust', (hereinafter "L & L Realty"), by written Declaration of Trust dated March 11, 1985 and recorded with the Worcester District Registry of Deeds on March 18, 1985 in Book 8610, Page 187. A true and correct copy of said Trust is attached hereto and incorporated herein in its entirety by reference as Exhibit "B".

• On or about April 23, 1985, in consideration of $ 115,000.00 tendered, one Robert W. Waxlax, and his wife, Doris Waxlax, executed and delivered a Quitclaim Deed of all of their right, title and interest in and to the Property to the Debtor and Leonard, as Trustees of L & L Realty. A true and correct copy of said Quitclaim

_____

[*]  The actual street address of the Property is '92-94 Pleasant Street, Gardner, Worcester County, Massachusetts'.

5

Deed is attached hereto and incorporated herein in its entirety by reference as Exhibit "C".

- On or about December 15, 1987, the Debtor and Leonard, both Individually and as Trustees of L & L Realty, executed and delivered a Mortgage Deed to the Property[9] in the original principal amount of $ 292,500.00 dated December 15, 1987 and recorded with the Worcester District Registry of Deeds in Book 11031, Page 127, (hereinafter "1987 Mortgage Deed"). A true and correct copy of said Mortgage Deed is attached hereto and incorporated herein in its entirety by reference as Exhibit "D".

- On or about June 8, 1990, purportedly in consideration of "$10.00 and One Hundred Trust Units" tendered, the Debtor, as Trustee of L & L Realty[10], executed and delivered a Quitclaim Deed to the Property to '94 Pleasant Trust[11], dated June 8, 1990 and recorded with the Worcester District Registry of Deeds on June 8, 1990 in Book 12828, Page 222. A true and correct copy of said Quitclaim Deed is attached hereto and incorporated herein in its entirety by reference as Exhibit "E".

---

[9]  [A]nd 35-39 Graham Street, Gardner, Worcester County, Massachusetts. See n. 11, infra.

[10]  Leonard [Petricca] does not join in this alleged conveyance with the Debtor as co-Trustee of L & L Realty Trust, as on or about September 7, 1988 pursuant to a document styled 'Resignation of Trustee of L & L Realty Trust' Leonard resigned as Trustee of L & L. Said instrument is recorded with the Worcester District Registry of Deeds on September 15, 1988 in Book 11616, Page 177.

[11]  The '94 Pleasant Trust' is not a trust of record, nor does the Quitclaim Deed identify who the Trustee or Trustees are. Affiant has never seen a copy of this Trust. However, it should be noted here that the deed does carry with it a [Grantee] New Hampshire address.

6

ument 4-3 Filed 02/15/2007 Page 57 of 71

- On or about August 14, 1992, the Commissioner of Banks for the Commonwealth of Massachusetts declared the Winchendon Savings Bank insolvent. On or about that same date, the Supreme Judicial Court for the Commonwealth of Massachusetts appointed the Federal Deposit Insurance Corporation, (hereinafter "FDIC"), as the Receiver/Liquidating Agent for the Winchendon Savings Bank and the FDIC accepted such appointment.

- On or about June 30, 1995, the FDIC, as Receiver/Liquidating Agent for the Winchendon Savings Bank, (hereinafter "FDIC"), exercised the statutory Power of Sale contained in the 1987 Mortgage Deed.

- On the aforesaid day of the foreclosure sale, one Joseph A. Tocci, Jr., (hereinafter "Tocci"), then of Leominster, Worcester County, Massachusetts registered and was recognized as a qualified bidder by the FDIC, as foreclosing mortgagee.

- At the conclusion of said sale, Tocci was declared the successful higher bidder[12] by the FDIC, as foreclosing mortgagee, with a high bid of $ 6,000.00. At that time, Tocci tendered the required deposit of $ 1,000.00 to the FDIC, as foreclosing mortgagee, as required by the terms and conditions of the published sale notice and thereafter, the remaining $ 5,000.00 balance due was tendered.

---

[12] Tocci also was declared the successful high bidder in another foreclosure sale of the Debtor's real property in Gardner, Worcester County, Massachusetts conducted earlier that day by the FDIC, as Receiver/Liquidating Agent for the Winchendon Savings Bank under the statutory power of sale contained in the 1987 Mortgage Deed. Since the Debtor does not claim that this real property is his residence, the information imparted here is for informational purposes only.

7

- Shortly after the sale, the Debtor requested that Affiant, who had experience in the examination of real estate titles, perform a full fifty (50) year title search to the Property for Tocci. Affiant thereafter delegated the work to Hobbs Abstract Company, (hereinafter "Hobbs"), a full service title examination and title insurance company located in Worcester, Worcester County, Massachusetts which is owned by certain of Affiant's relatives. With the knowledge and consent of the Debtor, Hobbs agreed to perform the requested work.

- On or about July 26, 1995, Tocci, as Settlor, created a Massachusetts nominee real estate trust styled 'Tocci Realty Trust Gardner-II'[13], (hereinafter "Tocci Realty") by written Declaration of Trust dated July 24, 1995 and recorded with the Worcester District Registry of Deeds on July 26, 1995 in Book 17193, Page 308. A true and correct copy of said Trust is attached hereto and incorporated herein in its entirety by reference as Exhibit "F".

- On or about August 2, 1995, one Daniel W. Ladd, (hereinafter "Ladd"), counsel for the FDIC, as Receiver/Liquidating Agent for the Winchendon Savings Bank, submitted to Hobbs all of the documentation necessary to transfer title to the Property from the FDIC, as foreclosing mortgagee, to Tocci., as Trustee of Tocci Realty. True and correct copies of (i) the Judgment issued by the Land Court Department of the Tral Court for the Commonwealth of Massachusetts, dated

---

[13] Incorrectly cited in the various motions submitted by the Petitioning Creditor as "Tocci Gardner Realty Trust".

8

March 1, 1995, and (ii) the Foreclosure Deed to the Property from the FDIC, as foreclosing mortgagee, to Tocci, as Trustee of Tocci Realty, dated August 2, 1995, are attached hereto and incorporated herein in their entirety by reference as Exhibit "G-1" and "G-2", respectively. Copies of these same documents were also appended to the Petitioning Creditor's First Amended Complaint filed in the underlying civil action which gave rise to the [money] judgment issued in that action.[14]

- Hobbs performed the requested title work and the Debtor paid Hobbs the Invoice generated by Hobbs in full for such work.

- In or around early October, 1995, the Debtor requested the return of the original documentation to the Property to him. Since the Debtor had paid for all of the title work requested in full, Hobbs complied with the request and the original documentation was personally returned to the Debtor. Affiant has never seen the original documentation since then, nor has the same been recorded with the Worcester District Registry of Deeds.

- On or about February 1, 1997, one Rene Arsenault[15], as Settlor, created a Massachusetts nominee real estate trust styled 'R A Realty Trust', (hereinafter "R A

---

[14] The Debtor also delivered a document styled 'Affidavit of Sale' relative to the sale of the Property. However, as of the date of this Affidavit, Affiant has been unable to locate a copy of the same. Affiant believes that [Attorney] Ladd may have a copy of the same in his files but for the purposes of this writing he has not independently verified this. See also n. 2, supra.

Realty"), by written Declaration of Trust dated February 1, 1997 and recorded with the Worcester District Registry of Deeds on November 10, 1997 in Book 19336, Page 38. A true and correct copy of said Trust is attached hereto and incorporated herein in its entirety by reference as Exhibit "H".

• R A Realty also gave a New Hampshire address and the Trust document was purportedly notarized by one De Nilo Tocci, who purportedly was a Notary Public in and for the Commonwealth of Massachusetts.[16] Affiant who has witnessed the Debtor signing his name before, recognizes that the printing at the top left of the Quitclaim Deed as well as the purported signature of De Nilo Tocci, is that of the Debtor as well.

• On or about that same date, (November 10, 1997), purportedly "in [full] consideration of $ 10.00" tendered, one Roger Le Blanc[17], as Trustee of 04 Pleasant Trust, executed and delivered a Quitclaim Deed to the Property to 'R A Realty Trust' dated February 2, 1997 and recorded with the Worcester District Registry of Deeds on November 10, 1997 in Book 19336, Page 170. A true and

---

[16]  De Nilo Tocci was an uncle of the Debtor (and also possibly to [Joseph A.] Tocci, [Jr.] who passed away shortly after the alleged execution of this document. Affiant has met De Nilo Tocci and witnessed him signing his name before. The signature upon this document is not that of De Nilo Tocci, but rather is a forgery. Additionally, Affiant has checked with the Secretary of State for the Commonwealth of Massachusetts and was informed that De Nilo Tocci was never **at anytime** appointed by the Covenor of the Commonwealth of Massachusetts to the office of Notary Public.

[17]  Affiant believes, and therefore avers, that **both** Rene Arsenault and Roger Le Blanc are figments of the Debtor's imagination, or in the alternative, are alter-egos of either the Debtor or his sublimely loyal minion, Waldo J. Gibson, Sr..

correct copy of said Quitclaim Deed is attached hereto and incorporated herein in its entirety by reference as Exhibit "I".

- As with the RA Realty Trust document, the aforesaid Quitclaim Deed also carries with it the same New Hamsphire address and is likewise "notarized" by "De Nilo Tocci" (the Debtor).

- Due to the absence of the 'FDIC-Tocci' foreclosure documentation from the public record, the Debtor has given the general recording public the false impression that no foreclosure sale under the statutory power of sale contained in the 1987 Mortgage Deed has ever taken place[18], and that R A Realty Trust and not Tocci Realty is the legitimate owner of the Property.

12. The Debtor further testified that since September, 2003 he had actually paid rent to RA Realty. In support of his claim, the Debtor actually submitted copies of rental receipts purportedly signed by Waldo J. Gibson, Sr., in his alleged capacity 'as manager of RA Realty [Trust]'. Given the foregoing state of the title to the Property,

---

[18] It must be noted here that the margin of the 1987 Mortgage Deed contains a notation that the same has been 'Discharged' followed by a book and page reference. (See *infra* for reference). This is yet another example of the Debtor's ingenuity in creating false accounts: by executing and delivering to himself a document styled 'Release and Discharge of Promissory Note' in which he purports to 'discharge' his own indebtedness thereby providing support to the false premise that the 1987 Mortgage Deed has never been foreclosed and despite the existence of the Court's Memorandum and Order of Judge Hillman in Worcester Superior Court C.A. No. 97-02504 A, that he [and Leonard] have been freed of their joint legal and several obligations thereunder.

This document was puportedly executed on September 26, 2001 and recorded with the Worcester District Registry of Deeds on October 1, 2001 in Book 24946, Page 390. A true and correct copy of this document is attached hereto and incorporated herein in its entirety by reference as Exhibit "J".

11

the rental receipts form the basis of a false account designed to give the Court the false impression that the Debtor is actually occupying [a portion] of the Property as his residence and paying rent therefor to an entity which clearly has no right, title or interest in and to the Property.

13.    And in answering further, affiant sayeth not.

Executed under the pains and penalties of perjury this 27th. day of September, 2004.

Ara Eresian, Jr.

12

# EXHIBIT H

OCT-27-2006(FRI) 13:22                                                          P 019/020

Bk: 04683 Pg: 182

## DECLARATION OF HOMESTEAD

Bk: 4683 Pg: 182   Doc: HOME
Page: 1 of 1   08/27/2004 03:09 PM

KNOW ALL MEN BY THESE PRESENTS THAT I,   John Wilson
                                              (Name)
of _____Orange_____ COUNTY OF ~~WORCESTER~~ FRANKLIN AND
     (City or Town)

COMMONWEALTH OF MASSACHUSETTS as Householder, and having a family or sole owner and
being entitled to an Estate of Homestead in the land and buildings hereinafter described, do hereby
declare that I own, possess and occupy said premises as a residence and homestead under Massachusetts
General Laws, Chapter 188, as amended to wit:

Property Location: ____196 West River Street, Orange  01364____
                         (Street address, City and Zip Code)

Deed Reference: Book __4312__

              Page __193__

Witness my hand and seal this ____6th.____ day of ____July____ 20__04__

                                              John Wilson

## COMMONWEALTH OF MASSACHUSETTS

Worcester, SS.                                  Date  July 6, 2004

On this day before me, the undersigned notary public, personally appeared __John Wilson__
_____, proved to me through satisfactory evidence of identification, which were
_____, to be the person whose name is signed on the above document, and
acknowledged to me that he/she signed it voluntarily for its stated purpose.

Return after recording to:                      Notary Public

     Adrian A. Gaucher, Jr., Esquire
     GAUCHER and GAUCHER              My Commission Expires:
     60 Hamilton Street
     Southbridge, MA  01550-1808

                                              ARA ERESIAN, JR.
                                              NOTARY PUBLIC
1 - page                                      COMMONWEALTH OF MASSACHUSETTS
                                              MY COMMISSION EXPIRES 3/31/2008
ATTEST: FRANKLIN COUNTY, MASS. H. Peter Wood, Register

# EXHIBIT I

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, Ss.

DISTRICT/HOUSING COURT
DEPT. OF THE TRIAL COURT-DUDLEY
CIVIL ACTION NO.  06-SP-03531

```
                                              )
CAMBRIDGE PROPERTIES, LLC,                    )
                                              )
          Plaintiff and                       )
          Defendant-in-Counterclaim,          )
                                              )
     v.                                       )
                                              )
JONATHAN PIEHL and                            )
LINDA WALKER,                                 )
          Defendants and                      )
          Plaintiff -in-Counterclaim.         )
                                              )
```

**BRIEF IN SUPPORT OF
EMERGENCY SUGGESTION OF BANKRUPTCY AND
NOTICE OF AUTOMATIC STAY OF FURTHER PROCEEDINGS**

I.    ISSUE PRESENTED:        DOES THE FEDERAL BANKRUPTCY AUTOMATIC
STAY, 11 U.S.C. § 362 SUSPEND FURTHER PROCEEDINGS IN THE CASE AT BAR?

II.    SHORT ANSWER:        YES.    The subject matter of the case at bar squarely
affects the rights, title or interest of a Debtor or Creditor subject to the protections of 11 U.S.C. §
362 and the plaintiff and defendants are is prohibited from using this Court in commencing or
continuing a judicial action in violation of 11 U.S.C. § 362, which states in pertinent part that
"....Except as provided in subsection (b) of this section, a petition filed under section 301,
302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities
Investor Protection Act of 1970, operates as a **stay, applicable to all entities, of -**

  **(1)**

          the commencement or continuation, including the issuance or employment
of process, of a judicial, administrative, or other action or proceeding against
the debtor that was or could have been commenced before the commencement
of the case under this title, or to recover a claim against the debtor that arose
before the commencement of the case under this title;

  **(2)**

          **the enforcement**, against the debtor **or against property of the
estate**, of a judgment obtained before the commencement of the case under
this title;" **(Emphasis Added).**



Since a Debtor or Creditor under the Bankruptcy code cannot proceed in commencing or continuing any judicial action under 11 U.S.C. § 362, to the extent that the property interests of a Creditor or Debtor under 11 U.S.C. § 362 is at risk by the parties to litigation in the instant proceeding, such proceeding cannot continue since an indispensable party would be missing and a there could not be a final adjudication of all issues and rights of such parties. See, Mass. R. Civ. P. 19.

III.   ARGUMENT

    1. PARTIES INVOLVED IN THE INVOLUNTARY PETITION

        A.    VII Holdings Company, case number 06-10935-BLS ("Bankruptcy #06-10935-BLS").

        B.    The Involuntary Petition is dated Aug. 30, 2006, which is over 2 months before the entry date of this acion.

    2. PARTIES INVOLVED IN THE INSTANT ACTION (CIVIL ACTION NO. 98-1514-A):

        A.    The plaintiff CAMBRIDGE PROPERTIES, LLC ("CPLLC").

        B.    The Defendants are JONATHAN PIEHL and  LINDA WALKER.

    3. SUBJECT MATTER COMMON TO BOTH THE INVOLUNTARY PETITION AND THE INSTANT ACTION:

        A.    Real estate located at 27 Reynolds Rd., Charlton, MA ("the Charlton Property").

    4. BACKGROUND:

        A.    The instant action was commenced by the Plaintiff on or about October 30, 2006 seeking to evict the defendants from the the Charlton Property under the claimed authority of an ownership interest stemming from a foreclosure sale on August 31, 2006.

        B.    An answer was filed on or about Nov. 13, 2006 by Defendants, challenging plaintiff's right to proceed with the eviction process and claiming a continuing interest in the Charlton Property, through a relationship with VII Holdings Company, (the "Bankruptcy Debtor").

        C.    The interest claimed by the defendants are outlined in their answer under the Tenth Affirmative Defense.

        D.    The legal interest of the Bankruptcy Debtor is to the Charlton Property is outlined in defendants answer under the Tenth Affirmative Defense.

        E.    The plaintiff has therefore been made well aware of the Bankruptcy Debtor's interest in the Charlton Property.

F.    Notice to this Court was also given of the Bankruptcy.

G.    A trial on the instant case is to commence on December 18, 2006 at 2 p.m.

H.    An Automatic Stay is in effect as of August 30, 2006.

5.    11 U.S.C. § 362. AUTOMATIC STAY

A.    The "Automatic Stay" applies by statute to Debtors and their estate under an Involuntary Petition filed under 11 U.S.C. § 303. 11 U.S.C. § 362, states in pertinent part that "....Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a **stay, applicable to all entities, of -**

**(1)**

the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, **or to recover a claim against the debtor that arose before the commencement of the case under this title**; (Emphasis Added).

B.    The plaintiff's claims and the defendants' claims impact the Debtor and it estate of the Involuntary Petition.

C.    The filing of the petition automatically stays the commencement or continuation of judicial or other proceedings against the Debtor or its estate, except under certain special circumstances such as state police powers or to protect the population from dangerous situations. See, 11 U.S.C. § 362 (b); Cf. *Commerzanstalt v. Telewide Systems, Inc.*, 790 F.2d 206 (2d Cir.1986); See also, *Midatlantic Nat'l Bank v. NJ Dept. Of Envir. Prot.*, 474 U.S. 494, 503 (1986).

D.    The Automatic Stay is designed to provide debtors with a temporary respite from creditor actions, at least until the rights of debtors and their creditors can be properly determined; and to stop any creditor actions which would disrupt an orderly and uniform distribution of nonexempt assets to creditors of the same class. See, *Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997)*(stating that "the automatic stay is among the most basic of debtor protections under bankruptcy law"); *In re Rijos, 263 B.R. 382, 2001 WL 715654, 5 (1st Cir. B.A.P. 2001); A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 998 (4th Cir. 1986)*(Citing *Matter of Holtkamp, 669 F.2d 505, 508 (7th Cir. 1982)*, for its description of the § 362 stay as "protecting the debtor from an uncontrollable scramble for its assets").

E.    **The Automatic Stay is one of the fundamental protections afforded by the Bankruptcy laws.** *Midatlantic Nat'l Bank v. NJ Dept. Of Envir. Prot.*, 474 U.S. 494, 503 (1986).

3

F.  In addition to its affect to *in personam* actions, the stay applies to **"...any act to obtain possession of property of the estate".** See, 11 U.S.C. § 362 (a)(3).

G.  **The "estate" is defined as all legal and equitable interests of the Debtor in property as of the time of the petition**. See, 11 U.S.C. § 541.

H.  The Automatic Stay remains in effect until the Debtor receives a discharge, 11 U.S.C. § 524 (a)(2) or a motion for relief from stay is allowed.

I.  Proceeding with the case at bar would place the plaintiff and defendants in contempt of the Automatic Stay.

6.  MASS. R. CIV. P. 19 REQUIRES THE PARTICIPATION OF THE BANKRUPTCY DEBTOR FOR THE INSTANT CASE TO PROCEED:

A.  **RULE 19. JOINDER OF PERSONS NEEDED FOR JUST ADJUDICATION, states in pertinent part:**

**(a) Persons to Be Joined if Feasible.** A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant.

B.  The Bankruptcy Debtor is clearly a necessary party to the litigation and trial of the instant case as it has claimed an ownership interest in the property in dispute. See, the Complaint.

D.  Proceeding with the case at bar would place the plaintiff and defendants in contempt of the Automatic Stay.

E.  If neither the plaintiff not the defendants can proceed with the litigation or trial without permission from the Bankruptcy Court, then there can be no compliance with Mass. R. Civ. P. 19.

F.  The Automatic Stay cannot be undermined by the state Courts as a result of the requisite waiver of the sovereign immunity under 11 U.S.C. § 106(a).

IV.  <u>CONCLUSION</u>

For the reason stated above, the instant litigation and schedule trial should not go forward pursuant to the Automatic Stay imposed by 11 U.S.C. § 362 as the Bankruptcy Debtor and the property interest or ownership claimed constitutes a claim or property of the estate as defined by the Bankruptcy code and laws.

4

Further, the plaintiff, and defendants are enjoined from proceeding in the instant litigation or trial, which could result in contempt of the Automatic Stay imposed by 11 U.S.C. § 362. The Bankruptcy Debtor is an indispensable parties as contemplated by Mass. R. Civ. P. 19. As neither the defendants or plaintiff may proceed with the instant litigation or trial the said litigation or trial could not proceed.

V.    WHEREFORE, the Plaintiff prays that this Court suspend any further action in the instant litigation or trial until further order of the Bankruptcy Court or the Bankruptcy matter is disposed of, or discharged.

> JONATHAN PIEHL and
> LINDA WALKER,
> By their attorney,
>
> Israel M. Sanchez, Jr., Esq.
> BBO#546217
> 472 Beechwood Street
> Cohasset, MA 02025
> (781) 964-2248

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the within:

**BRIEF IN SUPPORT OF SUGGESTION OF BANKRUPTCY AND NOTICE OF AUTOMATIC STAY OF FURTHER PROCEEDINGS**

was sent to counsel of record, by US mail, hand and/or by Fax, on December 18, 2006.

**CERTIFICATE OF SERVICE**

I, David M. Fournier, hereby certify that on the 22nd day of December, 2006, I caused the foregoing **Motion of Cambridge Properties, LLC to Dismiss Involuntary Chapter 7 Petition Nunc Pro Tunc** to be served upon the following parties by first class mail.

VII Holdings Company
2711 Centerville Road, Suite 400
Wilmington, DE 19805

John Wilson
196 West River Street
Orange, MA 01364

Office of the United States Trustee
844 King Street
Room 2207
Wilmington, DE 19899-0035

David M. Fournier

#8225799 v1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| VII HOLDINGS COMPANY, | Case No. 06-10935 (BLS) |
| Debtor. | **Hearing Date: January 9, 2007 at 10:30 a.m. (Eastern)**<br>**Objection Deadline: January 2, 2007 at 4:00 p.m. (Eastern)** |

**NOTICE OF MOTION OF SOUTHBRIDGE SAVINGS BANK FOR ENTRY OF AN
ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY NUNC PRO TUNC OR
ALTERNATIVELY, DISMISSING THE CASE NUNC PRO TUNC**

To: All parties on the Attached Service List

   **PLEASE TAKE NOTICE** that on December 22, 2006, Counsel for Southbridge

Savings Bank ("Southbridge") in the above-captioned matter filed and served the **Motion of**

**Southbridge Savings Bank for Entry of an Order Granting Relief from the Automatic**

**Stay Nunc Pro Tunc or Alternatively, Dismissing the Case Nunc Pro Tunc** (the "Motion").

   **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion

must be made in writing, filed with the United States Bankruptcy Court for the District of

Delaware (the "Bankruptcy Court"), 824 Market Street, Wilmington, Delaware 19801, and

served so as to be received no later than **January 2, 2007 at 4:00 p.m. (Eastern)** upon: (i)

Counsel for Cambridge Properties, LLC: David M. Fournier, Esquire, Pepper Hamilton LLP,

Hercules Plaza, Suite 5100, 1313 North Market Street, Wilmington; and (ii) Office of the

United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801.

   **PLEASE TAKE FURTHER NOTICE** that if no objections to the Motion are

timely filed and served in accordance with the above procedures, an order may be entered

granting the relief requested in the Motion without further notice or a hearing.  If an objection is

properly filed and served in accordance with the above procedures, a hearing with respect to the

DOCKET NO. 10
12/22/06

Motion will be held on before the Honorable Brendan L. Shannon at 824 Market Street, 6th

floor, Courtroom #1, Wilmington, Delaware 19801. Only those objections made in writing,

timely filed with the Bankruptcy Court and received by undersigned counsel and the parties set

forth herein will be considered by the Bankruptcy Court at such hearing.

**IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE,**

**THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED BY THE**

**MOTION WITHOUT FURTHER NOTICE OR HEARING.**

Dated: December 22, 2006
Wilmington, Delaware

David M. Fournier (DE No. 2812)
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, Delaware 19801
Tel: (302) 777-6500
Fax: (302) 421-8390

and

James T. Hargrove, Esq.
Peter D. Bilowz, Esq.
Goulston & Storrs, P.C.
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
Tel: (617) 482-1776
Fax: (617) 574-7621

*Counsel for Southbridge Savings Bank*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) |
| VII HOLDINGS COMPANY | ) |
| | ) |
| Debtor. | ) |
| | ) |

Chapter 7

Case No. 06-10935 (BLS)

**Hearing Date: January 9, 2007 10:30 a.m.**
**Objection Deadline: 1/2/07 4:00 p.m.**

## MOTION OF SOUTHBRIDGE SAVINGS BANK FOR
## ENTRY OF AN ORDER GRANTING RELIEF FROM
## THE AUTOMATIC STAY NUNC PRO TUNC OR
## ALTERNATIVELY, DISMISSING THE CASE NUNC PRO TUNC

Southbridge Savings Bank ("Southbridge") requests that this Honorable Court

enter an order granting Southbridge relief from the automatic stay pursuant to sections

362(d)(1) and/or (d)(4) of the Bankruptcy Code, or alternatively, dismissing this Chapter

7 case pursuant to sections 303 and 707(a) of the Bankruptcy Code, nunc pro tunc in

order to validate a foreclosure sale of Southbridge's collateral, certain real property

located at 27 Reynolds Road, Charlton, Massachusetts (the "Subject Property"). That

foreclosure sale was authorized by order of the United States Bankruptcy Court for the

District of Massachusetts (Boroff, J.) in an involuntary Chapter 7 case of the co-owner of

the Subject Property, Jonathan C. Piehl ("Piehl"), and was completed on August 31,

2006, the day after this involuntary Chapter 7 petition was filed. Following the sale, the

purchaser, Cambridge Properties LLC ("Cambridge"), commenced a summary process

action in the Massachusetts Housing Court, Dudley Division, to evict Piehl. Piehl, joined

by his sister, Linda S. Walker ("Walker"), and Ara Eresian, Jr. ("Eresian"), an individual

with ties to the Subject Property and to the petitioning creditor, John Wilson, is now

attempting to bring that summary process action to a halt. Piehl claims as his *sole*

defense to that action that the filing of this Chapter 7 case rendered the foreclosure sale

(and transfer of title) to Cambridge a nullity by virtue the Debtor's putative 50% junior

mortgage interest on Eresian's 50% putative interest in the Subject Property obtained

from an entity controlled by Eresian, apparently for no consideration, only one day before

the bankruptcy filing and two days before the scheduled foreclosure. As set forth in more

detail below, the events preceding this case and the relationship of the parties show the

unmistakable marks of an abusive, bad faith filing. As such, cause exists to annul the

automatic stay, or alternatively, to dismiss the case, retroactively to the date of the

involuntary filing in order to validate Southbridge's foreclosure sale.

## Background

*The History of the Subject Property*

     1.     The history of the Subject Property and Southbridge's interest in the

Subject Property is well documented in the Chapter 7 case of Piehl, Case No. 02-40711-

HJB. [1]

     2.     In 1999, Piehl and Walker inherited the Subject Property from their

mother, Annie Piehl, as tenants in common subject to Southbridge's mortgage interest.

     3.     On June 29, 2001, a default judgment entered against Piehl and Walker in

foreclosure proceedings initiated by Southbridge in Worcester Superior Court (Case No.

01-655B), authorizing Southbridge to proceed with its judicial foreclosure of the Subject

Property.

---

[1]      A more complete recitation of the facts evidencing Southbridge's mortgage interest as well as the events leading up to Southbridge's motion for relief from the automatic stay in Piehl's bankruptcy case, including Southbridge's prior attempts to foreclose on the Subject Property, can be found in the *Motion of Southbridge Savings Bank for Relief from the Automatic Stay* (Case No. 02-40711, Docket No. 175).

4.     On or about August 31, 2001, Walker, individually, conveyed her one-half undivided interest in the Subject Property to Eresian, Trustee of ZuZu Realty Trust.

5.     On or about September 18, 2001, Eresian sought unsuccessfully to enjoin the foreclosure sale of the Subject Property by filing an action for injunctive relief in the Worcester Superior Court (Case No. 01-1935B).

6.     Eresian was the winning bidder at the foreclosure sale but subsequently failed to tender the purchase price and consummate the sale.

7.     Before a second foreclosure sale could be completed, Walker and Eresian filed the involuntary Chapter 7 petition against Piehl, purportedly based on their joint ownership of a promissory note given by Piehl.

8.     On or about February 24, 2006 (during Piehl's bankruptcy case), Eresian, as trustee of ZuZu Realty Trust, allegedly gave a promissory note and as security therefor, a mortgage of his one-half undivided interest in the Subject Property to Hobbs Abstract Company, which on information and belief is a company owned or controlled by Eresian or his family.[2]

9.     On or about March 10, 2006, Southbridge filed its motion for relief from stay to foreclose on the Subject Property

10.     On May 16, 2006, over Eresian's objections, the United States Bankruptcy Court for the District of Massachusetts granted Southbridge's motion for relief from stay. A copy of the bankruptcy court's order is attached hereto as Exhibit A.

11.     On or about August 29, 2006, Hobbs Abstract Company assigned to the Debtor a fifty percent interest in Hobb's putative junior mortgage on Eresian's putative

-3-

fifty percent interest in the Subject Property. The Assignment of Mortgage Deed does not identify any consideration paid by the Debtor for the assignment. A copy of the Assignment is attached hereto as Exhibit B. On information and belief, Hobbs Abstract Company, or persons who control Hobbs, had actual notice of a scheduled foreclosure sale of the Subject Property by Southbridge.

      12.    One day later, on August 30, 2006, Wilson filed this involuntary Chapter 7 petition against the Debtor.

      13.    On August 31, 2006, after proper notice to all parties entitled to notice, Southbridge sold the Subject Property at auction to Cambridge.

      14.    On information and belief, Robert Cotton, counsel for Southbridge in the Piehl's Chapter 7 case, received a letter on August 30, 2006 or August 31, 2006 from Piehl stating that a bankruptcy petition had been filed in Delaware against "a creditor with the name of VII Holdings Co." Mr. Cotton, having no notice of the relevance of that letter to the Subject Property or the scheduled foreclosure, did not forward the letter to his client prior to the foreclosure.[3] A copy of the letter is attached hereto as Exhibit C. As discussed below, Piehl's letter, taken together with his sister's affidavit filed earlier in Piehl's Chapter 7 case explaining Eresian's plan to obtain Piehl's interest in the Subject Property (see *Affidavit of Linda S. Walker in Support of the Opposition of Ara Eresian, Jr., Trustee of ZuZu Realty Trust to the Motion of Tali A. Tomsic, Chapter 7 Trustee for Jonathan C. Piehl for Partial Summary Judgment*, a copy of which is attached hereto as

---

[2]    According to public records, Hobbs Abstract Company is a trust organized under Massachusetts law, M.G.L. c. 182, §12. One of the named trustees is a one Melanie Eresian.

[3]    It is not apparent at all that Cotton could have or should have interpreted the letter to provide notice that the foreclosure sale of the Subject Property was stayed by a bankruptcy filing.

Exhibit D), is only further proof that the petitioning creditor and the true beneficiaries of the automatic stay, Piehl and Eresian, were complicit in this bad faith filing.

15.    Cambridge was compelled to commence a summary process action in the Massachusetts Housing Court in Dudley, Massachusetts (Case No. 06-SP-03531) when Piehl refused to vacate the Subject Property following the foreclosure sale. In that action, Piehl contends that the sale to Cambridge was void *ab initio* by virtue of the Debtor's involuntary filing on the eve of the foreclosure.

*The Relationship Among the Debtor, the Petitioning Creditor*
*and Other Beneficiaries of the Debtor's Automatic Stay and*
*Other Circumstantial Evidence*

16.    It is no coincidence that Wilson filed this involuntary case on the eve of Southbridge's foreclosure sale to Cambridge or that Piehl's defense to the Massachusetts summary process action seeking his eviction from the Subject Property *solely* depended on the filing of this involuntary case prior to completion of the foreclosure sale. As a review of the bankruptcy court records reveals, this is not the first time an involuntary petition was filed by Wilson to stay a foreclosure of property nor is this the first involuntary case involving the Debtor.

17.    On or about September 16, 2005, less than a year before this bankruptcy case, the same John Wilson filed an involuntary Chapter 7 petition against VII Holdings Company, the above-captioned Debtor, in the United States Bankruptcy Court for the Middle District of Alabama, based on what is presumably the same promissory note debt asserted by Wilson as the basis for this involuntary filing. A copy of that involuntary Chapter 7 petition and docket report is attached hereto as Exhibit E.

18.    Not unlike the instant case (the specific facts of which are discussed above), the Debtor acquired a junior mortgage interest in property subject to a prepetition foreclosure process from the same Ara Eresian, Jr. or entities he controlled only days before the filing of that case.[4]  Wilson's involuntary petition immediately stayed that foreclosure process.  Copies of certain relevant documents evidencing the prepetition transfers through which the Debtor obtained an interest in the subject property there, including a copy of the Assignment to the Debtor, are attached hereto as Exhibit F.

19.    The Alabama case was dismissed on or about December 21, 2005 for want of prosecution by Wilson.  Notwithstanding the quick dismissal, however, it would appear that the Alabama case was successful at least in one respect: it delayed foreclosure of property in which Eresian held an interest.

20.    Although details are somewhat sketchy, Wilson's ties to Eresian clearly predate the Alabama bankruptcy case and this case.  In another involuntary Chapter 7 case filed by Wilson[5] against one Lawrence N. Petricca, Sr. in late 2004 in the United States Bankruptcy Court for the District of New Hampshire,[6] Eresian filed an affidavit in support of Wilson's opposition to a motion for transfer of venue.  In that affidavit, Eresian claimed that the ZuZu Realty Trust, in which he is the sole trustee, was the "majority beneficiary of the petitioning creditor."[7]  A copy of Eresian's Affidavit dated September 27, 2004 is attached hereto as Exhibit G.  The involuntary petition against

---

[4]    Allison L. Randle, the owner of the subject property, gave a mortgage to Eresian, as Trustee of the ZuZu Realty Trust which was recorded on or about September 9, 2005.  Thereafter, Eresian assigned the mortgage to the Debtor for no stated consideration.  This mortgage assignment was recorded on or about September 13, 2005, two days before Wilson filed the involuntary Chapter 7 petition against the Debtor in Alabama.

[5]    In his capacity as "Trustee of JW Nominee Trust."

[6]    This case was transferred to the United States Bankruptcy Court for the District of Massachusetts, Case No. 04-45458 (Boroff, J.).

Petricca was ultimately dismissed by the bankruptcy court in May 2005.  Interestingly,
however, Eresian filed his own involuntary petition against Petricca in the same court in
October 2005.[8]

21.     Other public records tend to negate any inference that the intersection of
Wilson and Eresian in this proceeding is mere coincidence.  For instance, Eresian appears
as the notary public for Wilson's Declaration of Homestead filed on or about August 27,
2004 in the Franklin Registry of Deeds, Book 04683, p. 182.  A copy of the Declaration
of Homestead is attached hereto as Exhibit H.  More still, based on a cursory review of
the civil dockets for cases filed in the Commonwealth of Massachusetts, Worcester
Superior Court from 2001 to present, Wilson and Eresian appear as co-defendants in no
less than two civil actions.  Another common thread is Wilson's and Eresian's shared
counsel, Adrian A. Gaucher, Jr., a Massachusetts attorney who was disbarred in late
2005.  Mr. Gaucher represented Wilson in the Petricca bankruptcy and is identified on
several documents and/or recorded instruments in which Wilson, Eresian or both are also
identified.

22.     Piehl's curious letter to Attorney Cotton (Exhibit C), purportedly written
and sent on August 30, 2006, the involuntary petition date, also establishes an interesting
nexus between Piehl and Wilson and when considered together with Linda Walker's
Affidavit (Exhibit D) discussing Eresian's desire to obtain Piehl's interest in the Subject

---

[7]       One man's view of Wilson and Eresian and their role in that case is colorfully revealed in the
various pleadings filed by Mr. Petricca (Case No. 04-45458).
[8]       That involuntary petition, too, was dismissed approximately six months later.

Property, explains the true purpose of the involuntary filing.[9]  In that letter, Piehl states

that he was told by "a Mr. John Wilson" that a bankruptcy petition had been filed against

VII Holding Company and that, referring to Cotton, "maybe you should contact the

Delaware bankruptcy court."  Based on the tone of the letter, it is clear that Piehl tries to

downplay the significance of the event (*i.e.,* the bankruptcy filing) to him and the

existence of any connection to Wilson.  While this is the only piece of evidence known at

this time tying Piehl and Wilson together, any assertion that their communications on or

around the filing is mere coincidence is simply not credible.

      23.    While identifying a direct relationship between the Debtor and the parties

to the Massachusetts summary process action has proven more difficult, Cambridge

should be entitled to rely on (i) the statement made by Eresian's counsel prior to a status

conference held in the Massachusetts Housing Court on December 18, 2006 that Mr.

Eresian "controls" the Debtor and (ii) Mr. Piehl's and Ms. Walker's *Brief in Support of*

*Emergency Suggestion of Bankruptcy and Notice of Automatic Stay of Further*

*Proceedings* filed in the Housing Court on December 18, 2006, which alleges, among

other things, that the "Defendants [are] challenging plaintiff's right to proceed with the

eviction process and claiming a continuing interest in the Charlton Property, *through a*

*relationship with VII Holdings Company...*" *See* Brief at p. 2 (emphasis supplied).  A

copy of the Defendants' Brief is attached hereto as Exhibit I.

---

[9]    By staying the foreclosure sale, Piehl's interest in the Subject Property would be preserved
(potentially) allowing Eresian to carry out his plan to own the entire Subject Property and unite that parcel
under common ownership with an adjacent property being purchased from Walker for the purpose develop
townhouses.

**Request for Relief**

24.    Based on the evidence, this is a classic bad faith filing. It is abundantly clear that John Wilson and the Debtor have employed the bankruptcy process solely to deny Southbridge its legitimate contractual and state law foreclosure remedies and invalidate a proper sale to Cambridge. Accordingly, Southbridge respectfully requests that this Court (i) annul the automatic stay retroactively, as it is permitted to do pursuant to section 362(d)(2) and (d)(4), or alternatively, dismiss this Chapter 7 case retroactively in order to validate the foreclosure sale to Cambridge and (ii) award damages and sanctions against Mr. Wilson and any other persons found complicit in this bad faith filing. The tactics employed here amount to a clear abuse of the bankruptcy process and should not be tolerated by any bankruptcy court.

**Legal Authority and Argument**

25.    The specific statutory predicates upon which Southbridge relies in this Motion are sections 362(d), 303 and 707(a) of the Bankruptcy Code.

26.    Section 362(d) of the Bankruptcy Code provides, in relevant part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, *annulling,* modifying or conditioning such stay--

(1) *for cause*, including the lack of adequate protection of an interest in property of such party in interest...

(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved either -

(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

(B) multiple bankruptcy filings affecting such property.

(emphasis supplied).

27.    Section 707(a) provides in relevant part:

The court may dismiss a case under this chapter only after notice and a hearing and only *for cause*....

(emphasis supplied).

28.    Southbridge submits that relief from the automatic stay under sections 362(d) (1) and (4), or alternatively, dismissal pursuant to sections 303 and 707(a),[10] nunc pro tunc, is necessary and warranted.

29.    While as a general matter the filing of an involuntary bankruptcy petition operates as a stay of, among other things, "act[s] to obtain possession of property of the estate," *see* 11 U.S.C. §362(a)(3), the "automatic stay" is "not an immutable article of faith." *In re Napoleon G. Soares*, 107 F.3d 969, 976 (1st Cir. 1997). It is black letter law in the Third Circuit that actions violating the automatic stay are voidable, not void, and may be validated *post facto* where circumstances warrant. *In re Siciliano*, 13 F.3d 748, 752 (3d Cir. 1994) ("finding that the plain language of section 362(d), in particular, the term "annulling," clearly contemplates the availability of retroactive relief"). Even where a party has violated the stay with notice of a debtor's bankruptcy filing, a court, nevertheless, has the discretion to annul the stay on a finding of bad faith. *See In re Boates*, 2006 U.S. Dist. LEXIS 2256 (E.D. Pa. January 23, 2006) (affirming the

bankruptcy court's retroactive annulment of the automatic stay to validate a post-filing

foreclosure sale when the debtor's filing was found to be made in bad faith).

      30.     Courts have long recognized that the lack of good faith in filing a petition

is a basis for annulling the automatic stay. *See, e.g., Carolin Corp. v. Miller*, 886 F.2d

693, 699 (4th Cir. 1989) ("Section 362(d)(1)'s 'for cause' language authorizes the court

to determine whether, with respect to the interests of a creditor seeking relief, a debtor has

sought the protection of the automatic stay in good faith."); *In re Arnold*, 806 F.2d 937,

939 (9th Cir. 1986) (same); *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071-72 (5th Cir.

1986). Bad faith is also a basis for dismissal under section 707(a). *See In re Laguna*

*Assoc. Partnership,* 30 F.3d 734, 737-38 (6th Cir. 1994) ("[W]e see no substantive

difference between the cause requirement for dismissal and the cause requirement for

relief from the automatic stay....").

      31.     There is no bright line test or litmus test for determining whether a chapter

7 petition has been brought in good faith or in bad faith. *See Myers*, 334 B.R. at 145; *In*

*re Claren, Inc.*, 1992 U.S. Dist. LEXIS 17464 (D. Pa. 1992). Such a determination

involves an examination of all facts and circumstances surrounding the case. *Myers*, 334

B.R. at 145. Some courts have even relied upon the "smell test" in making such a

determination. *See id.* (citing to *Morgan Fiduciary Ltd v. Citizens & Southern Bank*, 95

B.R. 232, 234 (S.D. Fla. 1988)).

      32.     Under the totality of the circumstances approach, factors relevant to the

court's inquiry into good faith generally include: (1) the timing of the petition; (2) how

---

[10]     In order to avoid some repetition here, Southbridge specifically relies on the legal authority and
analysis contained in Cambridge's motion to dismiss, filed contemporaneously herewith, as a basis for
Southbridge's relief in the alternative, dismissal.

the filing affects creditors; (3) the debtor's property has been posted for foreclosure; (4) the transfer of distressed property into the debtor for no or little consideration in close proximity to the filing; (5) the debtor has no assets other than the recently transferred property; and (6) the debtor has no or minimal unsecured debt. *See Boates,* 2006 U.S. Dist. LEXIS 2256; *Laguna,* 30 F.3d at 738; *In re Duvar Apt., Inc.,* 205 B.R. 196, 200 (9th Cir. B.A.P. 1996).

33.    Presence of the last 4 factors listed above identifies a pattern of conduct exemplifying bad faith cases known as "new debtor syndrome." *See Laguna*, 30 F.3d at 738; *Duvar*, 205 B.R. at 200; *see also In re G-2 Realty Trust*, 6 B.R. 549, 553-54 (Bankr. D. Mass. 1980) (also finding "new debtor syndrome" where the debtor is result of a legal transformation at or near the time a petition is filed from an entity form that is ineligible for bankruptcy relief). It has been said that in such circumstances, the court must satisfy itself that the debtor demonstrates *exemplary motives and scrupulous good faith* before allowing the debtor to obtain the benefits of bankruptcy. *See G-2 Realty*, 6 B.R. at 553-54 (dismissing petition where the transformation of entity form for eligibility purposes close in proximity to bankruptcy filing did not demonstrate good faith).

34.    According to at least one court, a showing of "new debtor syndrome" establishes a *prima facie* case of bad faith filing which can only be overcome if the debtor is able to demonstrate a good faith business reason for the transfer and the bankruptcy filing. *See Duvar*, 205 B.R. at 200. That court further held that "if, in addition to the *prima facie* showing of bad faith, the creditor proves that its substantive or procedural rights have been adversely affected by the transfer and filing, "cause" is established pursuant to 11 U.S.C. §362(d)(1) and the Court must lift the stay." *Id.* at 201 (internal

citations omitted). In *Duvar*, the debtor obtained its sole asset, an apartment building which had been subject to the early stages of a foreclosure process, only months prior to the bankruptcy filing and for zero consideration. Accordingly, the court found that the creditor established a *prima facie* case of bad faith filing and that the burden shifted to the debtor to prove good faith.

35.     The fact that a particular filing involves an involuntary petition brought by a creditor, as opposed to a voluntary petition filed by the debtor, is of no consequence and must not diminish the court's overarching responsibility to conduct an inquiry at the outset of a case to determine its legitimate purpose. *See, e.g., Basin Elec. Power Co-op v. Midwest Processing Company,* 769 F. 2d 483 (8th Cir. 1985); *In re Winn,* 49 B.R. 237, 239 (Bankr. M.D. Fla. 1985); *G-2 Realty,* 6 B.R. at 553. "A decision that the filing of an involuntary petition insulates the debtor [or petitioning party] from an examination into its good faith or lack thereof, would almost certainly encourage collusion between debtors seeking to fraudulently procure the jurisdiction of the bankruptcy court (or in some other manner abuse the purposes of the Code)." *G-2 Realty,* 6 B.R. at 553.

36.     Applying the above legal standards to the facts of this case, the inescapable conclusion is that this Chapter 7 case is in fact a "new debtor syndrome" case, thus warranting retroactive relief from the stay "for cause" pursuant to section 362(d)(1) of the Bankruptcy Code, or alternatively, dismissal. The existence of the following facts weigh *overwhelmingly* in favor of a finding, if those facts do not already prove *conclusively,* that procurement of this Court's jurisdiction over the Debtor and the Subject Property was made in bad faith: (i) the pre-petition transfer to a "new debtor" of an interest in the Subject Property by Eresian whose participation in Piehl's Chapter 7

-13-

case was significant; (ii) the fact that relief from stay with respect the same Subject Property was granted in Piehl's Chapter 7 case; (iii) the proximity of that transfer to both the scheduled foreclosure sale of the Subject Property and the bankruptcy filing; (iv) Wilson's ties to Eresian and his relationship with the Debtor in a prior involuntary case; and (v) the Debtor's apparent lack of creditors, other than Wilson.[11]   Given the special circumstances of this case and the harm to both Southbridge and Cambridge if the foreclosure sale is invalidated, Southbridge submits that retroactive relief from the stay or dismissal is especially critical and warranted in this case.[12]

37.    There is no doubt that *but for* the eleventh-hour assignment of a partial junior mortgage interest from an Eresian-affiliated entity, Hobbs Abstract Company, to another arguably Eresian-affiliated entity, the Debtor, for no stated consideration, the Debtor would have had absolutely no claim to an interest, however tenuous, in the Subject Property at the time of commencement of its Chapter 7 case.  Consequently, the filing could have no way of affecting the validity of the foreclosure sale from Southbridge to Cambridge.  Stated differently, had the transfer not been effected prepetition, this involuntary Chapter 7 case would not have served *any* (even illegitimate) purpose.

38.    Mr. Wilson will likely argue that Eresian's transfer of an interest in the Subject Property within days of the filing is merely coincidence.  If that were true, then

---

[11]    That this "new debtor" may have also cured eligibility issues with respect to the other Eresian-related entities claiming an interest in the Subject Property, namely ZuZu Realty Trust and Hobbs Abstract Company, would provide yet another basis for invoking the "new debtor syndrome" presumption.  It has not been confirmed at this time that those entities would or would not have been eligible to file for bankruptcy protection.

[12]    Piehl's letter to Southbridge's counsel on or about August 30, 2006 should not change the result here.  Even if that letter could be deemed to have provided sufficient notice to Southbridge that its scheduled foreclosure sale was stayed, and that proposition is dubious, at most, the letter proves that Piehl and Eresian, not the Debtor, were the true intended beneficiaries of the Debtor's automatic stay and thus establishes that this filing was made in bad faith.

Mr. Wilson is no stranger to coincidence as evidenced by (i) his earlier involuntary filing against the Debtor in the United States Bankruptcy Court for the Middle District of Alabama and (ii) his ties to Eresian, whose sole act of transferring a partial interest in the Subject Property compels Southbridge to intervene in this case.

39.    Mr. Wilson was wise enough not to refile against the Debtor in Alabama. Similarly, Mr. Eresian was wise enough not to attempt these shenanigans in Massachusetts where his reputation as a serial litigant precedes him. [13] The motive behind filings in either of those jurisdictions would have been quickly made transparent. One can only presume that Eresian and Wilson hoped that the true nature of their conduct would not come to light before this Court until they had achieved their goal of clouding title to the Subject Property.

40.    Under the facts, cause exists to annul the stay under section 362(d)(1) or alternatively, dismiss the Chapter 7 case under sections 303 and 707(a).

41.    Based upon the same facts discussed above, Southbridge submits that it is also entitled to section 362(d)(4) relief.[14]  Section 362(d)(4) provides an independent basis for relief from the stay. To obtain section 362(d)(4) relief, the court must find that the filing (1) was part of a scheme to delay, hinder and defraud creditors that (2) involved

---

[13]    The number of cases in which Eresian has had involvement is staggering. A search of the party index for the Massachusetts Superior Court alone appears to reveal that Eresian is or was a party to at least 62 civil actions (36 as plaintiff and 26 as defendant). This count does not include the numerous cases filed by or against other Eresian-affiliated entities or family members. A search of the party index for the United States Bankruptcy Court for the District of Massachusetts shows that Eresian was involved in at least 10 bankruptcy cases or adversary proceedings.

[14]    Southbridge acknowledges that relief under section 362(d)(4) would only be necessary to the extent that the Court does not grant retroactive relief under section 362(d)(1), validating the foreclosure sale. By virtue of the foreclosure sale, title to the property passed to Cambridge free and clear of all interests in the Subject Property, including the Debtor's purported partial junior mortgage interest, with such interests attaching to any surplus proceeds of the sale. Accordingly, subsequent bankruptcy filings by parties claiming an interest in the Subject Property prior to the foreclosure sale could not effect a stay with respect to the Subject Property.

either (A) a transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or (B) multiple bankruptcy filings affecting such real property.

     42.    Section 362(d)(4) was only recently enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 to codify the practice of some bankruptcy courts in granting *in rem* relief from stay pursuant to section 105(a). *See, e.g., County of Fresno v. Golden State Capital Corp.*, 317 B.R. 144, 149 (Bankr. E.D. Cal. 2004; Kimberly L. Nelson, ABUSIVE FILINGS: CAN COURTS STOP THE ABUSE WITHIN THE CONFINES OF THE BANKRUPTCY CODE?, 17 Bankr. Dev. J. 331, 346-47 (2000). Section 362(d)(4) was intended by Congress "to reduce abusive filings." H.R. Rep. 109-31(1) at 69 (2005). Unlike the other provisions of section 362(d), section 362(d)(4) provides *in rem* relief barring the automatic stay from arising in any subsequent bankruptcy case (for two years) with respect to the property. This added protection is particularly necessary to a secured party seeking meaningful relief where the same property might otherwise be subjected to multiple bankruptcy filings by more than one debtor.

     43.    Under the facts here, not only do the involuntary Chapter 7 petition and the surreptitious transfers of "interests" in the Subject Property preceding the filing constitute a scheme to delay, hinder and defraud creditors, but also they constitute a fraud on this Court and an abuse of the bankruptcy process. If Congress' clearly expressed intention for enacting section 362(d)(4), to "reduce abusive filings," is to mean anything, then filings, such this Chapter 7 petition, must not be tolerated.

## Conclusion

44.    This Court should see the involuntary petition filed against the Debtor for what it really is: a fraudulent device driven by the desire to prevent a valid foreclosure of the Subject Property.  Because this Court is duty bound to rein in such abuses, the appropriate remedy is entry of an order annulling the automatic stay, or alternatively, dismissing this case, nunc pro tunc.

## Reservation of Rights

45.    Southbridge expressly reserves its right to amend or supplement this pleading or file such other pleadings as it may deem necessary, including, but not limited to, seeking a finding that the automatic stay did not stay the foreclosure sale of the Subject Property or seeking transfer of venue.

WHEREFORE, Southbridge respectfully requests entry of an order (i) granting to Southbridge relief from the automatic stay, or alternatively, dismissing this case, nunc pro tunc to the date of the involuntary filing, (ii) declaring that the foreclosure sale conducted by Southbridge on August 31, 2006 was not invalidated by the filing of the involuntary petition against the Debtor, (iii) awarding damages and sanctions against John Wilson and any other persons found complicit in this bad faith filing, and (iv) granting to Southbridge such other and further relief as this Court determines just and proper.

Respectfully submitted,

SOUTHBRIDGE SAVINGS BANK

By its counsel,

/s/ David M. Fournier
David M. Fournier (DE No. 2812)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19801
Telephone: (302) 777-6500

- and -

James T. Hargrove, Esq. (BBO # 550975)
Peter D. Bilowz, Esq. (BBO # 651383)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, Massachusetts 02110-3333
Telephone: (617) 482-1776
Facsimile: (617) 574-7621

Dated:  December 22, 2006

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

IN RE:                                    CHAPTER 7
       JONATHAN C. PIEHL,                 CASE NO. 02-40711.9
          Debtor

ORDER GRANTING RELIEF FROM AUTOMATIC STAY
AND AUTHORITY TO FORECLOSE MORTGAGE

        After review of Petitioner Southbridge Savings Bank's
Affidavit of Non-Compliance filed with this Court, it is hereby
ordered that:

        Petitioner is granted Relief from Automatic Stay and is,
hereby, authorized to proceed with exercising its rights under
its agreements with the Debtor and under applicable law (subject
to Debtor's discharge, if any), including, without limitation,
taking possession of and/or foreclosure of its mortgage as set
forth in Worcester District Registry of Deeds, Book 17026, Page
365 on the property located at 27 Reynolds Road, Charlton,
Worcester County, Massachusetts and to bring such actions,
including eviction proceedings in accordance with state law as
may be appropriate or necessary to obtain complete possession
thereof;

Dated this 16 of May , 2006 at the United States
Bankruptcy Court.

_____
                J. BORUT
United States Bankruptcy Court Judge

# EXHIBIT B

After recording please return to:

VII Holdings Company
2711 Centerville Road – Suite 400
Wilmington, DE  19808



Bk: 39663 Pg: 40  Doc: ASM
Page: 1 of 2  08/29/2008 11:24 AM

## ASSIGNMENT OF MORTGAGE DEED

**Hobbs Abstract Company,** holder of a Mortgage Deed given by Ara Eresian, Sr., Trustee of KNG Realty Trust u/d/t dated July 6, 1990 and recorded with the Worcester District Registry of Deeds in Book 12884, Page 129 and Ara Eresian, Jr., Trustee of Zu Zu Realty Trust u/d/t dated October 31, 1996 and recorded with the Worcester District Registry of Deeds in Book 18790, Page 4 to Hobbs Abstract Company, dated February 24, 2006 and recorded with the Worcester District Registry of Deeds on March 1, 2006 in Book 38488, Page 51, as confirmed by instrument dated August 1, 2006 and recorded with the Worcester District Registry of Deeds on August 1, 2006 in Book 39500, Page 317, do hereby sell, assign, bargain, transfer, convey and set over unto **VII Holdings Company,** a corporation duly organized and existing under the laws of the State of Delaware, with a principal address in care of 2711 Centerville Road, Suite 400, Wilmington, State of Delaware, (hereinafter "Assignee"), a fifty (50%) per cent interest in and to Assignor's right, title and interest in said Mortgage Deed and each Borrower's Term Note referenced therein and secured thereby, as such notes may be modified, extended, reissued, replaced and/or amended.

TO HAVE AND TO HOLD the same from this day forward with all of the rights, privileges and appurtenances thereto belonging.

*EDe*

Signed under seal this 9th. day of August, 2006.

_____          *Melanie C. Eresian*

Witness –                                          Melanie C. Eresian, Trustee
                                                   Hobbs Abstract Company

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                                     August 9 , 2006

Then personally appeared the above named Melanie C. Eresian, personally
known to me, in her capacity as Trustee of Hobbs Abstract Company, and
acknowledged the execution of the foregoing instrument to be her free act and deed
as Trustee thereof, and not individually, before me,

                              *Linda Custer*

                              Notary Public
                              My Commission Expires:  6 / 11 / 2010  seal

2

ATTEST: WORC. Anthony J. Vigliotti, Register



Bk: 38480 Pg: 51  Doc: MTG
Page: 1 of 6  03/01/2006 09:13 PM

### MORTGAGE DEED

KNOW ALL MEN BY THESE PRESENTS, that We, <u>Ara Eresian, Sr., Trustee of KNG Realty Trust</u>, created pursuant to a written Declaration of Trust dated July 6, 1990 and recorded with the Worcester District Registry of Deed in Book 12884, Page 129, and <u>Ara Eresian, Jr., Trustee of Zu Zu Realty Trust</u>, created pursuant to a written Declaration of Trust dated October 31, 1996 and recorded with the Worcester District Registry of Deeds in Book 18790, Page 4, hereby grant unto <u>Hobbs Abstract Company</u>, 2 Main Street, Room 2, Worcester, County of Worcester, Commonwealth of Massachusetts, with *mortgage covenants* to secure the payment and performance of all obligations including but without limitation each Borrower's Term Note of even date, as such notes may be modified, extended, reissued, replaced and/or amended.

For Description of Premises securing said Mortgage Deed, see Exhibits "A" and "B" attached hereto and incorporated herein in their entirety by reference.

WITNESS our hands and seals this 24th, day of February, 2006.

_Ara Eresian, Sr., Jr._

Ara Eresian, Sr., Trustee of KNG Realty Trust
u/d/t dated July 6, 1990,
and not individually

Ara Eresian, Jr., Trustee of Zu Zu Realty Trust
u/d/t dated October 31, 1996,
and not individually

*(left margin, rotated)* LOCUS: 2 Rice Road, Millbury, MA (Exhibit "A") 27 Reynolds Road, Charlton, MA (Exhibit "B").

*(handwritten, lower left)*
HER.
After recording
please return to:
Hobbs Abstract Co.
2 Main Street - Rm. 2
Worcester, MA 01608

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                                      February 24, 2006

The personally appeared the above named Ara Eresian, Jr., being personally known to me, in his fiduciary capacity as Trustee of Zu Zu Realty Trust, and not individually, and acknowledged the foregoing instrument to be his free act and deed, before me,

PAULA S. SELVITELLA
Notary Public
Commonwealth of Massachusetts
My Commission Expires July 2, 2010

_Paula S. Selvitella_
Paula S. Selvitella, Notary Public

My Commission Expires:  7/2/10

After recording, please hold:

Hobbs Abstract Company
2 Main Street – Room 2
Worcester, MA  01608

# EXHIBIT C

Jonathan C. Piehl
27 Reynolds Road
Charlton, Mass..01507

August 30,2006

Atty. Robert Cotton                    
Neal Law Offices, LLP
173 Charlton Road, Route #20
P. O. Box 539
Sturbridge, Mass. 01566

Dear Atty. Cotton:

This is to notify you that I have been told by a Mr.  John
Wilson that a bankruptcy petition has been filed in Delaware
against a creditor with the name of VII Holdings Co. This company
has a lien on my house.  Maybe you should contact the Delaware
bankruptcy court.  I don't know how to do that.

Very truly yours,

Jonathan C. Piehl

**EXHIBIT D**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION


-------------------------------------------------------X

In re:

      JONATHAN C. PIEHL,                    Chapter 7
                                            Case No. 02-40711-HJB

           Debtor

-------------------------------------------------------X

TALI A. TOMSIC,
CHAPTER 7 TRUSTEE OF
JONATHAN C. PIEHL,

           Plaintiffs,


                                            Adversary Case
                                            No.  03-4284

ARA ERESIAN, JR., INDIVIDUALLY
AND AS TRUSTEE OF ZU ZU REALTY
TRUST,

and

LINDA S. WALKER, INDIVIDUALLY
AND AS BENEFICIARY OF
ZU ZU REALTY TRUST,

           Defendants

-------------------------------------------------------X

AFFIDAVIT OF LINDA S. WALKER IN SUPPORT OF THE OPPOSITION
OF ARA ERESIAN, JR., TRUSTEE OF ZU ZU REALTY TRUST TO THE
MOTION OF TALI A. TOMSIC, CHAPTER 7 TRUSTEE FOR JONATHAN
C. PIEHL FOR PARTIAL SUMMARY JUDGMENT

I, Linda S. Walker, frst being duly sworn, do depose and say upon my own personal knowledge, the following:

1. I am the sole owner of the premises located and more commonly known as 23 Reynolds Road, Charlton, Worcester County, Massachusetts.

2. The premises consist of approximately 1.8 acres of land improved with a single family ranch style dwelling house. I presently reside there with my family.

3. Originally, this 1.8 acre lot[1] was a part of the land located at 27 Reynolds Road, Charlton, Worcester, County, Massachusetts which was formerly occupied and owned by my parents, Carl W. and Annie Piehl, as tenants by the entirety with the right of survivorship. (My parents are both deceased). The land area for the 27 Reynolds Road property consists of approximately 2.4 acres improved with a single family ranch style dwelling house. Presently my brother, the debtor, Jonathan C. Piehl, who is my only sibling, resides there with his family.

4. Together, the two parcels consist of approximately 4.2 acres of land.

2

5. When my father passed away in August, 1978, his share in the 27 Reynolds Road property devolved by operation of law to my mother.

6. When my mother passed away in March, 1999 intestate, the 27 Reynolds Road property devolved by operation of law to both my brother and I, as co-tenants in common each holding an undivided one-half interest.

7. At the time of my mother's passing, the 27 Reynolds Road property was encumbered by a small first mortgage in the original principal amount of $ 12,000.00 which had been executed and delivered by my mother in favor of the Southbridge Savings Bank.

8. In August, 2001, I accepted an offer from Ara Eresian, Jr. on behalf of Zu Zu Realty Trust to sell all of my undivided one-half right, title and interest in and to the 27 Reynolds Road property to the Trust. The offer was made subject to (i) the Southbridge Savings Bank mortgage, which Mr. Eresian, as Trustee of the Trust assumed and agreed to pay, and (ii) any and all municipal charges due and owing to the Town of Charlton which attached to the property. Subject to the aforesaid terms and conditions, on or about August 31, 2001 I executed and delivered a quitclaim deed to Mr. Eresian, as Trustee as aforesaid, of all of my right, title and interest in the 27 Reynolds Road property.

---

[1]    My then husband and I purchased the detached 1.8 acre lot which then became known as the 23 Reynolds Road property from my parents in February, 1978.

3

9. I am not a beneficiary of the Zu Zu Realty Trust, nor to date have I ever been one.

10. Since that transfer, Mr. Eresian and I have discussed many times the possibility of reuniting the two properties into one parcel of land again so that they may be more advantageously developed. In January, 2004 we finally came to an agreement whereby I accepted an offer from him on behalf of Zu Zu Realty Trust for all of my right, title and interest in the 23 Reynolds Road property. The sale price is $ 350,000.00. The only condition which attaches to the accepted offer is that Mr. Eresian must succeed in acquiring the one-half interest in the 27 Reynolds Road property the Trust doesn't own from my brother's bankruptcy estate so that the two parcels may become one again under common ownership. A true and correct copy of said Offer is attached hereto and incorporated herein in its entirety by reference as Exhibit "A".

11. Mr. Eresian and I have had to extend the time for performance under the accepted offer several times; however as of the date of this affidavit, the agreement between us remains in full force and effect.

Signed and sealed under the pains and penalties of perjury this $3/19/05$ day of March, 2005.

_Linda S. Walker_
Linda S. Walker

4

EXHIBIT "A"

## OFFER TO PURCHASE REAL ESTATE

I, Ara Eresian, Jr., as Trustee of Zu Zu Realty Trust, hereby offer on behalf of said Trust the sum of $ 350,000.00 to Linda S. Walker for all of her right, title and interest in and to the premises located and more commonly known as 23 Reynolds Road, Charlton, Worcester County, Massachusetts.

The only condition of sale is that Ara Eresian, Jr., as Trustee of Zu Zu Realty Trust must succeed in acquiring the one-half interest not presently owned by the Trust in the adjacent premises located and more commonly known as 27 Reynolds Road, Charlton, Worcester County, Massachusetts, which estate consists of approximately 2.4 acres of land with improvements thereon, from the estate of Janathan C. Piehl in the bankruptcy matter styled *In re: Jonathan C. Piehl*, United Statews Bankruptcy Court for the District of Massachusetts – Western Division, Case No. 02-40711-HJB. Such sale being subject to bankruptcy court approval.

A Purchase and Sale Agreement, incorporating all of the terms and conditions of sale, shall be executed by the parties hereto within thirty (30) days of the date of approval of the sale of the inteest of Jonathan C. Piehl by the United States Bankruptcy Court for the District of Massachusetts – Western Division. Such Purchase and Sale Agreement shall then supersede and constitute the final agreement between the parties.

The sale shall take place at a mutually agreeable time as designated in the Purchase and Sale Agreement at the Worcester District Registry of Deeds, or some other mutually designated place, within thirty (30) days of the date of the execution by the parties of the Purchase and Sale Agreement.

In no event shall the date of closing extend beyond six (6) months from the date of the acceptance of this Offer. Notwithstanding the foregoing, the parties may mutually agree to extend the time for performance hereunder beyond the original six (6) month term, and may thereafter, mutually agree to extend the time for performance hereunder as extended from time to time as many times as they may mutually agree upon.

This offer shall be valid up to and inclusive of Janaury 20, 2004 at 5 PM.

ARA ERESIAN, JR., TRUSTEE
OF ZU ZU REALTY TRUST,

by: _____

Ara Eresian, Jr., Trustee
P.O. Box 499
Shrewsbury, MA  01545

Date:  January 17, 2004

## ACCEPTANCE OF OFFER

I, Linda S. Walker, hereby accept said Offer.

_____

Linda S. Walker

Date:  January 19, 2004

2

**EXHIBIT E**

OCT-27-2006(FRI) 13:21                                                    P 013.03

## Form 5.  Involuntary Petition

FORM B5
(12/03)

| United States Bankruptcy Court<br>**Middle** District of **Alabama** | INVOLUNTARY PETITION |
|---|---|

| IN RE (Name of debtor—If individual: Last, First, Middle)<br>~ VII Holdings Company | ALL OTHER NAMES used by debtor in the last 6 years<br>(include married, maiden, and trade names) |
|---|---|

LAST FOUR DIGITS OF SOC. SEC. NO./Complete EIN or other
TAX I.D. NO. (If more than one, state all.)   20-3459444

| STREET ADDRESS OF DEBTOR<br>(No. and street, city, state, and zip code)<br>3750 Airport Blvd.<br>Mobile, AL<br>36608 | MAILING ADDRESS OF DEBTOR<br>(if different from street address)<br>2711 Centerville Road<br>Suite 400<br>Wilmington, DE  19808 |
|---|---|

COUNTY OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS:
Mobile

LOCATION OF PRINCIPAL ASSETS OF BUSINESS DEBTOR (if different from previously listed addresses)

CHAPTER OF BANKRUPTCY CODE UNDER WHICH PETITION IS FILED
[X] Chapter 7     [ ] Chapter 11

### INFORMATION REGARDING DEBTOR (Check applicable boxes)

Petitioners believe:
[ ] Debts are primarily consumer debts
[X] Debts are primarily business debts

TYPE OF DEBTOR
[ ] Individual
[ ] Partnership
[X] Corporation
[ ] Other _____

[ ] Stockbroker
[ ] Commodity Broker
[ ] Railroad

BRIEFLY DESCRIBE NATURE OF BUSINESS

| VENUE | FILING FEE (Check one box) |
|---|---|
| [X] Debtor has been domiciled or has had a residence, principal place of business, or principal assets in the District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.<br><br>[ ] A bankruptcy case concerning debtor's affiliate, general partner or partnership is pending in this District. | [X] Full Filing Fee attached<br><br>[ ] Petitioner is a child support creditor or its representative, and the form specified in § 304(g) of the Bankruptcy Reform Act of 1994 is attached. |

PENDING BANKRUPTCY CASE FILED BY OR AGAINST ANY PARTNER OR AFFILIATE OF THIS DEBTOR (Report information for any additional cases on attached sheets.)

| Name of Debtor | Case Number | Date |
|---|---|---|
| Relationship | District | Judge |

| ALLEGATIONS<br>(Check applicable boxes) | COURT USE ONLY |
|---|---|

1. [X] Petitioner(s) are eligible to file this petition pursuant to 11 U.S.C. § 303(b).
2. [ ] The debtor is a person against whom an order for relief may be entered under title 11 of the United States Code.
3.a. [X] The debtor is generally not paying such debtor's debts as they become due, unless such debts are the subject of a bona fide dispute;

or

b. [ ] Within 120 days preceding the filing of this petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

If a child support creditor or its representative is a petitioner, and if the petitioner files the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

OCT-27-2006(FRI) 13:22                                                    P 014.02

# Form 5                        OFFICIAL FORMS

| | Name of Debtor: VII Holdings Company |
|---|---|
| Form 5. Involuntary Petition (12/03) | Case No. |
| | (court use only) |

## TRANSFER OF CLAIM

☐ Check this box if there has been a transfer of any claim against the debtor by, or to, any petitioner. Attach all documents evidencing the transfer and any statements that are required under Bankruptcy Rule 1003(a).

## REQUEST FOR RELIEF

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

| X _(signature)_ | X |
|---|---|
| Signature of Petitioner or Representative (State title) | Signature of Attorney          Date |
| John F. Wilson      09/14/05 | |
| Name of Petitioner        Date signed | Name of Attorney Firm (if any) |
| Name & Mailing ▶ Address of Individual Signing in Representative Capacity | Address |
| | Telephone No. |

| X | X |
|---|---|
| Signature of Petitioner or Representative (State title) | Signature of Attorney          Date |
| Name of Petitioner        Date signed | Name of Attorney Firm (if any) |
| Name & Mailing ▶ Address of Individual Signing in Representative Capacity | Address |
| | Telephone No. |

| X | X |
|---|---|
| Signature of Petitioner or Representative (State title) | Signature of Attorney          Date |
| Name of Petitioner        Date signed | Name of Attorney Firm (if any) |
| Name & Mailing ▶ Address of Individual Signing in Representative Capacity | Address |
| | Telephone No. |

## PETITIONING CREDITORS

| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
|---|---|---|
| John F. Wilson 196 West River Street, Orange, MA 01364 | Promissory Note | $ 14,890.00 |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |

**INVOLPET, Corp, DISMISSED, CLOSED**

# U.S. Bankruptcy Court
## Middle District of Alabama (Montgomery)
### Bankruptcy Petition #: 05-32805

*Assigned to:* William R. Sawyer
Chapter 7
Involuntary
No asset

*Date Filed:* 09/16/2005
*Date Terminated:* 01/04/2006
*Date Dismissed:* 12/21/2005

*Petitioning Creditor*
**John F. Wilson**
196 West River Street
Orange, MA 01364

represented by **John F. Wilson**
PRO SE

*Alleged Debtor*
**VII Holdings Company**
2711 Centerville Road, Ste 400
Wilmington, DE 19808
Tax id: 20-3459444

represented by **VII Holdings Company**
PRO SE

*Bankruptcy Admin.*
**Bankruptcy Administrator**
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

| **Filing Date** | **#** | **Docket Text** |
|---|---|---|
| 09/16/2005 | 1 | Chapter 7 Involuntary Petition. Receipt Number 5-002109, Fee Amount $209. Filed by John F. Wilson, Petitioning Creditor . (YP, ) Modified receipt # on 9/16/2005 (YP, ). (Entered: 09/16/2005) |
| 09/16/2005 | 2 | Receipt of Ch 7 Vol Petition Payment $209.00 by CM. Receipt Number 05002109. (admin) (Entered: 09/16/2005) |
| 09/20/2005 | 3 | Summons Issued to John F. Wilson, Petitioning Creditor to be served on VII Holdings Company, Alleged Debtor Date Issued 9/20/2005, Answer Due 10/20/2005. Execution of Summons to be done by 9/30/2005. (YP, ) Modified (MANUALLY MAILED SUMMONS TO JOHN F.WILSON, 196 WEST RIVER STREET, ORANGE, MA 01364) on 9/20/2005 (YP, ). (Entered: 09/20/2005) |
| 10/03/2005 | 4 | 10 days have passed since the issuance of summons. Notice is hereby given that pursuant to Fed. R. Bankr. Proc. 7004(e), the summons issued is not serviceable. Upon Plaintiffs request, a new summons will be issued by the Clerk. (RE: related document(s)3 Summons Issued, ). (JT, ) Modified (MANUALLY MAILED THIS NOTICE TO JOHN F. WILSON, 196 WEST RIVER STREEET, ORANGE, |

| | | MA 01364) ON 10/3/2005 (JT, ). (Entered: 10/03/2005) |
|---|---|---|
| 10/13/2005 | 5 | Motion for Relief from Stay. Fee Amount $150. Filed by Diane C. Murray on behalf of GMAC Mortgage Corporation. Responses due by 11/7/2005. (Attachments: # 1 mtg# 2 note) (Murray, Diane) (Entered: 10/13/2005) |
| 10/13/2005 | 6 | Receipt of Motion for Relief From Stay(05-32805) [motion,mrlfsty] ( 150.00) filing fee. Receipt number 1588890, amount $ 150.00. (U.S. Treasury) (Entered: 10/13/2005) |
| 10/13/2005 | 7 | Order To Show Cause, In Writing Why Bankruptcy Proceedings Should Not Be Dismissed For Want Of Prosecution (Response Deadline November 1, 2005) Entered On 10/13/2005 (RE: related document(s)3 Summons Issued, ). (JT, ) (Entered: 10/13/2005) |
| 10/16/2005 | 8 | BNC Certificate of Service - See Image Attached - (RE: related document(s)7 Order to Show Cause). No. of Notices: 1. Service Date 10/16/2005. (Admin.) (Entered: 10/19/2005) |
| 10/19/2005 | 9 | Request for Issuance of Summons (Non-Image Entry) Filed by John F. Wilson. (JT, ) Additional attachment(s) added on 10/19/2005 (JT, ). (Entered: 10/19/2005) |
| 10/21/2005 | 10 | Involuntary Summons Issued To John F. Wilson, Petitioning Creditor to be served on VII Holdings Company. Execution Of Summons is due by 11/10/2005. (JT, ) (Manually Mailed Summons To John F. Wilson, 196 West River Street, Orange MA 01364on 10/21/2005). (Entered: 10/21/2005) |
| 10/24/2005 | 11 | BNC Certificate of Service - See Image Attached - (RE: related document(s)10 Involuntary Summons Issued, ). No. of Notices: 2. Service Date 10/24/2005. (Admin.) (Entered: 10/25/2005) |
| 11/02/2005 | 12 | Summons Service Executed on VII Holdings Company 10/31/2005 Re: related document(s) 10. (JT, ) (Entered: 11/02/2005) |
| 11/03/2005 | 13 | Objection To Motion For Relief From Stay Filed by John F. Wilson (RE: related document(s)5 Motion for Relief From Stay filed by Creditor GMAC Mortgage Corporation). (JT, ) (Entered: 11/03/2005) |
| 11/03/2005 | 14 | Response Of Petitioning Creditor John F. Wilson To The Order To Show Cause Filed by John F. Wilson (RE: related document(s)7 Order to Show Cause). (JT, ) (Entered: 11/03/2005) |
| 11/07/2005 | 15 | Notice of Telephone Hearing Set (RE: related document(s)5 GMAC Mortgage Corporation Motion for Relief from Stay). Hearing scheduled for 11/29/2005 at 09:00 AM at Telephone Hearing. (JPC, ) (Entered: 11/07/2005) |
| | | |

| 11/09/2005 | 16 | BNC Certificate of Service - Telephone Hearing - (RE: related document(s)15 Telephone Hearing). No. of Notices: 2. Service Date 11/09/2005. (Admin.) (Entered: 11/10/2005) |
| 12/01/2005 | 17 | Order Conditionally Granting Motion For Relief From Stay (Related Doc # 5) Entered On 12/1/2005. (RK, ) (Entered: 12/01/2005) |
| 12/02/2005 | 18 | Order Setting Status Conference Hearing Entered On 12/2/2005. Status hearing to be held on 12/20/2005 at 10:00 AM at Courtroom 4D, Judge Sawyer Presiding, U.S. Bankruptcy Court, Montgomery, AL. (DW, ) (Entered: 12/02/2005) |
| 12/03/2005 | 19 | BNC Certificate of Service - See Image Attached - (RE: related document(s)17 Order on Motion For Relief From Stay). No. of Notices: 3. Service Date 12/03/2005. (Admin.) (Entered: 12/04/2005) |
| 12/04/2005 | 20 | BNC Certificate of Service - See Image Attached - (RE: related document(s)18 Order on Motion To Set Hearing). No. of Notices: 1. Service Date 12/04/2005. (Admin.) (Entered: 12/05/2005) |
| 12/21/2005 | 21 | Order Of Dismissal (Dismissing Case) Entered On 12/21/2005 (RE: related document(s)1 Involuntary Petition (Chapter 7) filed by Petitioning Creditor John F. Wilson). (JC, ) (Entered: 12/21/2005) |
| 12/21/2005 |  | Case could not be closed because holding 10 days to close. Close Case Follow Up Review due on 1/3/2006. (JC, ) (Entered: 12/21/2005) |
| 12/23/2005 | 22 | BNC Certificate of Service - See Image Attached - (RE: related document(s)21 Order Dismissing Case). No. of Notices: 2. Service Date 12/23/2005. (Admin.) (Entered: 12/24/2005) |
| 01/04/2006 | 23 | Bankruptcy Case Closed (Non-Image Entry). (JT, ) (Entered: 01/04/2006) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/14/2006 13:49:04 | | | |
| **PACER Login:** | gs0012 | **Client Code:** | 01074.0016 |
| **Description:** | Docket Report | **Search Criteria:** | 05-32805 Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: HTML |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re

VII HOLDINGS COMPANY,

     Debtor

Case No. 05-32805-WRS
Chapter 7 (Involuntary)

## <u>ORDER OF DISMISSAL</u>

This involuntary Chapter 7 proceeding came before the Court for a status conference on December 20, 2005. No appearances were made. For the reasons set forth on the record, the involuntary petition is DISMISSED.

Done this 21st day of December, 2005.

                          /s/ William R. Sawyer
                          United States Bankruptcy Judge

c: VII Holdings Company
    John F. Wilson, Petitioning Creditor
    Teresa R. Jacobs, Bankruptcy Administrator

**EXHIBIT F**

OCT-27-2006(FRI) 13:21                                                                    P 008/02.

Bk: 37283 pg: 70

After recording please return to:

Ara Eresian, Jr.
P.O. Box 499
Shrewsbury, MA 01545-0499



Bk: 37283 Pg: 70  Doc: MTG
Page: 1 of 3  08/08/2006 03:44 PM

## MORTGAGE DEED

I, **Alison L. Randle**, of Northborough, County of Worcester, Commonwealth of Massachusetts, (the "Mortgagor"), for consideration paid, grants to **Ara Eresian, Jr., Trustee of Zu Zu Realty Trust**, created pursuant to a written Declaration of Trust dated October 31, 1996 and recorded with the Worcester District Registry of Deeds in Book 18790, Page 4, of P.O. Box 499, Shrewsbury, County of Worcester, Commonwealth of Massachusetts, the "Mortgagee"), with *mortgage covenants* to secure the payment of Thirteen thousand five hundred and no hundredths ($ 13,500.00) dollars, payable as provided in a note, (the "Note"), of even date,

A certain estate known as Unit No. 83, ("Unit"), of the Whitney Street Condominium located at 83-85 Whitney Street, Northborough, Massachusetts, a condominium, ("Condominium"), established pursuant to Massachusetts General Laws Chapter 183A, by Master Deed dated October 25, 1985, recorded with the Worcester District Registry of Deeds in Book 9017, Page 250, ("Master Deed"), which Unit is shown on the Plan of the "Condominium" dated July 24, 1985, recorded with the Worcester District Registry of Deeds in Plan Book 543, Plan 33.

The Unit is conveyed together with:

1. An undivided fifty (50%) per cent interest in the common areas and facilities of the Condominium as set forth in the Master Deed.

2. An exclusive easement to use the yards, lawns, gardens, plants, trees, driveways, and walkways appurtenant to that unit, as shown on the site plan recorded with the Master Deed.

LOCUS: 83 Whitney Street, Northborough, MA

1

③

OCT-27-2006(FRI) 13:21

Bk: 3728 Pg: 71

P. 009

The Unit is conveyed subject to and with the benefit of:

1. Covenants, conditions, restrictions, easements, reservations of rights insofar as the same are now in force and applicable, right of access to units, and all matters set forth and referred to in the said Master Deed, the Condominium Trust recorded with said Registry of Deeds in Book 9017, Page 285, By-Laws, Rules and Regulations set forth therein, provisions of the Unit Deed herein conveyed and provisions of the Massachusetts General Laws Chapter 183A.

2. The Unit may be used only for residential purposes permitted by the zoning laws of the Town of Northborough, subject to the zoning laws of the Town of Northborough, and subject to the restrictions set forth in Paragraph 12 of said Master Deed.

BEING THE SAME PREMISES CONVEYED to the Mortgagor by Quitclaim Deed of Clifford A. Vera, Jr. dated December 24, 2001 and recorded with the Worcester District Registry of Deeds in Book 25626, Page 53.

The Mortgagor, for herself and her heirs, successors and assigns, covenants and agrees, in addition to the STATUTORY CONDITION, to keep the buildings, structures, improvements and fixtures now or hereafter standing on the mortgaged premises insured against fire with extended coverage and/or such other perils as the Mortgagee shall reasonably request in such amounts as shall be satisfactory to the Mortgagee, all insurance to be for the benefit of and payable in case of loss to the Mortgagee and the Mortgagor as their interests may appear.

The above described mortgaged premises are conveyed together with the buildings, structures and improvements now or hereafter thereon and all the privileges and appurtenances thereto belonging together with all fixtures, including accessories and additions and replacements thereto, now or at any time hereafter attached to, placed on or installed in the mortgaged premises.

In the event the ownership of or title to the mortgaged premises or any part thereof shall become vested in any person or entity not a natural person other than the Mortgagor without the written consent of the Mortgagee, then at any time thereafter, at the option of the Mortgagee, the entire mortgage debt shall become due and payable on demand, or the Mortgagee may, without notice to the Mortgagor, deal with such successor or successors in interest with reference to the mortgage and the debt secured thereby in the same manner as with the Mortgagor without in any way vitiating or discharging the Mortgagor's liability hereunder or upon the debt secured thereby. No sale of the premises hereby mortgaged, no forbearance on the part of the Mortgagee and no extension whether oral or in writing of the time for the payment of

2

OCT-27-2006(FRI) 13:21

Bk: 37285 Pg: 72

P 010/05

the whole or any part of the debt secured hereby or any other indulgence given by the Mortgagee to any persons other than the Mortgagor, shall operate to release or in any manner affect the original liability of the Mortgagor, notice of any such extensions or indulgences being waived.

The Mortgagor covenants and agrees to pay or cause to be paid when due any and all taxes, charges, assessments, water rates and insurance premiums with respect to the mortgaged premises to whomsoever laid or assessed.

The Mortgage Deed is upon the statutory condition and upon the further condition that all covenants and agreements of the Mortgagor contained herein, in the Note and in any other document or agreement between the Mortgagor and the Mortgagee executed or made in connection herewith shall be fully kept and performed, for any breach of which the Mortgagee shall have the STATUTORY POWER OF SALE.

Witness my hand and seal this 23rd, day of May, 2005.

Witness – Adrian A. Gaucher, Jr.

Allison L. Randle

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                                             May 23, 2005

Then personally appeared the above named Allison L. Randle, personally known to me, and acknowledged the execution of the foregoing instrument to be her free act and deed, before me,

From the Law Office of:

Adrian A. Gaucher, Jr., Esquire
GAUCHER & GAUCHER
80 Hamilton Street
Southbridge, MA 01550-1808

Adrian A. Gaucher, Jr.
Notary Public
My Commission Expires: 11/12/06

3

ATTEST: WORC. Anthony J. Vigliotti, Register

OCT-27-2006(FRI) 13:21                                                           P 011/02

Bk: 37301 Pg: 21

After recording please return to:

VII Holdings Company
2711 Centerville Road – Suite 400
Wilmington, DE 19808



Bk: 37301 Pg: 21   Doc: ASM
Page: 1 of 2   09/13/2005 03:45 PM

## ASSIGNMENT OF MORTGAGE DEED

I, Ara Eresian, Jr., Trustee of Zu Zu Realty Trust, under a written Declaration of Trust dated October 31, 1996 and recorded with the Worcester District Registry of Deeds in Book 18790, Page 4, of P.O. Box 499, Shrewsbury, County of Worcester, Commonwealth of Massachusetts, (hereinafter "Assignor"), by the power conferred by said Trust and every other power, hereby sell, assign, bargain, transfer, convey and set over unto VII Holdings Company, a corporation duly organized and existing under the laws of the State of Delaware, with an address in care of 2711 Centerville Road, Suite 400, Wilmington, State of Delaware, (hereinafter "Assignee"), all of Assignor's right, title and interest in and to that certain Mortgage Deed given by Allison L. Randle to Assignor dated May 23, 2005 in the original principal amount of $ 13,500.00 and recorded with the Worcester District Registry of Deeds in Book 37283, Page 70, along with the Note secured thereby given by the said Allison L. Randle to Assignor of even principal amount and date.

TO HAVE AND TO HOLD the same from this day forward with all of the rights, privileges and appurtenances thereto belonging.

②

OCT-27-2006(FRI) 13:21                                                    P. 012/020

Bk: 37301 Pg: 22

Signed under seal this 23rd, day of May, 2005.

Witness – Adrian A. Gaucher, Jr.

Ara Eresian, Jr., Trustee of Zu Zu Realty Trust,
u/d//t dated October 31, 1996

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                                          May 23, 2005

Then personally appeared the above named Ara Eresian, Jr., personally known
to me, in his capacity as Trustee of Zu Zu Realty Trust, and acknowledged the
execution of the foregoing instrument to be his free act and deed as Trustee thereof,
and not individually, before me,

From the Law Office of:

Adrian A. Gaucher, Jr., Esquire
GAUCHER & GAUCHER
60 Hamilton Street
Southbridge, MA  01550-1808

Adrian A. Gaucher, Jr.
Notary Public
My Commission Expires:  11/13/06

2

ATTEST: WORC. Anthony J. Vigliotti, Register

# EXHIBIT G

UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

-------------------------------------------------------------X

In re:

      LAWRENCE N. PETRICCA, SR.,

          Debtor

-------------------------------------------------------------X

AFFIDAVIT OF ARA ERESIAN, JR. IN SUPPORT OF
VARIOUS MOTIONS RELATIVE TO THE ALLOWANCE
DEBTOR'S MOTION FOR CHANGE OF VENUE

     I, Ara Eresian, Jr., (hereinafter "Affiant"), first being duly sworn, do depose and say upon my own personal knowledge, the following:

1. Affiant is the sole named Trustee of Zu Zu Realty Trust, a Massachusetts nominee real estate trust created pursuant to a written Declaration of Trust dated October 31, 1996 and recorded with the Worcester County (District) Registry of Deeds[1] on April 30, 1997 in Book 18790, Page 4.

2. Said Trust is the majority beneficary of the named Petitioning Creditor in the within [bankruptcy] case, JW Nominee Trust, (hereinafter "Petitioning Creditor").

3. On Wednesday, September 15, 2004 at approximately 1:00 PM Affiant was personally present at the evidentiary hearing held before the Court, Vaughn, C.J. upon the motion of the Debtor, Lawrence N. Petricca, Sr., (hereinafter "Debtor"), for [a] change of venue from the United States Bankruptcy Court for the District of New Hampshire to the United States Bankruptcy Court for the District of Massachusetts – Western Division.

4. At that hearing the Debtor, after first being duly sworn, testified under oath relative to questions put directly to him by both the Court and counsel for the Petitioning Creditor, Israel M. Sanchez, Jr..

5. Based upon the Debtor's responses to certain of those questions which appeared to me to be both false and misleading, Affiant subsequently conducted an informal investigation into the Debtor's affairs.

## THE ISSUE OF THE DRIVER'S LICENSE OF THE DEBTOR

6. The first statement which Affiant believed to be suspect was the Debtor's testimony to the effect that he did not have a Driver's license.

7. In order to ascertain whether the Debtor did have a current, valid driver's icense in effect at the time of the giving of his sworn testimony, Affiant first travelled to the

---

[1] All references herein to the 'Worcester District Registry of Deeds' is to the Southern District of that registry located in Worcester, Worcester County, Commonwealth of Massachusetts.

law offices of Attorney Michael M. Kaplan, who maintains such offices in Milford, Worcester County, Massachusetts. At one time, Attorney Kaplan represented the Petitioning Creditor in the underlying civil action which gave rise to the [money] judgment issued by the Superior Court Department of the Trial Court for the Commonwealth of Massachusetts sitting in Worcester County in favor of the Petitioning Creditor against the Debtor[2]. Upon examination of the files kept by Attorney Kaplan in his law offices relative to this matter Affiant came across a copy of the Debtor's **New Hampshire Driver's License**[3], (hereinafter "License"), which was in effect at the time[4] that Attorney Kaplan was able to secure the same pursuant to certain requests for production of documentation made upon the Debtor by Attorney Kaplan on behalf of the Petitioning Creditor. A true and correct copy of the License is attached hereto and incorporated herein in its entirety by reference as Exhibit "A"[5].

---

[2]  *See* Worcester Superior Court C.A. No. 97-02504 A.

[3]  This was the same copy which Affiant directly testified existed under oath at the hearing.

[4]  Affiant is unable to testify as to exactly when Attorney Kaplan actually came into possession of a copy of this License, but it was sometime in either 1999 or 2000, but certainly before February 16, 2001 when the Court, Timothy S. Hillman, J., issued a Memorandum and Order allowing the Petititoning Creditor's motion for Entry of Default pursuant to R. 37(b)(2) Mass. R. Civ. P..

[5]  In the various motions submitted by the Petitioning Creditor at para. 1, counsel for the Petitioning creditor states that "[A] copy of the License is appended to the Affidavit of Ara Eresian, Jr., which is attached hereto." This is factually incorrect, in that the copy of the License appended hereto is a copy of the Debtor's [former] License. However, Affiant submits that the copy of this License and the Debtor's [renewed] License is **exactly** the same **except** (i) for the [new] expiration date, which is now '05/21/08', and (ii) [new] address, to wit: '614 Nashua Street, Milford, NH 03055'.

3

8.  As set forth on the face of the copy of the License, the License was issued by the State of New Hampshire to the Debtor on '07/01/1999' with an expiration date of '05/21/03', the Anniversary date[6] of the Debtor's birthday, with an Assignation Number of '05PAL45211'. The License also bore the alleged residential address of the Debtor, to wit: '586 Nashua Street, Milford, NH 03055.'

9.  Armed with the information contained on the face of the copy of the License, Affiant then contacted the Massachusetts State Police who cross-matched the Assignation Number of the License with the New Hampshire Registry of Motor Vehicles database. Affiant was then informed that the Debtor had renewed the License for another five (5) year period of time[7], up to and inclusive of '05/21/08' Affiant was further informed that the License was listed as 'Active', and was not presently the subject of suspension and/or revocation proceedings.

## THE ISSUE OF THE RESIDENCE OF THE DEBTOR

10. The second and third statements which Affiant believed to be suspect involved the Debtor's testimony to the effect that since September, 2003 to the present he has been 'renting' a three-room apartment located within the premises located and more commonly known as 94 Pleasant Street, Gardner, Worcester County,

---

[6]  The Fifty-eighth Anniversary date (58th.) [date].

[7]  Under applicable New Hampshire law, driver's licenses renewed in year 2001 and thereafter have a five (5) year limitation period, instead of fourt (4). *See* RSA (Revised Statutes Annotated) 263:10. Unfortunately, Affiant was unable to secure a copy of the Debtor's [renewed] License with the 'new' information on it.

4

Massachusetts[6], (hereinafter "Property"). The Debtor also testified to the effect that either he or an entity known as 'R A Realty Trust', (hereinafter "R A Realty"), owned the Property, but that he was paying 'rent' to one Waldo J. Gibson, Sr., the alleged manager of R A Realty, and that he didn't know where and to whom the proceeds represented by the rental receipts were going each month.

11.    The Debtor's testimony in effect runs contrary to the state of the title to the Property as of the date of the evidentiary hearing, which relevant chain is as follows:

• On or about March 11, 1985, the Debtor and his brother, one Leonard Petricca, (hereinafter "Leonard"), as Settlors, created a Massachusetts nominee real estate trust styled 'L & L Realty Trust', (hereinafter "L & L Realty"), by written Declaration of Trust dated March 11, 1985 and recorded with the Worcester District Registry of Deeds on March 18, 1985 in Book 8610, Page 187. A true and correct copy of said Trust is attached hereto and incorporated herein in its entirety by reference as Exhibit "B".

• On or about April 23, 1985, in consideration of $ 115,000.00 tendered, one Robert W. Waxlax, and his wife, Doris Waxlax, executed and delivered a Quitclaim Deed of all of their right, title and interest in and to the Property to the Debtor and Leonard, as Trustees of L & L Realty. A true and correct copy of said Quitclaim

---

[*] The actual street address of the Property is '92-94 Pleasant Street, Gardner, Worcester County, Massachusetts'.

5

Deed is attached hereto and incorporated herein in its entirety by reference as Exhibit "C".

- On or about December 15, 1987, the Debtor and Leonard, both individually and as Trustees of L & L Realty, executed and delivered a Mortgage Deed to the Property[9] in the original principal amount of $ 292,500.00 dated December 15, 1987 and recorded with the Worcester District Registry of Deeds in Book 11031, Page 127, (hereinafter "1987 Mortgage Deed"). A true and correct copy of said Mortgage Deed is attached hereto and incorporated herein in its entirety by reference as Exhibit "D".

- On or about June 8, 1990, purportedly in consideration of "$10.00 and One Hundred Trust Units" tendered, the Debtor, as Trustee of L & L Realty[10], executed and delivered a Quitclaim Deed to the Property to '94 Pleasant Trust[11], dated June 8, 1990 and recorded with the Worcester District Registry of Deeds on June 8, 1990 in Book 12828, Page 222. A true and correct copy of said Quitclaim Deed is attached hereto and incorporated herein in its entirety by reference as Exhibit "E".

---

[9]  [A]nd 35-39 Graham Street, Gardner, Worcester County, Massachusetts. *See* n. 11, *infra*.

[10]  Leonard [Petricca] does not join in this alleged conveyance with the Debtor as co-Trustee of L & L Realty Trust, as on or about September 7, 1988 pursuant to a document styled 'Resignation of Trustee of L & L Realty Trust' Leonard resigned as Trustee of L & L. Said instrument is recorded with the Worcester District Registry of Deeds on September 15, 1988 in Book 11616, Page 177.

[11]  The '94 Pleasant Trust' is not a trust of record, nor does the Quitclaim Deed identify who the Trustee or Trustees are. Affiant has never seen a copy of this Trust. However, it should be noted here that the deed does carry with it a [Grantee] New Hampshire address.

6

- On or about August 14, 1992, the Commissioner of Banks for the Commonwealth of Massachusetts declared the Winchendon Savings Bank insolvent. On or about that same date, the Supreme Judicial Court for the Commonwealth of Massachusetts appointed the Federal Deposit Insurance Corporation, (hereinafter "FDIC"), as the Receiver/Liquidating Agent for the Winchendon Savings Bank and the FDIC accepted such appointment.

- On or about June 30, 1995, the FDIC, as Receiver/Liquidating Agent for the Winchendon Savings Bank, (hereinafter "FDIC"), exercised the statutory Power of Sale contained in the 1987 Mortgage Deed.

- On the aforesaid day of the foreclosure sale, one Joseph A. Tocci, Jr., (hereinafter "Tocci"), then of Leominster, Worcester County, Massachusetts registered and was recognized as a qualified bidder by the FDIC, as foreclosing mortgagee.

- At the conclusion of said sale, Tocci was declared the successful higher bidder[12] by the FDIC, as foreclosing mortgagee, with a high bid of $ 6,000.00. At that time, Tocci tendered the required deposit of $ 1,000.00 to the FDIC, as foreclosing mortgagee, as required by the terms and conditions of the published sale notice and thereafter, the remaining $ 5,000.00 balance due was tendered.

---

[12] Tocci also was declared the successful high bidder in another foreclosure sale of the Debtor's real property in Gardner, Worcester County, Massachusetts conducted earlier that day by the FDIC, as Receiver/Liquidating Agent for the Winchendon Savings Bank under the statutory power of sale contained in the 1987 Mortgage Deed. Since the Debtor does not claim that this real property is his residence, the information imparted here is for informational purposes only.

7

- Shortly after the sale, the Debtor requested that Affiant, who had experience in the examination of real estate titles, perform a full fifty (50) year title search to the Property for Tocci. Affiant thereafter delegated the work to Hobbs Abstract Company, (hereinafter "Hobbs"), a full service title examination and title insurance company located in Worcester, Worcester County, Massachusetts which is owned by certain of Affiant's relatives. With the knowledge and consent of the Debtor, Hobbs agreed to perform the requested work.

- On or about July 26, 1995, Tocci, as Settlor, created a Massachusetts nominee real estate trust styled 'Tocci Realty Trust Gardner-II'[13], (hereinafter "Tocci Realty") by written Declaration of Trust dated July 24, 1995 and recorded with the Worcester District Registry of Deeds on July 26, 1995 in Book 17193, Page 308. A true and correct copy of said Trust is attached hereto and incorporated herein in its entirety by reference as Exhibit "F".

- On or about August 2, 1995, one Daniel W. Ladd, (hereinafter "Ladd"), counsel for the FDIC, as Receiver/Liquidating Agent for the Winchendon Savings Bank, submitted to Hobbs all of the documentation necessary to transfer title to the Property from the FDIC, as foreclosing mortgagee, to Tocci., as Trustee of Tocci Realty. True and correct copies of (i) the Judgment issued by the Land Court Department of the Tral Court for the Commonwealth of Massachusetts, dated

---

[13] Incorrectly cited in the various motions submitted by the Petitioning Creditor as "Tocci Gardner Realty Trust".

8

March 1, 1995, and (ii) the Foreclosure Deed to the Property from the FDIC, as
foreclosing mortgagee, to Tocci, as Trustee of Tocci Realty, dated August 2, 1995,
are attached hereto and incorporated herein in their entirety by reference as Exhibit
"G-1" and "G-2", respectively. Copies of those same documents were also
appended to the Petitioning Creditor's First Amended Complaint filed in the
underlying civil action which gave rise to the [money] judgment issued in that
action.[14]

- Hobbs performed the requested title work and the Debtor paid Hobbs the invoice
  generated by Hobbs in full for such work.

- In or around early October, 1995, the Debtor requested the return of the original
  documentation to the Property to him. Since the Debtor had paid for all of the title
  work requested in full, Hobbs complied with the request and the original
  documentation was personally returned to the Debtor. Affiant has never seen the
  original documentation since then, nor has the same been recorded with the
  Worcester District Registry of Deeds.

- On or about February 1, 1997, one Rene Arsenault[15], as Settlor, created a
  Massachusetts nominee real estate trust styled 'R A Realty Trust', (hereinafter "R A

---

[14]  The Debtor also delivered a document styled 'Affidavit of Sale' relative to the sale of the
Property. However, as of the date of this Affidavit, Affiant has been unable to locate a copy of
the same. Affiant believes that [Attorney] Ladd may have a copy of the same in his files but for
the purposes of this writing he has not independently verified this. See also n. 2, supra.

Realty"), by written Declaration of Trust dated February 1, 1997 and recorded with
the Worcester District Registry of Deeds on November 10, 1997 in Book 19336,
Page 38. A true and correct copy of said Trust is attached hereto and incorporated
herein in its entirety by reference as Exhibit "H".

• R A Realty also gave a New Hampshire address and the Trust document was
purportedly notarized by one De Nilo Tocci, who purportedly was a Notary Public in
and for the Commonwealth of Massachusetts.[16] Affiant who has witnessed the
Debtor signing his name before, recognizes that the printing at the top left of the
Quitclaim Deed as well as the purported signature of De Nilo Tocci, is that of the
Debtor as well.

• On or about that same date, (November 10, 1997), purportedly "in [full]
consideration of $ 10.00" tendered, one Roger Le Blanc[17], as Trustee of 04
Pleasant Trust, executed and delivered a Quitclaim Deed to the Property to 'R A
Realty Trust' dated February 2, 1997 and recorded with the Worcester District
Registry of Deeds on November 10, 1997 in Book 19336, Page 170. A true and

---

[16] De Nilo Tocci was an uncle of the Debtor (and also possibly to [Joseph A.] Tocci, [Jr.] who
passed away shortly after the alleged execution of this document. Affiant has met De Nilo
Tocci and witnessed him signing his name before. The signature upon this document is not
that of De Nilo Tocci, but rather is a forgery. Additionally, Affiant has checked with the
Secretary of State for the Commonwealth of Massachusetts and was informed that De Nilo
Tocci was never at anytime appointed by the Governor of the Commonwealth of
Massachusetts to the office of Notary Public.

[17] Affiant believes, and therefore avers, that both Rene Arsenault and Roger Le Blanc are
figments of the Debtor's imagination, or in the alternative, are alter-egos of either the Debtor or
his sublimely loyal minion, Waldo J. Gibson, Sr..

10

correct copy of said Quitclaim Deed is attached hereto and incorporated herein in its entirety by reference as Exhibit "I".

- As with the RA Realty Trust document, the aforesaid Quitclaim Deed also carries with it the same New Hamsphire address and is likewise "notarized" by "De Nilo Tocci" (the Debtor).

- Due to the absence of the 'FDIC-Tocci' foreclosure documentation from the public record, the Debtor has given the general recording public the false impression that no foreclosure sale under the statutory power of sale contained in the 1987 Mortgage Deed has ever taken place[18], and that R A Realty Trust and not Tocci Realty is the legitimate owner of the Property.

12. The Debtor further testified that since September, 2003 he had actually paid rent to RA Realty. In support of his claim, the Debtor actually submitted copies of rental receipts purportedly signed by Waldo J. Gibson, Sr., in his alleged capacity 'as manager of RA Realty [Trust]'. Given the foregoing state of the title to the Property,

---

[18] It must be noted here that the margin of the 1987 Mortgage Deed contains a notation that the same has been 'Discharged' followed by a book and page reference. (See *infra* for reference). This is yet another example of the Debtor's ingenuity in creating false accounts: by executing and delivering to himself a document styled 'Release and Discharge of Promissory Note' in which he purports to 'discharge' his own indebtedness thereby providing support to the false premise that the 1987 Mortgage Deed has never been foreclosed and despite the existence of the Court's Memorandum and Order of Judge Hillman in Worcester Superior Court C.A. No. 97-02504 A, that he [and Leonard] have been freed of their joint legal and several obligations thereunder.

This document was puportedly executed on September 26, 2001 and recorded with the Worcester District Registry of Deeds on October 1, 2001 in Book 24946, Page 390. A true and correct copy of this document is attached hereto and incorporated herein in its entirety by reference as Exhibit "J".

the rental receipts form the basis of a false account designed to give the Court the false impression that the Debtor is actually occupying [a portion] of the Property as his residence and paying rent therefor to an entity which clearly has no right, title or interest in and to the Property.

13.  And in answering further, affiant sayeth not.

Executed under the pains and penalties of perjury this 27th. day of September, 2004.

_____

Ara Eresian, Jr.

12

# EXHIBIT H

OCT-27-2006(FRI) 13:22                                                    P 019/068

Bk: 04683 Pg: 182

DECLARATION OF HOMESTEAD

2004 00014242
Bk: 4683 Pg: 182   Doc: HOME
Page: 1 of 1   08/27/2004 03:09 PM

KNOW ALL MEN BY THESE PRESENTS THAT I,   John Wilson
                                              (Name)
of _____Orange_____ COUNTY OF ~~WORCESTER~~ FRANKLIN AND
        (City or Town)

COMMONWEALTH OF MASSACHUSETTS as Householder, and having a family or sole owner and being entitled to an Estate of Homestead in the land and buildings hereinafter described, do hereby declare that I own, possess and occupy said premises as a residence and homestead under Massachusetts General Laws, Chapter 188, as amended to wit:

Property Location: _____196 West River Street, Orange  01364_____
                         (Street address, City and Zip Code)

Deed Reference: Book   4312
                Page   193

Witness my hand and seal this _____6th,_____ day of _____July_____ 20_04

                                                         John Wilson

COMMONWEALTH OF MASSACHUSETTS

Worcester, SS.                                    Date  July 6, 2004

On this day before me, the undersigned notary public, personally appeared ___John Wilson___
_____, proved to me through satisfactory evidence of identification, which were _____, to be the person whose name is signed on the above document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Return after recording to:                    _____
                                              Notary Public
   Adrian A. Gaucher, Jr., Esquire
   GAUCHER and GAUCHER                         My Commission Expires:
   60 Hamilton Street
   Southbridge, MA  01550-1808
                                              ARA ERESIAN, JR.
                                              NOTARY PUBLIC
1 - page                                      COMMONWEALTH OF MASSACHUSETTS
                                              MY COMMISSION EXPIRES 3/31/2006

ATTEST: FRANKLIN COUNTY, MASS. H. Peter Wood, Register

# EXHIBIT I

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, Ss.

DISTRICT/HOUSING COURT
DEPT. OF THE TRIAL COURT-DUDLEY
CIVIL ACTION NO.  06-SP-03531

```
—————————————————————————  )
                              )
CAMBRIDGE PROPERTIES, LLC,    )
                              )
        Plaintiff and         )
        Defendant-in-Counterclaim,  )
                              )
    v.                        )
                              )
JONATHAN PIEHL and            )
LINDA WALKER,                 )
        Defendants and        )
        Plaintiff -in-Counterclaim.  )
—————————————————————————  )
```

## BRIEF IN SUPPORT OF
## EMERGENCY SUGGESTION OF BANKRUPTCY AND
## <u>NOTICE OF AUTOMATIC STAY OF FURTHER PROCEEDINGS</u>

<u>I.</u>    <u>ISSUE PRESENTED:</u>        DOES THE FEDERAL BANKRUPTCY AUTOMATIC
STAY, 11 U.S.C. § 362 SUSPEND FURTHER PROCEEDINGS IN THE CASE AT BAR?

<u>II.</u>    <u>SHORT ANSWER:</u>        YES.   The subject matter of the case at bar squarely
affects the rights, title or interest of a Debtor or Creditor subject to the protections of 11 U.S.C. §
362 and the plaintiff and defendants are is prohibited from using this Court in commencing or
continuing a judicial action in violation of 11 U.S.C. § 362, which states in pertinent part that
"....Except as provided in subsection (b) of this section, a petition filed under section <u>301</u>,
<u>302</u>, or <u>303</u> of this title, or an application filed under section 5(a)(3) of the Securities
Investor Protection Act of 1970, operates as a <u>**stay, applicable to all entities, of -**</u>

**(1)**

the commencement or continuation, including the issuance or employment
of process, of a judicial, administrative, or other action or proceeding against
the debtor that was or could have been commenced before the commencement
of the case under this title, or to recover a claim against the debtor that arose
before the commencement of the case under this title;

**(2)**

<u>**the enforcement**</u>, against the debtor <u>**or against property of the
estate**</u>, of a judgment obtained before the commencement of the case under
this title;" (**Emphasis Added**).

-1-



Since a Debtor or Creditor under the Bankruptcy code cannot proceed in commencing or continuing any judicial action under 11 U.S.C. § 362, to the extent that the property interests of a Creditor or Debtor under 11 U.S.C. § 362 is at risk by the parties to litigation in the instant proceeding, such proceeding cannot continue since an indispensable party would be missing and a there could not be a final adjudication of all issues and rights of such parties.  See, Mass. R. Civ. P. 19.

III.    ARGUMENT

1.  PARTIES INVOLVED IN THE INVOLUNTARY PETITION

      A.    VII Holdings Company, case number 06-10935-BLS ("Bankruptcy #06-10935-BLS").

      B.    The Involuntary Petition is dated Aug. 30, 2006, which is over 2 months before the entry date of this acion.

2.  PARTIES INVOLVED IN THE INSTANT ACTION (CIVIL ACTION NO. 98-1514-A):

      A.    The plaintiff CAMBRIDGE PROPERTIES, LLC ("CPLLC").

      B.    The Defendants are JONATHAN PIEHL and  LINDA WALKER.

3.  SUBJECT MATTER COMMON TO BOTH THE INVOLUNTARY PETITION AND THE INSTANT ACTION:

      A.    Real estate located at 27 Reynolds Rd., Charlton, MA ("the Charlton Property").

4.  BACKGROUND:

      A.    The instant action was commenced by the Plaintiff on or about October 30, 2006 seeking to evict the defendants from the the Charlton Property under the claimed authority of an ownership interest stemming from a foreclosure sale on August 31, 2006.

      B.    An answer was filed on or about Nov. 13, 2006 by Defendants, challenging plaintiff's right to proceed with the eviction process and claiming a continuing interest in the Charlton Property, through a relationship with VII Holdings Company, (the "Bankruptcy Debtor").

      C.    The interest claimed by the defendants are outlined in their answer under the Tenth Affirmative Defense.

      D.    The legal interest of the Bankruptcy Debtor is to the Charlton Property is outlined in defendants answer under the Tenth Affirmative Defense.

      E.    The plaintiff has therefore been made well aware of the Bankruptcy Debtor's interest in the Charlton Property.

F.    Notice to this Court was also given of the Bankruptcy.

G.    A trial on the instant case is to commence on December 18, 2006 at 2 p.m.

H.    An Automatic Stay is in effect as of August 30, 2006.

5.    11 U.S.C. § 362. AUTOMATIC STAY

A.    The "Automatic Stay" applies by statute to Debtors and their estate under an Involuntary Petition filed under 11 U.S.C. § 303.  11 U.S.C. § 362, states in pertinent part that "....Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a **stay, applicable to all entities, of -**

**(1)**

the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, **or to recover a claim against the debtor that arose before the commencement of the case under this title**; (Emphasis Added).

B.    The plaintiff's claims and the defendants' claims impact the Debtor and it estate of the Involuntary Petition.

C.    The filing of the petition automatically stays the commencement or continuation of judicial or other proceedings against the Debtor or its estate, except under certain special circumstances such as state police powers or to protect the population from dangerous situations. See, 11 U.S.C. § 362 (b); Cf. *Commerzanstalt v. Telewide Systems, Inc.*, 790 F.2d 206 (2d Cir.1986); See also, *Midatlantic Nat'l Bank v. NJ Dept. Of Envir. Prot.*, 474 U.S. 494, 503 (1986).

D.    The Automatic Stay is designed to provide debtors with a temporary respite from creditor actions, at least until the rights of debtors and their creditors can be properly determined; and to stop any creditor actions which would disrupt an orderly and uniform distribution of nonexempt assets to creditors of the same class. See, *Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997)*(stating that "the automatic stay is among the most basic of debtor protections under bankruptcy law"); *In re Rijos, 263 B.R. 382, 2001 WL 715654, 5 (1st Cir. B.A.P. 2001); A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 998 (4th Cir. 1986)*(Citing *Matter of Holtkamp, 669 F.2d 505, 508 (7th Cir. 1982)*, for its description of the § 362 stay as "protecting the debtor from an uncontrollable scramble for its assets").

E.    **The Automatic Stay is one of the fundamental protections afforded by the Bankruptcy laws.** *Midatlantic Nat'l Bank v. NJ Dept. Of Envir. Prot.*, 474 U.S. 494, 503 (1986).

3

F.    In addition to its affect to *in personam* actions, the stay applies to <u>**"...any act to obtain possession of property of the estate"**</u>. See, 11 U.S.C. § 362 (a)(3).

G.    <u>**The "estate" is defined as all legal and equitable interests of the Debtor in property as of the time of the petition**</u>. See, 11 U.S.C. § 541.

H.    The Automatic Stay remains in effect until the Debtor receives a discharge, 11 U.S.C. § 524 (a)(2) or a motion for relief from stay is allowed.

I.    Proceeding with the case at bar would place the plaintiff and defendants in contempt of the Automatic Stay.

<u>6.</u>    MASS. R. CIV. P. 19 REQUIRES THE PARTICIPATION OF THE BANKRUPTCY DEBTOR FOR THE INSTANT CASE TO PROCEED:

A.    **RULE 19. JOINDER OF PERSONS NEEDED FOR JUST ADJUDICATION, states in pertinent part:**

**(a) Persons to Be Joined if Feasible.** A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant.

B.    The Bankruptcy Debtor is clearly a necessary party to the litigation and trial of the instant case as it has claimed an ownership interest in the property in dispute. See, the Complaint.

D.    Proceeding with the case at bar would place the plaintiff and defendants in contempt of the Automatic Stay.

E.    If neither the plaintiff not the defendants can proceed with the litigation or trial without permission from the Bankruptcy Court, then there can be no compliance with Mass. R. Civ. P. 19.

F.    The Automatic Stay cannot be undermined by the state Courts as a result of the requisite waiver of the sovereign immunity under 11 U.S.C. § 106(a).

IV.    <u>CONCLUSION</u>

For the reason stated above, the instant litigation and schedule trial should not go forward pursuant to the Automatic Stay imposed by 11 U.S.C. § 362 as the Bankruptcy Debtor and the property interest or ownership claimed constitutes a claim or property of the estate as defined by the Bankruptcy code and laws.

4

Further, the plaintiff, and defendants are enjoined from proceeding in the instant litigation or trial, which could result in contempt of the Automatic Stay imposed by 11 U.S.C. § 362. The Bankruptcy Debtor is an indispensable parties as contemplated by Mass. R. Civ. P. 19. As neither the defendants or plaintiff may proceed with the instant litigation or trial the said litigation or trial could not proceed.

V.    WHEREFORE, the Plaintiff prays that this Court suspend any further action in the instant litigation or trial until further order of the Bankruptcy Court or the Bankruptcy matter is disposed of, or discharged.

> JONATHAN PIEHL and
> LINDA WALKER,
> By their attorney,
>
> Israel M. Sanchez, Jr., Esq.
> BBO#546217
> 472 Beechwood Street
> Cohasset, MA 02025
> (781) 964-2248

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the within:

**BRIEF IN SUPPORT OF SUGGESTION OF BANKRUPTCY AND
NOTICE OF AUTOMATIC STAY OF FURTHER PROCEEDINGS**

was sent to counsel of record, by US mail, hand and/or by Fax, on December 18, 2006.

## CERTIFICATE OF SERVICE

I, David M. Fournier, hereby certify that on the 22nd day of December, 2006, I caused the foregoing **Motion of Southbridge Savings Bank for Entry of an Order Granting Relief from the Automatic Stay <u>Nunc</u> <u>Pro</u> <u>Tunc</u> or Alternatively, Dismissing the Case <u>Nunc</u> <u>Pro</u> <u>Tunc</u>** to be served upon the following parties by first class mail.

VII Holdings Company
2711 Centerville Road, Suite 400
Wilmington, DE 19805

John Wilson
196 West River Street
Orange, MA 01364

Office of the United States Trustee
844 King Street
Room 2207
Wilmington, DE 19899-0035

David M. Fournier

#8225980 v1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re:                                    )
                                          )
VII HOLDINGS COMPANY,                     )    Chapter 7
                                          )    Case No. 06-10935 (BLS)
                  Debtor.                 )
                                          )
_____)   **Relates to D.I. 1, 9, 10, and 17**

## ORDER ANNULLING AUTOMATIC STAY
## AND DISMISSING INVOLUNTARY PETITION AND CHAPTER 7 CASE

UPON CONSIDERATION of the Motion Of Southbridge Savings Bank For Entry Of An
Order Granting Relief From The Automatic Stay *Nunc Pro Tunc* Or Alternatively, Dismissing
The Case *Nunc Pro Tunc* and the Motion Of Cambridge Properties, LLC To Dismiss Involuntary
Chapter 7 Petition *Nunc Pro Tunc* (the "Motions") and the record in this case; the Court finding
for the reasons stated by the Court on the record at the hearing held in this case on January 12,
2006 that (i) good cause exists for the relief ordered herein pursuant to 11 U.S.C. §§ 303(i),
305(a)(1), 707(a) and 362(d), (ii) the involuntary petition in this case constitutes a bad faith filing
within the meaning of 11 U.S.C. § 303(i), and (iii) adequate notice of the Motions has been
provided; **IT IS HEREBY ORDERED** that :

1.    The Motions be and hereby are GRANTED as set forth herein.

2.    Pursuant to 11 U.S.C. § 362(d), the automatic stay of 11 U.S.C. § 362 is vacated
and annulled for all purposes effective as of August 30, 2006, and the automatic stay that
otherwise would have been applicable in this case has no force or effect, whether on the August
31, 2006 foreclosure sale of the Subject Property (as defined in the Motions) or otherwise.

DOCKET NO. 20
DATE 1|16|17

3.    Pursuant to 11 U.S.C. §§ 303(i), 305(a)(1) and 707(a), this chapter 7 case, and the involuntary petition filed in this case, are hereby DISMISSED, provided however, that the Court retains jurisdiction to enter such further orders as the Court may deem appropriate imposing sanctions on account of Petitioner John F. Wilson's bad-faith filing of the involuntary petition in this case.

4.    Within five business days following entry of this Order, counsel for Southbridge and Cambridge may file under certification of counsel a statement of attorneys' fees and costs incurred in connection with this cases, a copy of which certification shall be mailed contemporaneously to John F. Wilson.  Any objection to the reasonableness of such fees and costs shall be filed with the Court and served upon counsel to Southbridge Savings Bank and Cambridge Properties, LLC on or before the tenth day following the filing of such certification.

5.    The stay of Federal Rule of Bankruptcy Procedure 4001(a)(3) shall be inapplicable to this order, and this order is effective immediately upon entry.

6.    The Court retains jurisdiction to enter such further orders in aid of this Order as may be appropriate.

Dated: January 16, 2007

Brendan L. Shannon
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          . Case No. 06-10935(BLS)
                                .
                                . Chapter 7
  VII HOLDINGS COMPANY,         .
                                . 824 Market Street
                                . Wilmington, Delaware  19801
          Involuntary Debtor. .
                                . January 12, 2007
. . . . . . . . . . . . . . . . 11:02 a.m.


TRANSCRIPT OF MOTION HEARING
BEFORE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the U.S. Trustee:           Office of the U.S. Trustee
                                By:  DAVID BUCHBINDER, ESQ.
                                J. Caleb Boggs Federal Building
                                844 King Street
                                Suite 2313
                                Lockbox 35
                                Wilmington, DE  19801


For Cambridge Properties,       Pepper Hamilton, LLP
LLC and Southbridge Savings     By:  DAVID M. FOURNIER, ESQ.
Bank:                           Suite 5100
                                1313 Market Street
                                Wilmington, DE 19899


Audio Operator:                 Brandon McCarthy

Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

DOCKET NO. 29
DATE 2/7/07

2

APPEARANCES (Cont'd.):

For Cambridge Properties,     Goulston & Storrs
LLC and Southbridge Savings   By:  JAMES T. HARGROVE, ESQ.
Bank:                         400 Atlantic Avenue
                              Boston, MA  02110
                              (Telephonic Appearance)


For John Wilson:              JOHN WILSON, PRO SE
                              (Telephonic Appearance)

3

1              THE CLERK:  All rise.

2              THE COURT:  Please be seated.  Mr. Fournier, good

3  morning.

4              MR. FOURNIER:  Good morning, Your Honor.  David

5  Fournier on behalf of the moving creditors, Southbridge Savings

6  Bank and Cambridge Properties.  Your Honor, I do have

7  co-counsel on the line as well, James Hargrove of the Goulston

8  & Storrs firm --

9              THE COURT:  Very good.

10              MR. FOURNIER:  -- but I'll be presenting the motions.

11  Your Honor, just as an initial matter, we did submit an agenda

12  in connection with this hearing identifying the motions going

13  forward and that there was no opposition.  This morning I

14  received by Federal Express an opposition from Mr. Wilson.  I

15  apologize for not having had an opportunity to submit an

16  amended agenda, but I just received it.

17              THE COURT:  Is there another copy?  I have not seen

18  it.

19              MR. FOURNIER:  Yes, there is.  I made a copy for you.

20              THE COURT:  Thank you.

21              MR. FOURNIER:  And, Your Honor, I understand from

22  Your Honor's clerk that Mr. Wilson is participating by

23  telephone.

24              THE COURT:  Very good.

25              MR. FOURNIER:  Your Honor, I don't know if the Court

26  has had an opportunity to read the --

                    **J&J COURT TRANSCRIBERS, INC.**

4

1          THE COURT:  I have read --

2          MR. FOURNIER:  -- the pleadings --

3          THE COURT:  I have read both of the motions and

4  carefully reviewed them and the attachments, as well as

5  reviewing the docket and the filings in the case itself.  What

6  I'd like to do is proceed -- first, your agenda reflects

7  proceeding first with Cambridge Properties' motion to dismiss

8  the petition, and then second is the motion of Southbridge.  I

9  would like to take them in reverse order.

10          MR. FOURNIER:  That's fine, Your Honor.

11          THE COURT:  And we'll consider the Southbridge motion

12  for relief from the stay and alternatively for dismissal of the

13  case before we turn to the Cambridge Properties motion.

14  They're obviously consistent.  You're counsel for both of them,

15  correct?

16          MR. FOURNIER:  That is correct, Your Honor.

17          THE COURT:  Very good.

18          MR. FOURNIER:  Your Honor, one threshold matter here.

19  In light of the fact that Mr. Wilson has filed these papers

20  late -- the objection deadline was last week in connection with

21  this matter, so we do not have a witness in court as a result

22  of that, because this had been listed as an uncontested matter.

23  So, to the extent that when we conclude the Court determines

24  that evidence is required, we would request that the Court

25  adjourn to a subsequent hearing date to give us an opportunity

**J&J COURT TRANSCRIBERS, INC.**

5

1  both to bring a witness to court as well as to take a 2004

2  examination.

3        THE COURT:  I understand and I have reviewed -- and I

4  will review the opposition of the petitioning creditor, John

5  Wilson, that I've just received, but -- and I will not strike

6  it even though it is untimely.  I think it's appropriate to

7  provide accommodations to pro se litigants wherever possible,

8  so I will consider the response today.  Proceed.

9        MR. FOURNIER:  Thank you, Your Honor.  Your Honor,

10  taking first the motion of Southbridge Savings Bank for relief

11  from the automatic stay, Your Honor, Southbridge, as the papers

12  reflect, holds a mortgage lien on a parcel of real property

13  located in Massachusetts.  It has been in the process now for

14  approximately five to six years of foreclosing on that parcel

15  of property.

16        The property and the lien interests in the property

17  have an interesting history.  The property originally, Your

18  Honor, was owned by the parents of a Mr. Peel and Ms. Walker,

19  brothers and sisters, who are the owners of the property.  They

20  inherited the property as tenants in common.  The papers

21  identify the bankruptcy process for the 50 -- for Mr. Peel, who

22  had a 50 percent interest in the property.  That process

23  dragged on for a period of years as the Court can see from the

24  papers, and Southbridge succeeded in 2006 in securing relief

25  from the automatic stay to proceed with the foreclosure action.

**J&J COURT TRANSCRIBERS, INC.**

6

1           THE COURT:  I did see Judge Boroff's order.

2           MR. FOURNIER:  Your Honor, the other 50 percent

3  interest in the property is what brings us before the Court

4  today.  The other 50 percent interest in the property was owned

5  by Ms. Walker who, in August of 2001, conveyed her one-half

6  undivided interest in the property to a trust, ZuZu Realty

7  Trust, of which Mr. Irizian (phonetic) is the trustee.  When

8  Mr. Irizian failed to enjoin the foreclosure sale of that

9  property in Massachusetts --

10          THE COURT:  He had -- as I understand it from the

11  papers, Mr. Irizian had actually filed papers in Massachusetts

12  State Court seeking to enjoin the sale.  Is that correct?

13          MR. FOURNIER:  That's correct.

14          THE COURT:  Okay.

15          MR. FOURNIER:  Your Honor -- let me just back up here

16  -- okay.  Staring in 2006, during the Peel bankruptcy

17  proceeding, Mr. Irizian, as trustee of the ZuZu Realty Trust,

18  apparently granted a mortgage on the property to an entity

19  related to him, Hobbs Abstract Company.  We don't have the

20  details with respect to that transfer, but suffice it to say

21  that he transferred a mortgage interest in that property,

22  again, a one-half interest in the property.  Shortly prior to

23  the actual foreclosure sale on the property, the entity to

24  which he had assigned his interest, his mortgage lien, Hobbs

25  Abstract Company, itself assigned to the debtor in this

**J&J COURT TRANSCRIBERS, INC.**

7

1  proceeding, VII Holdings Company, a 50 percent interest in
2  Hobbs's putative junior mortgage.  I say putative because we
3  don't have any --
4          THE COURT:  Documentation.
5          MR. FOURNIER:  -- details to determine it's a
6  legitimate mortgage lien.
7          THE COURT:  I understand.
8          MR. FOURNIER:  So, Your Honor, what this debtor
9  purportedly holds is a one-half interest in a mortgage on a
10 one-half interest in a piece of real property.  Your Honor,
11 that occurred, as the papers indicate, two days prior to the
12 foreclosure sale.  One day prior to the foreclosure sale, Mr.
13 Wilson filed this involuntary Chapter 7 petition against the
14 debtor.  Your Honor, the Court has no detail with respect to
15 what interest Mr. Wilson has in this debtor.
16          In the -- Your Honor will see -- I know the Court
17 hasn't had an opportunity to read through the papers, but Your
18 Honor will see that when Mr. Wilson filed his response to these
19 papers, he doesn't identify what interest he has in this case,
20 the origins of any purported debt owed by VII Holdings.  There
21 is no detail as to what VII Holdings is.  Is it a corporation
22 that is set up for the sole purpose of staying foreclosure
23 sales in various jurisdictions?  We know that the petition here
24 was filed one day prior to the foreclosure sale in
25 Massachusetts.  We've given the Court information in the

**J&J COURT TRANSCRIBERS, INC.**

8

1  pleadings about a similar involuntary petition filed by Mr.

2  Wilson in Alabama to stay a foreclosure sale.

3          We don't know, Your Honor, what assets VII Holdings

4  has, what other creditors.  We do know that VII Holdings hasn't

5  appeared in response to the involuntary petition that was

6  filed.  We don't know who the officers or directors of VII

7  Holdings are, what relationship they have to Mr. Wilson or Mr.

8  Irizian, but what we do know is that this appears to be a

9  fairly considered scheme to stay a foreclosure sale and to

10 stave the process off long enough for this Court to get to the

11 point where we're at today, which is the motion to dismiss the

12 case.  Your Honor --

13         THE COURT:  We reviewed the docket, and there doesn't

14 seem to have been any activity in the case.

15         MR. FOURNIER:  There has been no activity in this

16 case since the filing of the involuntary.  There has been in

17 Massachusetts an action by my client, Cambridge Properties.

18         THE COURT:  The eviction proceeding in Hamilton

19 Court.

20         MR. FOURNIER:  The eviction proceedings, exactly, in

21 which proceedings the tenants in the property, Mr. Peel, has

22 raised the pendency of this action and the purported existence

23 of the automatic stay as it relates to that real property as a

24 basis for denying relief in the eviction proceedings, or

25 maintaining that the foreclosure sale under Third Circuit law

**J&J COURT TRANSCRIBERS, INC.**

9

1  was void by virtue of the automatic stay.

2          So, Your Honor, what we're requesting of the Court

3  today is twofold relief -- relief from the automatic stay nunc

4  pro tunc to the date of the filing of the case, as well as a

5  dismissal of the case nunc pro tunc.  We're also seeking, Your

6  Honor, sanctions for bad faith filing of the petition.  Your

7  Honor, our clients both have incurred fees in the eviction

8  proceeding, as well as before this Court, in seeking relief for

9  what appears to be a filing intended solely for the purpose of

10 staying that foreclosure sale and not for the purpose of

11 advancing any legitimate right under Chapter 11.

12          THE COURT:  Okay.  Mr. Wilson, are you there?

13          MR. WILSON:  Yes.

14          THE COURT:  Do you have a response, sir?

15          MR. WILSON:  Yes, well, I'd just like to first state

16 with regard to the filing, my opposition, or the oppositions

17 that I filed, that I'd like the Court to note on the first page

18 that on December 22nd, 2006, supposedly these papers were

19 mailed, but I did not receive them until January 6th of this

20 year.  So that's why I didn't respond before that.  Prior to

21 receiving the papers on January 6th, I received on January 3rd,

22 a copy of the orders that counsel was seeking to have the Court

23 rule upon, and also was attached notice of the hearing that has

24 now since been rescheduled.  I received that on the 3rd, and

25 the postmark was 27th.  So I actually received the orders, or

**J&J COURT TRANSCRIBERS, INC.**

10

1  the proposed orders, and the notice of the hearing prior to

2  actually receiving the papers and the motions.

3          Now, I was on the phone with the Court on January

4  4th, which was a scheduled status conference, and I waited on

5  the phone for Your Honor to come on the phone for 45 minutes,

6  and then I was informed that the status conference was

7  canceled.  And I just want to tell the Court that at that time

8  I was going to raise this particular problem so that there

9  would be no question, you know, with regard to my filing an

10 opposition.  So, I just want to make the Court aware of that.

11 I didn't receive the actual papers until January 6th, and I put

12 together my opposition, or oppositions, as quickly as I could.

13         That being said, I'm a little bit at a loss here on

14 this matter because as matters stand right now, it's my

15 understanding that there is no trustee assigned to the case,

16 and I don't know exactly -- you know, I think it's important

17 that a Chapter trustee -- seven trustee look into this and see

18 what the interest of the debtor is in the property.

19         You know, beyond that, I don't know very much what to

20 say.  All of these papers that are attached are, you know,

21 things that I was somewhat unfamiliar with, and, therefore, you

22 know, like I said, I'm at a loss.  I really don't know what to

23 say.  I don't know Mr. Peel.  I never met him.  I don't know

24 this Ms. Walker.  I've never met her.  I did contact Mr. Peel

25 after the filing only because I just wanted to let him know

**J&J COURT TRANSCRIBERS, INC.**

11

1  what had happened and so that he wouldn't pay any monies, if he

2  intended to, over to the VII Holdings Company.

3          So, I didn't know about the sale.  I see in the

4  papers that there is an Attorney Cotton involved, who

5  represented the -- I guess it's the Southbridge Savings Bank.

6  And if I had known that there was a foreclosure that was going

7  to be held the next day, I would have attempted to contact him

8  directly.  So, you know, the allegation in the papers that I

9  knew about this sale is simply untrue.  I just contacted Mr.

10 Peel to let him know that I -- you know, that I filed this and

11 that, you know, he shouldn't pay VII Holdings.  I see that he

12 wrote a letter to Mr. Cotton about the -- apparently about the

13 foreclosure, but, you know, I didn't have any knowledge of

14 that.  So, if the basis for relief of the stay here is that --

15 you know, that somehow this is some sort of scheme cooked

16 between Mr. Peel and myself and Mr. Irizian, the answer is

17 absolutely not, because I didn't know about -- I didn't know

18 about the sale.

19         THE COURT:  Are you a creditor of VII Holdings?

20         MR. WILSON:  Yes.  Yes, I am.  That's on my Chapter 7

21 petition.

22         THE COURT:  I understand.  What's the nature of your

23 claim against VII Holdings?

24         MR. WILSON:  It was for money -- for money loaned.

25         THE COURT:  Who runs VII Holdings?

**J&J COURT TRANSCRIBERS, INC.**

12

1              MR. WILSON:  I don't know who --

2              THE COURT:  Who did you loan the money to?

3              MR. WILSON:  To VII Holdings.

4              THE COURT:  Was there someone at VII Holdings?  When

5    did you loan the money?

6              MR. WILSON:  You know, I don't have the petition.  I

7    think it's on the petition.  I don't have it in front of me.

8              THE COURT:  How much money did you loan to VII

9    Holdings?

10             MR. WILSON:  Nineteen thousand five hundred dollars.

11             THE COURT:  And how much -- and with whom did you

12   deal at VII Holdings?

13             MR. WILSON:  There was a Mr. DiMari and there was a

14   Mr. Conklin.

15             THE COURT:  What was the money loaned for?

16             MR. WILSON:  They wanted, you know, to borrow some

17   money and I lent it to them.

18             THE COURT:  What is VII Holdings' business?

19             MR. WILSON:  As far as I know, it's a real estate

20   company.

21                          (Pause)

22             MR. WILSON:  I would like to point out also that the

23   sale, from what I understand, apparently went through.

24             THE COURT:  It did.

25             MR. WILSON:  And what I don't -- what I can't quite

**J&J COURT TRANSCRIBERS, INC.**

13

1  understand is -- because, you see, I've called Hobbs Abstract

2  Company, who has the other part of the interest in the

3  mortgage, and I spoke to a -- her name is Mrs. Aharoonian

4  (phonetic) -- Aharonian (phonetic) -- and she, who I guess is the

5  principal, one of the principals of Hobbs, and she told me that

6  she understands that approximately $100,000 is being held in

7  the sale by this Attorney Cotton, and she had (indiscernible)

8  to be paid and nothing has happened.  So, I -- as far as, I

9  guess, the issue of adequate security, they've got all the

10  money, so I don't know, you know, why this is happening.

11          THE COURT:  Isn't the question of whether or not

12  money should be paid out to you or to anybody else who may have

13  an interest in this property more properly a question for the

14  Massachusetts Bankruptcy Court handling Mr. Peel's bankruptcy?

15          MR. WILSON:  I understand Mr. Peel is not in

16  bankruptcy anymore.  I think his case was closed -- I mean, it

17  ended.

18          THE COURT:  He's obtained his discharge?

19          MR. WILSON:  Yes, as far as I know, he did.  One

20  other thing that I think is important, Judge, is that, you

21  know, obviously in the papers that have been filed by counsel,

22  you have three interested parties that have not been served

23  with this particular motion, being -- obviously Hobbs Abstract

24  Company being one, and Mr. Peel and Mr. Irizian.  So, I just

25  don't, you know, know how the Court feels about that.

**J&J COURT TRANSCRIBERS, INC.**

14

1  Obviously they have either a stake or a potential stake in

2  either the property or the funds, and --

3        THE COURT:  Do they have claims against VII Holdings?

4        MR. WILSON:  I don't know that.  I have no idea, and

5  I would think that it would be important, however -- I read the

6  local rule, I can't think of the number of it, but it said that

7  all interested parties should be notified.  You have this

8  entity, Cambridge.  I don't know -- I don't know them.  And

9  then you have the bank.  And Cambridge may or may not be a

10  party in interest, whereas, you know, obviously Hobbs and Mr.

11  Peel and Mr. Irizian, you know, are.  So, I just --

12        THE COURT:  Well, as I understand it, Cambridge

13  purchased the property at the foreclosure sale, correct?

14        MR. WILSON:  Well, that's what they claim in the

15  papers.

16        THE COURT:  And it is your --

17        MR. WILSON:  I wasn't there.

18        THE COURT:  And it is your purpose and intention by

19  filing the involuntary against VII Holdings to preclude them

20  from taking possession of it by operation of the automatic

21  stay.  Is that correct?

22        MR. WILSON:  No.  No, that's not correct.  I don't --

23  I don't have any interest in the possession of the property.

24  I'm not a party to this eviction case.  I have no interest in

25  the eviction case.  The only interest that I might have is that

**J&J COURT TRANSCRIBERS, INC.**

15

1  if for -- if Mr. Peel is evicted, then I would worry that --

2  and this is a single-family house -- I would worry that the

3  property would be, you know, abandoned, or -- it's not in very

4  good shape as it is.  I have driven by it, and I would just

5  think that the possibility of some type of --

6          THE COURT:  What does --

7          MR. WILSON:  -- you know, harm could come to the

8  property.

9          THE COURT:  What does any of this have to do with

10  your claim against VII Holdings?  This is an asset of VII

11  Holdings.  Why don't you just sue VII Holdings if they haven't

12  paid you?

13          MR. WILSON:  Yes.  I -- I don't -- I'm sorry, I don't

14  understand.

15          THE COURT:  Mr. Fournier?

16          MR. FOURNIER:  Your Honor, a couple things.  One, Mr.

17  Wilson says that he had no knowledge of the foreclosure

18  proceeding.  I find it a remarkable coincidence not only that

19  the involuntary petition was filed on the eve of foreclosure in

20  this case, but it's the second time it happened.  It happened

21  once down in Alabama as well.  It's strains credulity, Your

22  Honor, to suggest that that's true.

23          Your Honor, the point Your Honor made I think is the

24  right one.  What Mr. Wilson is describing, if what he is

25  describing is true, is a two-party dispute between himself and

**J&J COURT TRANSCRIBERS, INC.**

16

1  VII Holdings, and he has not indicated that he has brought

2  suit.  He has not indicated that he has a judgment.  There is

3  no indicating that they're insolvent.  So, Your Honor, it seems

4  to me that relief from -- or that a dismissal of the case at

5  the very least is warranted based on the facts before the

6  Court.  Beyond that, Your Honor, though, I think that the Court

7  has more than adequate information before it to make the

8  determination that this is, in fact, a bad faith filing and to

9  award sanctions as a result of that.  If the Court deems a

10  further evidentiary hearing on that point to be necessary,

11  certainly we could do that, but I think the Court already has

12  adequate information before it to make that determination.

13         THE COURT:  Okay.  We are going to take a ten minute

14  break.  As I said, Mr. Wilson, I will consider your

15  representations and your statements on the record this morning,

16  but I do want to have the opportunity to review your opposition

17  while it was just received this morning.  As I said, it's been

18  the practice in this court, and I'm sure in other Federal

19  Courts, that we do what we can to accommodate the needs and

20  interests of pro se litigants.  So, I will consider your

21  opposition.  We will take a ten minute break, and then we will

22  reconvene.  Stand in recess.  Please stay on the line,

23  gentlemen.

24                         (Recess)

25         THE CLERK:  All rise.

**J&J COURT TRANSCRIBERS, INC.**

17

1          THE COURT:  Please be seated.  Mr. Wilson, I've had

2  an opportunity to review your response.  Are the parties still

3  on the phone?

4          MR. WILSON:  Yes, I'm here.

5          THE COURT:  Very good.  Mr. Wilson, what is your

6  relationship with Mr. Irizian?  You stated that you were not

7  familiar with Mr. Peel.  Are you familiar with Mr. Irizian?

8          MR. WILSON:  Yes, I am.

9          THE COURT:  Okay.  And what is your relationship with

10 him?

11         MR. WILSON:  Well, I have had a couple of cases with

12 him.

13         THE COURT:  A couple of cases?

14         MR. WILSON:  Yes.

15         THE COURT:  What do you mean by cases?  Bankruptcy

16 cases, legal cases?

17         MR. WILSON:  No -- well, one of them -- two of them

18 were civil cases, and one of them was a bankruptcy case.

19         THE COURT:  Okay.  Mr. Buchbinder, does the Office of

20 the United States Trustee have anything to add?

21         Mr. BUCHBINDER:  Your Honor, Dave Buchbinder for the

22 United States Trustee.  I'm here appearing just as an observer

23 this morning.  I have reviewed the dockets of the Alabama case

24 and I have reviewed the docket of the Peel case, and if the

25 Court has any questions, I'll be happy to respond, but I have

**J&J COURT TRANSCRIBERS, INC.**

18

1 nothing to add this morning, Your Honor.

2      THE COURT:  I have no questions for the Office of the

3 United States Trustee.  All right.  As I said, Mr. Wilson, I've

4 had an opportunity to review your response, and likewise I have

5 heard and considered your comments on the record today to the

6 Court.  Let me note as a threshold matter that Mr. Wilson

7 raised concerns with regard to the sufficiency and adequacy of

8 service of the documents.  We have during the break gone back

9 and reviewed -- there are affidavits of service on file signed

10 by counsel for the moving party, Mr. Fournier, reflecting

11 timely service.  Case law is clear in this jurisdiction and

12 others that that is -- timely filed certificates of service

13 create a presumption of receipt that must be rebutted by more

14 than a simple allegation of non-receipt.  Nevertheless, I find

15 that any concern with regard to the sufficiency of service has

16 been cured first by the Court's willingness to allow Mr. Wilson

17 to appear even in the absence of a timely filed response and

18 then by the Court's willingness to review and consider the

19 response that Mr. Wilson made.  So, I am satisfied with service

20 leading up.

21      Based on the record before me, I do conclude that the

22 commencement of these proceedings were for no other purpose

23 than to improperly frustrate the efforts of Southbridge and

24 Cambridge to follow through on the purchase of the Charlton

25 property.  Mr. Wilson's comments and representations to the

**J&J COURT TRANSCRIBERS, INC.**

19

1    Court that he filed this case without notice of the

2    Massachusetts foreclosure is simply not credible.  I further

3    note that the sale occurred pursuant to a valid and final order

4    of the Massachusetts Bankruptcy Court, and the record does

5    reflect that there were substantial proceedings in that court

6    in order to obtain that relief.

7            So, given that, I find that cause does exist for

8    relief from the stay, and given that this case has been filed

9    in bad faith and for an improper purpose, I will annul the

10   automatic stay effective back to August 30, 2006, which I

11   believe is the date of filing of the involuntary petition, and

12   I will do so pursuant to 11 U.S.C. Section 362(d).

13   Accordingly, I do conclude that based on that annulment the

14   sale of the Charlton property did not occur in violation of the

15   automatic stay and is, therefore, neither void nor voidable

16   under Title 11 of the United States Code.

17           Now, the parties have asked that I dismiss this case

18   nunc pro tunc to August 30, or actually Cambridge has requested

19   nunc pro tunc dismissal.  I will dismiss the case, but that

20   dismissal will be effective as of today.  Given annulment of

21   the stay, I think that dismissal nunc pro tunc is not necessary

22   for the purposes of the parties, even if it is procedurally

23   proper, which is a question that I don't address today.  So,

24   the dismissal of the case would be as of today, not nunc pro

25   tunc to August 30.

**J&J COURT TRANSCRIBERS, INC.**

20

1          Consequently, I will dismiss the case and I will

2    dismiss the petition as well.  Under each of Section 303(i),

3    305(a)(1) and Section 707(a) of the Bankruptcy Code, and I find

4    that there is cause and grounds for dismissal of the petition

5    and the case under each of those statutory predicates.  At

6    bottom, I find that cause exists for dismissal in the interest

7    of justice and the interests of creditors and the debtor will

8    be best served by dismissal of a case that has been commenced

9    for an improper purpose.

10          In addition, I note that Section 707(a) requires that

11    the Court find cause for dismissal, and the case law supports

12    the proposition that bad faith is cause for dismissal and a bad

13    faith filing is determined from the totality of the

14    circumstances.  I have considered Mr. Wilson's response.  I

15    have considered his submission to the Court as well and his

16    representations today to the Court on the record in evaluating

17    whether or not dismissal is appropriate, and I do find based

18    upon that record that dismissal of the case is appropriate.

19          I find also that the allegations and the paper record

20    submitted by Cambridge Properties and by Southbridge alleging

21    that this is part of an effort to improperly frustrate a

22    process commenced by a sister court, the Massachusetts

23    Bankruptcy Court, and now presently proceeding in Massachusetts

24    State Court is -- that that is what is occurring here.  So I

25    will find that dismissal of the case is appropriate.

**J&J COURT TRANSCRIBERS, INC.**

1        As to Mr. Wilson, I find that dismissal of the case

2   will not significantly prejudice him.  He has alleged without

3   backup or meaningful proof that he has a claim of at least

4   $19,500 against VII Holdings, and there is nothing in the

5   record that would suggest that he is precluded or otherwise

6   stopped from suing VII Holdings for recovery on his note

7   outside of an involuntary bankruptcy proceeding.

8        The movants have requested fees and expenses assessed

9   against the petitioning creditor, and I will consider that

10  request.  I am not granting such a request today, but I will

11  consider that request following submission under certification

12  of such fees and expenses of moving counsel, and I will direct

13  that that certification and the documentation of those fees and

14  expenses be submitted also to Mr. Wilson.  The Court will

15  consider it.  If Mr. Wilson has a response, I will consider

16  that response and either rule or would schedule a further

17  hearing.

18        Mr. Fournier, looking at the form of order that you

19  have submitted, I think we need to modify it slightly.  As I

20  said, the dismissal of the case is pursuant to 303(i),

21  305(a)(1) and 707(a), each of those as independent statutory

22  grounds for dismissal.  Likewise, I want it clear that the

23  motion provides for dismissal as of today, with the stay being

24  annulled effective as of the filing of the petition.

25        MR. FOURNIER:  Very well, Your Honor.

**J&J COURT TRANSCRIBERS, INC.**

22

```
 1          THE COURT:  And so to the extent that we need to
 2 modify the order to reflect that that request for relief is
 3 granted, I'll trust that you'll be able to revise that and
 4 submit it to the Court under certification.  And finally, it
 5 will require some modification to the provisions relating to
 6 fees and expenses in order to provide for the procedure that I
 7 just laid out.
 8          MR. FOURNIER:  Thank you, Your Honor.  We'll revise
 9 the order and submit it under certification of counsel.
10          THE COURT:  Very good.  Are there any questions?
11          MR. WILSON:  Judge?
12          THE COURT:  Yes, Mr. Wilson.
13          MR. WILSON:  Am I going to receive a copy of this
14 order as revised?
15          THE COURT:  You will, yes, sir.
16          MR. WILSON:  Okay.
17          THE COURT:  And I will direct that Mr. Fournier
18 provide it to you.
19          MR. WILSON:  Okay.  Now, I have one other question.
20 Does this -- does it mean now that any appeal I want to take
21 commences as of today?
22          THE COURT:  Mr. Wilson, to the extent that you have
23 rights to appeal or to seek relief from this -- from my order
24 today, I cannot give you guidance.  The order itself will be
25 entered promptly upon submission by the Court.  My ruling -- I
```

**J&J COURT TRANSCRIBERS, INC.**

23

1  have submitted my ruling today.  The order will not be -- will
2  not be on the docket until it's submitted by Mr. Fournier, but
3  I can't give you guidance on how to prosecute an appeal or
4  otherwise give you legal advice.  That's --
5          MR. WILSON:  Oh, no, no.  I'm not asking for that.  I
6  just know that in my review of the local rules it says that
7  there's a ten-day period to -- where everything stays in place,
8  and I'm asking the Court is that ten-day period not in effect
9  or is it?
10          MR. FOURNIER:  Your Honor, I believe that he's
11 referring to the ten-day stay under Rule 4001 for orders
12 granting relief from the automatic stay.
13          MR. WILSON:  Yes.
14          THE COURT:  Mr. Fournier, have you requested relief
15 from Rule 4001?
16          MR. FOURNIER:  Your Honor, I believe that our motion
17 requested the relief be effective immediately.
18                          (Pause)
19          MR. FOURNIER:  Your Honor, I don't believe the papers
20 contain an express request for relief from that -- from Rule
21 4001.  In light of the basis on which the Court has made its
22 ruling, however, I would make an oral request for that relief
23 and we request that the order be effective immediately.
24          THE COURT:  Mr. Wilson?
25          MR. WILSON:  Well, I -- I leave that up to you.  I

**J&J COURT TRANSCRIBERS, INC.**

24

1    just wanted to know where I stood.

2            THE COURT:  Okay.  I will grant the debtor's -- the

3    movant's request for relief from the ten-day stay under the

4    Bankruptcy Rules, and I will direct that the order be effective

5    immediately, and I will look for the order from counsel.

6            MR. FOURNIER:  Very well, Your Honor.  Your Honor,

7    just to be clear, we'll be submitting the order to the Court.

8    We'll make -- we'll submit it to Mr. Wilson at the same time we

9    submit it to the Court.

10            THE COURT:  Correct.

11            MR. FOURNIER:  Thank you, Your Honor.

12            THE COURT:  Very well.  Anything further?

13            MR. FOURNIER:  Nothing further, Your Honor.

14            THE COURT:  Thank you, counsel.  Stand in recess.

15                            *  *  *  *  *

16

17

18

19

20

21

22

23

24

25

**J&J COURT TRANSCRIBERS, INC.**

25

C E R T I F I C A T I O N

       I, DENISE M. O'DONNELL, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, to the best of my ability.


/s/ Denise M. O'Donnell

DENISE M. O'DONNELL

J&J COURT TRANSCRIBERS, INC.       Date:  February 6, 2007

**J&J COURT TRANSCRIBERS, INC.**

APPEAL

# U.S. Bankruptcy Court
## District of Delaware (Delaware)
## Bankruptcy Petition #: 06-10935-BLS

*Assigned to:* Brendan Linehan Shannon
Chapter 7
Involuntary
No asset

*Date Filed:* 08/30/2006

**Debtor**
**VII Holdings Company**
2711 Centerville Road, Suite 400
Wilmington, DE 19805
Tax id: 20-3459444

represented by **VII Holdings Company**
PRO SE

**Petitioning Creditor**
**John Wilson**
196 West River Street
Orange, MA 01364

represented by **John Wilson**
PRO SE

**U.S. Trustee**
**United States Trustee**
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19899-0035
302-573-6491

| Filing Date | # | Docket Text |
|---|---|---|
| 08/30/2006 | 1 | Chapter 7 Involuntary Petition Fee Amount $299.Receipt # 75521 Re: VII Holdings Company Filed by Petitioning Creditor(s): John Wilson . (CLO, ) (Entered: 08/30/2006) |
| 08/30/2006 | 2 | Notice Regarding Summons in Involuntary Case (CLO, ) (Entered: 08/30/2006) |
| 09/01/2006 | 3 | BNC Certificate of Mailing. (related document(s)2 ) Service Date 09/01/2006. (Admin.) (Entered: 09/02/2006) |
| 12/08/2006 | 4 | Notice of Hearing on Status Conference. Hearing scheduled for 1/4/2007 at 03:00 PM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. (related document(s)1 ) (MML, ) (Entered: 12/08/2006) |

| | | |
|---|---|---|
| 12/08/2006 | 5 | BNC Notice of Notice of Hearing on Status Conference (related document(s)4 ) (MML, ) (Entered: 12/08/2006) |
| 12/10/2006 | 6 | BNC Certificate of Mailing. (related document(s)5 ) Service Date 12/10/2006. (Admin.) (Entered: 12/11/2006) |
| 12/10/2006 | 7 | BNC Certificate of Mailing - Hearing. (related document(s)4 ) Service Date 12/10/2006. (Admin.) (Entered: 12/11/2006) |
| 12/21/2006 | 8 | Involuntary Summons Issued by the Court to Petitioning Creditor for Service on Alleged Debtor. Summons and Petition Must Be Served by Petitioning Creditor by 12/28/2006. Petitioning Creditor Must File a Certificate of Service with the Court within 5 days of serving the Involuntary Summons and Petition upon Alleged Debtor. (MML, ) (Entered: 12/22/2006) |
| 12/22/2006 | 9 | Motion to Dismiss Involuntary Chapter 7 Petition Nunc Pro Tunc Filed by Cambridge Properties, LLC.. Hearing scheduled for 1/9/2007 at 10:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 1/2/2007. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Exhibit C# 5 Exhibit D# 6 Exhibit E# 7 Exhibit F# 8 Exhibit G# 9 Exhibit H# 10 Exhibit I# 11 Certificate of Service) (Fournier, David) Modified duplicate text on 1/5/2007 (MML, ). (Entered: 12/22/2006) |
| 12/22/2006 | 10 | Motion for Relief from the Automatic Stay Nunc Pro Tunc or Alternatively, Dismissing the Case Nunc Pro Tunc. Fee Amount $150. Filed by Southbridge Savings Bank. Hearing scheduled for 1/9/2007 at 10:30 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 1/2/2007. (Attachments: # 1 Notice # 2 Exhibit A# 3 Exhibit B# 4 Exhibit C# 5 Exhibit D# 6 Exhibit E# 7 Exhibit F# 8 Exhibit G# 9 Exhibit H# 10 Exhibit I# 11 Certificate of Service) (Fournier, David) Modified duplicate text on 1/5/2007 (MML, ). (Entered: 12/22/2006) |
| 12/27/2006 | 14 | Summons Service Executed on VII Holdings Company (related document(s)8 ) Filed by John Wilson . (MML, ) (Entered: 01/03/2007) |
| 12/28/2006 | 11 | Receipt of filing fee for Motion for Relief From Stay (B)(06-10935-BLS) [motion,mrlfsty] ( 150.00). Receipt Number 75864, amount $ 150.00. (CLO) (Entered: 12/28/2006) |
| 12/28/2006 | 12 | Re-Notice of Hearing (related document(s)10 ) Filed by Southbridge Savings Bank. Hearing scheduled for 1/12/2007 at 11:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 1/5/2007. (Attachments: # 1 Exhibit A - Proposed Order# 2 Certificate of Service) (Fournier, |

| | | |
|---|---|---|
| | | David) Modified text on 1/5/2007 (MML, ). (Entered: 12/28/2006) |
| 12/28/2006 | 13 | Re-Notice of Hearing (related document(s)9 ) Filed by Cambridge Properties, LLC.. Hearing scheduled for 1/12/2007 at 11:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. Objections due by 1/5/2007. (Attachments: # 1 Exhibit A - Proposed Order# 2 Certificate of Service) (Fournier, David) Modified text on 1/5/2007 (MML, ). (Entered: 12/28/2006) |
| 01/10/2007 | 15 | Notice of Agenda of Matters Scheduled for Hearing Filed by Cambridge Properties, LLC., Southbridge Savings Bank. Hearing scheduled for 1/12/2007 at 11:00 AM at US Bankruptcy Court, 824 Market St., 6th Fl., Courtroom #1, Wilmington, Delaware. (Fournier, David) (Entered: 01/10/2007) |
| 01/12/2007 | 16 | Hearing Held/Court Sign-In Sheet (related document(s)15 ) (LCN, ) (Entered: 01/12/2007) |
| 01/12/2007 | 17 | Certification of Counsel *Regarding Order Annulling Automatic Stay and Dismissing Involuntary Petition and Chapter 7 Case* (related document(s)10, 1, 9 ) Filed by Cambridge Properties, LLC., Southbridge Savings Bank. (Attachments: # 1 Exhibit A - Proposed Order# 2 Exhibit B - Blackline# 3 Certificate of Service) (Fournier, David) (Entered: 01/12/2007) |
| 01/12/2007 | 18 | Objection to */Opposition to Motion to Dismiss Involuntary Chapter 7 Petition Nunc Pro Tunc* (related document(s)9 ) Filed by John Wilson (MML, ) (Entered: 01/16/2007) |
| 01/12/2007 | 19 | Objection to */ Opposition to Motion for Entry of an Order Granting Relief from the Automatic Stay Nunc Pro Tunc or Alternatively, Dismissing the Case Nunc Pro Tunc* (related document(s)10 ) Filed by John Wilson (Attachments: # 1 Affidavit) (MML, ) (Entered: 01/16/2007) |
| 01/16/2007 | 20 | Order Annulling Automatic Stay and Dismissing Involuntary Petition and Chapter 7 Case(Related Doc #1 9 1017)Order Signed on 1/16/2007. (JMW) (Entered: 01/16/2007) |
| 01/18/2007 | 21 | Affidavit/Declaration of Service *re: Signed Order Annulling Automatic Stay and Dismissing Involuntary Petition and Chapter 7 Case* (related document(s)20 ) Filed by Cambridge Properties, LLC., Southbridge Savings Bank. (Fournier, David) (Entered: 01/18/2007) |
| 01/22/2007 | 22 | Certification of Counsel *Regarding Fees and Costs* (related document (s)20 ) Filed by Cambridge Properties, LLC., Southbridge Savings Bank. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Proposed Form of |

| | | |
|---|---|---|
| | | Order # 4 Certificate of Service) (Fournier, David) (Entered: 01/22/2007) |
| 01/23/2007 | 23 | Notice of Appeal . Receipt Number 75971, Fee Amount $255. (related document(s)20 ) Filed by John Wilson. Appellant Designation due by 2/2/2007. (MML, ) (Civil Action Number: 07-73 ; BAP Number: 07-03) Modified text on 2/6/2007 (MML, ). Modified on 2/13/2007 (MML, ). (Entered: 01/23/2007) |
| 01/23/2007 | 24 | Notice of Filing Fee(s) Due By John Wilson. Filing Fee Due by 1/30/2007. (related document(s)23 ) (MML, ) (Entered: 01/23/2007) |
| 01/23/2007 | 25 | Clerk's Notice Regarding Filing of Appeal (related document(s)23 ) (MML, ) (Entered: 01/23/2007) |
| 01/25/2007 | 26 | BNC Certificate of Mailing. (related document(s)25 ) Service Date 01/25/2007. (Admin.) (Entered: 01/26/2007) |
| 01/25/2007 | 27 | BNC Certificate of Mailing. (related document(s)24 ) Service Date 01/25/2007. (Admin.) (Entered: 01/26/2007) |
| 02/01/2007 | 28 | Objection to *the Certification of Counsel Regarding Costs and Fees and Memorandum in Support Thereof* (related document(s)22 ) Filed by John Wilson (MML, ) (Entered: 02/02/2007) |
| 02/06/2007 | | Receipt Number 75971, Fee Amount $255.00 (related document(s) 23 ) (CLO, ) (Entered: 02/06/2007) |
| 02/07/2007 | 29 | Transcript of Hearing held on January 12, 2007 before the Honorable Brendan L. Shannon. (related document(s)15 ) (BJM) (Entered: 02/07/2007) |
| 02/07/2007 | 30 | Reply *of Cambridge Properties, LLC and Southbridge Savings Bank to Opposition of Petitioning Creditor John Wilson to the Certification of Counsel Regarding Costs and Fees* (related document(s)22, 28 ) Filed by Cambridge Properties, LLC., Southbridge Savings Bank (Attachments: # 1 Exhibit A# 2 Certificate of Service) (Fournier, David) (Entered: 02/07/2007) |
| 02/08/2007 | 31 | Transmittal of Record on Appeal to District Court. BAP #07-03 (related document(s)23 ) (MML, ) Modified to add BAP number on 2/8/2007 (MML, ). (Entered: 02/08/2007) |
| 02/08/2007 | 32 | Notice of Docketing Record on Appeal to District Court. Civil Action Number: 07-73 ; BAP Number: 07-03 (related document(s)31 ) (MML, ) (Entered: 02/13/2007) |

## CERTIFICATE OF SERVICE

I, David M. Fournier, hereby certify that on the 15th day of February, 2007, I

caused the foregoing **Appendix to Motion of Cambridge Properties, LLC and Southbridge**

**Savings Bank for Order Exempting Appeal from Mediation Process and Dismissing**

**Appeal** to be served upon the following parties by U.S. Mail, first class, postage pre-paid:

VII Holdings Company
2711 Centerville Road, Suite 400
Wilmington, DE  19805

John Wilson
196 West River Street
Orange, MA  01364

David Buchbinder, Esquire
Office of the United States Trustee
844 King Street
Room 2207
Wilmington, DE  19899-0035


David M. Fournier

#8330421 v1